1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves, KAREN LARAMIE, as personal represnetiatve of the Estate of Madison May Mogen, JEFFREY KERNODLE, as personal representative of the Estate of Xana Alexia Kernodle, and STACY CHAPIN, as personal representative of the Estate of Ethan J. Chapin,

Plaintiffs,

v.

WASHINGTON STATE UNIVERSITY, a public university,

Defendant.

NO. 2:26-cv-00301

DECLARATION OF CONNOR M. CALLAHAN IN SUPPORT OF REMOVAL TO FEDERAL COURT AND NOTICE OF FILING SUPERIOR COURT DOCUMENTS

I, CONNOR MATTHEW CALLAHAN, declare as follows:

1.      I am one of the Assistant Attorney Generals assigned to represent Defendant Washington State University (WSU). I am over the age of 18, competent to testify as to the matters stated herein, and make this declaration based on my personal knowledge.

2.      WSU was served with Plaintiffs' Complaint in the Skagit County Superior Court File No. 26-2-00034-29 on January 7, 2026. Plaintiffs' Complaint alleges violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, arising from WSU's discrimination, sexual harassment, and stalking by Brian Kohberger.  Plaintiffs' Complaint includes causes of action for

DECLARATION OF
CONNOR M. CALLAHAN IN SUPPORT OF
REMOVAL TO FEDERAL COURT AND
NOTICE OF FILING SUPERIOR COURT
DOCUMENTS

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

1  negligence, gross negligence, and outrage. Because Plaintiffs have plead a federal cause of action,

2  WSU initiated the process to remove this case to federal court on January 27, 2026.

3           3.        WSU has agreed to removal to federal court.

4           4.        True and correct copies of the below listed documents filed in Skagit County

5  Superior Court File No. 26-2-00034-29 are attached to this declaration to comply with filing these

6  documents within fourteen (14) days as specific in LCR 101(c).

7                A.        Case Information Cover Sheet

8                B.        Summons

9                C.        Complaint

10               D.        Jury Demand

11               E.        Notice of Appearance

12

13        DATED this 27th day of January, 2026.

14

15                                        NICHOLAS W. BROWN
                                          Attorney General

16

17                                        *s/Connor M. Callahan*
                                          CONNOR CALLAHAN, WSBA No. 54099
18                                        Assistant Attorney General
                                          P.O. Box 40126
19                                        Olympia, WA 98504-0126
                                          360-586-6300
20                                        Connor.Callahan@atg.wa.gov
                                          *Counsel for Defendant WSU*

21

22

23

24

25

26

DECLARATION OF                                    2                ATTORNEY GENERAL OF WASHINGTON
CONNOR M. CALLAHAN IN SUPPORT OF                                           Torts Division
REMOVAL TO FEDERAL COURT AND                                         7141 Cleanwater Drive SW
NOTICE OF FILING SUPERIOR COURT                                            PO Box 40126
DOCUMENTS                                                           Olympia, WA 98504-0126
                                                                          360-586-6300

1

**CERTIFICATE OF SERVICE**

2        I hereby certify that on this 27th day of January 2026, I caused to be electronically filed

3 the foregoing document with the Clerk of the Court using the CM/ECF system which will send

4 notification of such filing to the following:

5        *Attorneys for Plaintiffs*

6    Jonathan P. Kieffer, (pro hac vice)
     Jack T. Hyde, (pro hac vice)
7    Lindsey N. Scarcello (pro hac vice)
     WAGSTAFF & CARTMELL, LLP
8    4740 Grand Avenue, Suite 300
     Kansas City, MO 64112
9    jpkieffer@wcllp.com
     jhyde@wcllp.com
10   lscarcello@wcllp.com

11
     Thomas B. Vertetis, WSBA #29805
12   Christopher E. Love, WSBA #42832
     William T. McClure, WSBA #54622
13   PFAU COCHRAN VERTETIS AMALA, PLLC
     909 A Street, Suite 700
14   Tacoma, WA 98402
     tom@pcvalaw.com
15   chris@pcvalaw.com
     wmcclure@pcvalaw.com
16

17

18        DATED this 27th day of January, 2026.

19
                                    *s/Connor M. Callahan*
20                                  CONNOR CALLAHAN, WSBA No. 54099

21

22

23

24

25

26

DECLARATION OF                                3        ATTORNEY GENERAL OF WASHINGTON
CONNOR M. CALLAHAN IN SUPPORT OF                        Torts Division
REMOVAL TO FEDERAL COURT AND                            7141 Cleanwater Drive SW
NOTICE OF FILING SUPERIOR COURT                         PO Box 40126
DOCUMENTS                                               Olympia, WA 98504-0126
                                                        360-586-6300

# Attachment A

E-FILED
Skagit County Clerk
Skagit County, WA
1/7/2026

**CIVIL**
SKAGIT COUNTY SUPERIOR COURT
Case Information Cover Sheet (CICS)

**Case Number** 26-2-00034-29          **Case Title** Goncalves et al, v. Washington State University

**Attorney Name** Thomas Vertetis          **Bar Membership Number** 29805

Please check one category that best describes this case for indexing purposes.  Accurate case indexing not only saves time in docketing new cases, but helps in forecasting needed judicial resources.  Cause of action definitions are listed on the back of this form.  Thank you for your cooperation.          *Form updated 5-31-2024*

| | | | | | |
|---|---|---|---|---|---|
| ☐ | ABJ | Abstract of Judgment | ☐ | PIN | Personal Injury |
| ☐ | ABL | Abusive Litigation | ☐ | PRA | Public Records Act |
| ☐ | ALR | Administrative Law Review | ☐ | PRG | Property Damage – Gangs |
| ☐ | ALRJT | Administrative Law Review-Jury Trial  (L&I) | ☐ | PRP | Property Damages |
| ☐ | BAT | Ballot Title | ☐ | QTI | Quiet Title |
| ☐ | CHN | Non-Confidential Change of Name | ☐ | RDR | Relief from Duty to Register |
| ☐ | CBC | Contractor Bond Complaint | ☐ | RFR | Restoration of Firearm Rights |
| ☐ | COL | Collection | ☐ | SDR | School District-Required Action Plan |
| ☐ | CON | Condemnation | ☐ | SER | Subdivision Election Process Law Review |
| ☐ | COM | Commercial | ☐ | SPC | Seizure of Property-Commission of Crime |
| ☐ | CPA | Consumer Protection Act | ☐ | SPR | Seizure of Property-Resulting from Crime |
| ☐ | CPO | Civil Protection Orders | ☐ | TAX | Employment Security Tax Warrant |
| ☐ | CRP | Pet. for Cert. of Restoration of Opportunity | ☐ | TAX | L & I Tax Warrant |
| ☐ | DOL | Appeal Licensing Revocation | ☐ | TAX | Licensing Tax Warrant |
| ☐ | ECP | Enforce Canadian DV Protection Order | ☐ | TAX | Revenue Tax Warrant |
| ☐ | EMP | Employment | ☐ | TMV | Tort – Motor Vehicle |
| ☐ | EOM | Emancipation of Minor | ☐ | TRJ | Transcript of Judgment |
| ☐ | FJU | Foreign Judgment | ☒ | TTO | Tort – Other |
| ☐ | FOR | Foreclosure | ☐ | TXF | Tax Foreclosure |
| ☐ | FPO | Foreign Protection Order | ☐ | UND | Unlawful Detainer – Commercial |
| ☐ | INJ | Injunction | ☐ | UND | Unlawful Detainer – Residential |
| ☐ | INT | Interpleader | ☐ | VEP | Voter Election Process Law Review |
| ☐ | LCA | Lower Court Appeal – Civil | ☐ | VVT | Victims of Motor Vehicle Theft-Civil Action |
| ☐ | LCI | Lower Court Appeal – Infractions | ☐ | WAT | Water Rights Adjudication (Whatcom Only) |
| ☐ | LUPA | Land Use Petition Act | ☐ | WDE | Wrongful Death |
| ☐ | MAL | Other Malpractice | ☐ | WHC | Writ of Habeas Corpus |
| ☐ | MED | Medical Malpractice | ☐ | WMW | Miscellaneous Writs |
| ☐ | MHA | Malicious Harassment | ☐ | WRM | Writ of Mandamus |
| ☐ | MSC2 | Miscellaneous – Civil | ☐ | WRR | Writ of Restitution |
| ☐ | MST2 | Minor Settlement – Civil  (No Guardianship) | ☐ | WRV | Writ of Review |
| ☐ | PCC | Petition for Civil Commitment (Sexual Predator) | ☐ | XRP | Extreme Risk Protection Order |
| ☐ | PFA | Property Fairness Act | ☐ | XRU | Extreme Risk Protection Order Under 18 |
| ☐ | PFT | Prorate Fuel Tax Subpoena | | | |

**IF YOU CANNOT DETERMINE THE APPROPRIATE CATEGORY, PLEASE DESCRIBE THE CAUSE OF ACTION BELOW**
_____

*Please Note:  Public information in court files and pleadings may be posted on a public Web site.*

## APPEAL/REVIEW

**Administrative Law Review**-Petition to the superior court for review of rulings made by state administrative agencies.

**Appeal of a Department of Licensing Revocation**-Appeal of a DOL revocation (RCW 46.20.308(9)).

**Lower Court Appeal-Civil**-An appeal for a civil case; excludes traffic infraction and criminal matters.

**Lower Court Appeal-Infractions**-An appeal for a traffic infraction matter.

## CONTRACT/COMMERCIAL

**Breach of Contract**-Complaint involving monetary dispute where a breach of contract is involved.

**Contractor Bond Complaint**-Complaint for claim against a contractor or subcontractor bond.

**Commercial Contract**-Complaint involving monetary dispute where a contract is involved.

**Commercial Non-Contract**-Complaint involving monetary dispute where no contract is involved.

**Third Party Collection**-Complaint involving a third party over a monetary dispute where no contract is involved.

## PROTECTION ORDER

**Civil Protection Orders** – Petition seeking protection from harmful or threatening behavior. (Chapt. 7.105 RCW) (Eff. 7/1/2022).

**Enforce Canadian DV Protection Order** – Petition seeking order granting recognition and enforcement of Canadian DV PO. (Chapt. 26.55 RCW)

**Extreme Risk Protection Order**-Petition to restrict ownership, possession, custody or control of a firearm or concealed weapons permit.

**Extreme Risk Protection Order Under 18**-Petition to restrict access, possession, purchase, custody or control of a firearm by a minor.

**Foreign Protection Orders**-Any protection order of a court of the United States, or of any state, territory, or tribal land, which is entitled to full faith and credit in this state.

## JUDGMENT

**Abstract Only**-A certified copy of a judgment docket from another superior court, an appellate court, or a federal district court.

**Foreign Judgment**-Any judgment, decree, or order of a court of the United States, or of any state or territory, which is entitled to full faith and credit in this state.

**Judgment, Another County**-A certified copy of a judgment docket from another superior court within the state.

**Judgment, Another State**-Any judgment, decree, or order from another state that is entitled to full faith and credit in this state.

**Tax Warrants**-A notice of assessment by a state agency creating a judgment/lien in the county in which it is filed. (Four types available.)

**Transcript of Judgment**-A certified copy of a judgment from a court of limited jurisdiction to a superior court in the same county.

## OTHER COMPLAINT/PETITION

**Abusive Litigation**- Request to restrict a current or former intimate partner party from filing abusive litigation for the purposes of harassing, intimidating, or maintaining contact with the other party

**Ballot Title**-Action for review of the ballot title (RCW 29A.36.090).

**Petition for Certificate of Restoration of Opportunity**-Request for order that is intended to facilitate obtaining housing and employment (RCW 9.97.020).

**Change of Name**-Petition for a change of name.  If change is confidential due to domestic violence/anti-harassment see case type 5 instead.

**Deposit of Surplus Funds**-Deposit of money or other item with the court.

**Emancipation of Minor**-Petition by a minor for a declaration of emancipation.

**Employment**-Complaints involving disputes between employer and employee. Includes whistleblower actions. Do not use for administrative law review of employment matters.

**Injunction**-Complaint/petition to require a person to do or refrain from doing a particular thing.

**Interpleader**-Petition for the deposit of disputed earnest money from real estate, insurance proceeds, and/or other transaction(s).

**Malicious Harassment**-Suit involving damages resulting from malicious harassment.

**Minor Settlements**-Petition for a court decision that an award to a minor is appropriate when no letters of guardianship are required (e.g., net settlement value $25,000 or less).

**Petition for Civil Commitment (Sexual Predator)**-Petition for the involuntary civil commitment of a person who 1) has been convicted of a sexually violent offense whose term of confinement is about to expire or has expired, 2) has been charged with a sexually violent offense and who has been determined to be incompetent to stand trial who is about to be released or has been released, or 3) has been found not guilty by reason of insanity of a sexually violent offense and who is about to be released or has been released, and it appears that the person may be a sexually violent predator.

**Property Damage-Gangs**-Complaint involving damage to property related to gang activity.

**Prorate Fuel Tax Subpoena**-Actions filed under Chapt. 82.42 RCW for ex parte orders for subpoenas for fuel tax collection violation investigations.

**Public Records Act**-Actions filed under Chap. 42.56 RCW.

**Relief from Duty to Register**-Civil action requesting relief from duty to register as a sex offender. Petition can address the registration obligation that arises from multiple cases. RCW 9A.44.142, 9A.44.143.

**Restoration of Firearms Rights**-Petition seeking restoration of firearms rights under RCW 9.41.040 and 9.41.047. *(Eff. 9-2-2014)*

**School District-Required Action Plan**-Petition filed requesting court selection of a required action plan proposal relating to school academic performance.

**Seizure of Property from the Commission of a Crime**-Seizure of personal property that was employed in aiding, abetting, or commission of a crime, from a defendant after conviction.

**Seizure of Property Resulting from a Crime**-Seizure of tangible or intangible property that is the direct or indirect result of a crime, from a defendant following criminal conviction (e.g., remuneration for, or contract interest in, a depiction or account of a crime).

**Subdivision Enforce Process Review**-Petition seeking court acknowledgement of compliance (RCW 29A.92).

**Subpoenas**-Petition for a subpoena.

**Voter Election Law Review**-Action filed by voters requesting review of Voting Rights Act (RCW 29A.92).

**Water Rights Adjudication**-Legal process to resolve conflict and competition of a water source. Court action requires involvement of the Wash. Dept. of Ecology. (Title 90 RCW). Use of this cause of action is limited by statute. Currently, only Whatcom County Superior Court accepts court filings related to water rights adjudication.

## PROPERTY RIGHTS

**Condemnation**-Complaint involving governmental taking of private property with payment, but not necessarily with consent.

**Foreclosure**-Complaint involving termination of ownership rights when mortgage or tax foreclosure is involved; ownership is not in question.

**Land Use Petition**-Petition for an expedited judicial review of a land use decision made by a local jurisdiction (RCW 36.70C.040).

**Property Fairness**-Complaint involving the regulation of private property or restraint of land use by a government entity brought forth by Title 64 RCW.

**Quiet Title**-Complaint involving the ownership, use, or disposition of land or real estate other than foreclosure.

**Unlawful Detainer**-Complaint involving the unjustifiable retention of lands or attachments to land, including water and mineral rights.

## TORT, MEDICAL MALPRACTICE

**Hospital**-Complaint involving injury or death resulting from a hospital.

**Medical Doctor**-Complaint involving injury or death resulting from a medical doctor.

**Other Health Care Professional**-Complaint involving injury or death resulting from a health care professional other than a medical doctor.

## TORT, MOTOR VEHICLE

**Death**-Complaint involving death resulting from an incident involving a motor vehicle.

**Non-Death Injuries** -Complaint involving non-death injuries resulting from an incident involving a motor vehicle.

**Property Damage Only**-Complaint involving only property damages resulting from an incident involving a motor vehicle.

## TORT, NON-MOTOR VEHICLE

**Asbestos**-Complaint alleging injury resulting from asbestos exposure.

**Consumer Protection Act**-Actions brought under the Consumer Protection Act. Can be initiated by the WA Attorney General or individuals, others.

**Other Malpractice**-Complaint involving injury resulting from other than professional medical treatment.

**Personal Injury**-Complaint involving physical injury not resulting from professional medical treatment, and where a motor vehicle is not involved.

**Products Liability**-Complaint involving injury resulting from a commercial product.

**Property Damages**-Complaint involving damage to real or personal property excluding motor vehicles.

**Victims of Motor Vehicle Theft**-Complaint filed by a victim of car theft to recover damages. (RCW 9A.56.078).

**Wrongful Death**-Complaint involving death resulting from other than professional medical treatment.

## WRIT

**Writ of Habeas Corpus**-Petition for a writ to bring a party before the court.

**Writ of Mandamus**-Petition for writ commanding performance of a particular act or duty.

**Writ of Restitution**-Petition for a writ restoring property or proceeds; not an unlawful detainer petition.

**Writ of Review**-Petition for review of the record or decision of a case pending in the lower court; does not include lower court appeals or administrative law reviews.

**Miscellaneous Writs**

# Attachment B

E-FILED
Skagit County Clerk
Skagit County, WA
1/7/2026

1
2
3
4
5
6
7

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR SKAGIT COUNTY**

8
9
10
11
12
13

STEVE GONCALVES, as personal
representative of the Estate of Kaylee Jade
Goncalves, KAREN LARAMIE, as personal
representative of the Estate of Madison May
Mogen, JEFFREY KERNODLE, as
personal representative of the Estate of Xana
Alexia Kernodle, STACY CHAPIN, as
personal representative of the Estate of
Ethan J. Chapin,

14

Plaintiffs,

15

v.

16
17

WASHINGTON STATE UNIVERSITY, a
public university,

18

Defendant.

Case No.  26-2-00034-29

**SUMMONS**

19

TO THE DEFENDANT:

20

    A lawsuit has been started against you in the above-entitled court by Plaintiffs.

21

Plaintiffs' claims are stated in the written Complaint, a copy of which is served upon you with

22

this Summons.

23

    In order to defend against this lawsuit, you must respond to the Complaint by stating

24

your defense in writing, and serve a copy upon the person signing this Summons within 20 days

25
26

SUMMONS
1 of 2

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

after the service of this Summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where a plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

Any response or notice of appearance which you serve on any party to this lawsuit must also be filed by you with the court within 20 days after the service of Summons, excluding the day of service.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This Summons is issued pursuant to Rule 4 of the Superior Court Civil Rules of the State of Washington.

SIGNED this 7th day of January, 2026.

Respectfully submitted,

WAGSTAFF & CARTMELL LLP

By: /s/ *Jonathan P. Kieffer*
Jonathan P. Kieffer (*Pro Hac Vice* Pending)
Jack T. Hyde (*Pro Hac Vice* Pending)
Lindsey N. Scarcello (*Pro Hac Vice* Pending)

PFAU COCHRAN VERTETIS AMALA PLLC

By: /s/ *Thomas B. Vertetis*
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832

**ATTORNEYS FOR PLAINTIFFS**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

# Attachment C

E-FILED
Skagit County Clerk
Skagit County, WA
1/7/2026

1
2
3
4
5
6
7
8

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR SKAGIT COUNTY**

9
10
11
12
13
14
15
16
17
18
19
20
21

| | |
|---|---|
| STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves, KAREN LARAMIE, as personal representative of the Estate of Madison May Mogen, JEFFREY KERNODLE, as personal representative of the Estate of Xana Alexia Kernodle, and STACY CHAPIN, as personal representative of the Estate of Ethan J. Chapin, Plaintiffs, v. WASHINGTON STATE UNIVERSITY, a public university, Defendant. | Case No. 26-2-00034-29 COMPLAINT FOR DAMAGES |

22
23
24
25
26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **1** of **126**

1

2    Plaintiffs bring causes of action against Defendant Washington State

3    University and allege the following:

4    **I.    <u>Introduction</u>**

5    1.    This case arises out of the violent assault and murder of four

6    University of Idaho students by a Washington State University ("WSU")

7

8    employee with a known history of threatening, stalking and predatory behavior.

9    2.    WSU brought Bryan Kohberger to Pullman, Washington, in the

10   Pacific Northwest, to serve as a Teaching Assistant in the Criminal Justice and

11

12   Criminology Department, while he also worked to obtain a Ph.D., with a study

13   focused on sexually motivated burglars and serial killers. Kohberger was heavily

14   reliant on WSU, who paid him a salary, provided free on-campus housing,

15

16   medical benefits, and free tuition, all conditioned on his behavior and subject to

17   being revoked.

18   3.    Pullman, Washington is only a few miles from Moscow, Idaho,

19

20   home to the University of Idaho, and the combined area is referred to as the

21   Pullman-Moscow community.  Almost immediately upon his arrival to the

22

23   Pullman-Moscow community, Kohberger developed a reputation for

24   discriminatory, harassing, and stalking behavior, instilling substantial fear

25   among young female students and fellow WSU employees, necessitating regular

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

security escorts for multiple females. Despite receiving at least 13 formal reports of Kohberger's inappropriate, predatory and menacing behavior, WSU failed to respond in any meaningful way and allowed Kohberger's escalating behavior to continue unchecked.

4.    On November 13, 2022, a foreseeable—and, in fact, predictable—tragedy occurred when Kohberger entered the bedrooms of four undergraduate students and violently stabbed them to death. These deaths should not and would not have occurred if WSU had acted appropriately.

5.    After Kohberger pled guilty in July 2025 to four counts of first-degree murder and burglary, various law enforcement agencies began releasing files from their investigations. Those files, together with other information in the public domain, paint a deeply disturbing picture of the breathtaking level of organizational paralysis and inaction by WSU that enabled Kohberger, over a period of months, to stalk his victims, and plan and commit these heinous murders.

6.    Before WSU brought Kohberger to the Pullman-Moscow community, he had a history of heroin addiction, had been arrested for theft, and had made numerous posts over a period of years on public online forums commenting about his inability to feel emotion and "crazy thoughts." He had

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 3 of 126

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

been removed from a vocational program in high school because of problems with women and, later, local business owners had become so alarmed at his behavior toward young women that staff kept electronic notes about him to warn female staff when he arrived. He also had pursued a graduate degree in criminology where he demonstrated a particular fascination with serial killers.

7.     Almost immediately upon Kohberger's arrival to the Pullman-Moscow community he began demonstrating antisocial, disturbing and menacing behaviors.  In August 2022, early in the semester, a fellow graduate student began leaving her office door open because she believed "this guy was going to do something inappropriate with a student," and said that Kohberger struck her as a "stalker" or "sexual assaulter type." Based on how Kohberger talked to and treated women, another fellow graduate student described him as a "possible future rapist," and Kohberger's supervising instructor was aware that several female graduate students had reported that they were very uncomfortable with interactions they had with him. Female graduate students also complained that he made them feel unsafe. He was noted to be obsessed with studying sexually motivated burglars and serial killers.

8.     On multiple occasions and with multiple WSU female staff members and fellow students, Kohberger would regularly stand close to their



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

desks, loom over them, and would block their exits from on-campus offices for

long periods of time. One female graduate student reported that Kohberger

would trap her in her office and try to talk to her about the Ted Bundy murders.

Kohberger followed several female students and staff to their cars after hours.

Multiple female students and staff members were so uncomfortable with

Kohberger's behavior that security escorts were arranged for them after 5 p.m.,

escorts that in some instances were provided by professors and in other instances

by the WSU Police Department. Certain of these staff members told others that

Kohberger had been stalking them.

9.    Some graduate students reported that they kept their on-campus

doors shut in an effort to keep Kohberger out, while others left their doors open

as a place of refuge for others if they felt threatened by Kohberger. In one

instance, early in the semester, Kohberger so verbally attacked a female student

in the classroom that she fled in tears, leaving all of her belongings behind.

Kohberger was described as "very angry, as if he had built up fury or rage."

10.    One sophomore student reported that Kohberger had followed her

and told her bosses at WSU about the incident. In response, they told her she

should not be alone with Kohberger, suggested that campus security should

escort her out, and commented that she was not the first to report such problems

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 5 of 126

with him. On other occasions, this sophomore's supervisor would take her home so that she did not have to walk by herself or take public transportation, and she became concerned about all of the precautions that needed to be taken because of Kohberger's behavior.

11.    On more than one occasion, WSU employees would stay in a room where Kohberger was engaging with one of their colleagues out of concern that the colleague should not be left alone with him. On another occasion, a WSU employee told her colleague to email her with the subject heading "911" if she needed help because of Kohberger. On yet another occasion, a WSU undergraduate fled into a bathroom to hide from Kohberger because she was so uncomfortable with his "scary" behaviors.

12.    As early as mid-September 2022, WSU professors were discussing the "need to do an intervention with Kohberger" because of his treatment of female students. By September or October 2022, a WSU professor believed that Kohberger was stalking people. One student learned that Kohberger had photos of her and other female classmates on his cell phone.

13.    Kohberger's victims were encouraged to report his behaviors, and a number of them did. The WSU office of Compliance and Civil Rights (CCR) had at least 13 formal complaints related to Kohberger; yet, the individual in



charge of acting on those complaints later reported that she had neither met nor even spoken with Kohberger.

14.    One student complained that she was unsatisfied with how prior reports about Kohberger had been handled—and she did not believe that WSU would adequately protect her from retaliation—but she continued to report her experiences to the program chair and other faculty, stating that Kohberger's actions made her feel unsafe. Another graduate student made complaints about Kohberger and was directed to copy them to another department at WSU but she was reluctant to do so because she had bad experiences with that in the past.

15.    One female graduate student reported that she wondered why people in power in the WSU Criminal Justice Department did not meaningfully address Kohberger's behavior. During one of several faculty meetings where Kohberger was discussed extensively, one faculty member remarked: "Mark my words, I work with predators, if we give him a Ph.D that's the guy that in that many years when he is a professor, we will hear is harassing, stalking, and sexually abusing . . . his students." This same WSU professor believed that Kohberger was already stalking people.

16.    Kohberger's supervising instructor, however, was concerned that removing him from employment at WSU would open the university up to a civil

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **7** of **126**

1  lawsuit from Kohberger, thereby elevating the financial interests of the

2
3  university above the safety and security of students, staff and members of the

4  Pullman-Moscow community.

5      17.    The WSU Police Department is intended to be a critically important

6
7  bulwark when it comes to protecting students and the community from sexual

8  harassment, stalking and dangerous predators. However, prior to Kohberger

9  being hired by WSU and arriving in the Pullman-Moscow community, the WSU

10
11  Police Department had a long, troubling and sordid history of tolerating and, in

12  fact, fostering inappropriate sexual behavior in its own ranks and discouraging

13  complete and accurate reporting of such misconduct.

14
15      18.    In 2007, the WSU Chief of Police was demoted after an internal

16  investigation found he had viewed inappropriate emails on his university

17  computer, forwarded those to other WSU police, and invited them to view them.

18
19  In 2011, WSU was fined over $80,000 by federal officials because of multiple

20  sexual assaults that were not properly reported. WSU did not dispute the

21  findings of the federal investigation.

22
23      19.    In 2022, WSU undertook an investigation of improper sexual

24  activities by the WSU police force involving allegations that an officer had sex

25  with a victim in the Presidential Suite of the Martin Stadium and the WSU

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 8 of 126

observatory while on duty, and that WSU police department leadership did not

properly report the incidents. The investigation ultimately found that police

department leadership exhibited gross misconduct, incompetence and neglect of

duty in response to claims of sexual misconduct.

20.    In August 2022, the WSU Police Chief, Assistant Chief, and

Captain all resigned prior to facing discipline for their actions. In response,

WSU President Kirk Schulz issued a public statement indicating that "WSU will

not tolerate this kind of behavior nor the negligence of departmental command

staff."

21.    A subsequent investigation into the offending officer, during the

fall semester of 2022, found that he engaged in predatory grooming behavior

while in a supervisory role and had a history of sexual misconduct, and that the

WSU police command fostered an environment that discouraged reporting

sexual misconduct.

22.    It was against the above-described backdrop of WSU

administrative inaction and Police Department dysfunction that Kohberger

arrived in the Pullman-Moscow community, immediately began engaging in

overt harassing, stalking and predatory behaviors, including repeatedly stalking

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **9** of **126**

over a period of months the four victims that he ultimately murdered on November 13, 2022.

23.    Subsequent forensic examination of Kohberger's electronic devices revealed that he had performed many searches regarding home invasions, co-ed killings, and serial killers. Kohberger's search history also revealed internet searches about psychopaths, paranoia, and porn involving exclusively non-consensual sex acts. Kohberger's search history also included research on a serial killer named Danny Rolling who murdered five college students in Gainesville, Florida by entering a college apartment through a sliding glass door, masked and dressed in black, and stabbed his victims to death using a Ka-Bar knife—all features of Kohberger's later murders.

24.    Subsequent law enforcement investigation also revealed that Kohberger had driven around the home of the murder victims in the middle of the night, over a dozen times, and as early as August 2022.

25.    Despite having a formal Threat Assessment Team—a now common practice at universities to proactively identify, assess and manage individuals who may pose a risk of violence—WSU wholly failed to follow that process with Kohberger and, instead, allowed his dangerous behaviors to escalate while it simultaneously continued to support him financially, provide him with access



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to university resources and students, and keep him housed rent-free in the Pullman-Moscow community.

26.    As a result of WSU's actions and failures, four young college students were brutally murdered.

## II.    Parties

27.    Steve Goncalves is a citizen of the State of Idaho and is the surviving father of Kaylee Goncalves. Steve Goncalves brings a survival claim and wrongful death claim as personal representative of the Estate of Kaylee Jade Goncalves.

28.    Karen Laramie is a citizen of the State of Idaho and is the surviving mother of Madison Mogen. Karen Laramie brings a survival claim and wrongful death claim as personal representative of the Estate of Madison May Mogen.

29.    Jeffrey Kernodle is a citizen of the State of Arizona and is the surviving father of Xana Kernodle. Jeffrey Kernodle brings a survival claim and wrongful death claim as personal representative of the Estate of Xana Alexia Kernodle.

30.    Stacy Chapin is a citizen of the State of Washington and resident of Skagit County and is the surviving mother of Ethan Chapin. Stacy Chapin brings

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 11 of 126

a survival claim and wrongful death claim as personal representative of the

Estate of Ethan J. Chapin.

31.    WSU is a subdivision of the State of Washington and operates a

public university with campuses across the State of Washington.

32.    All acts and omissions of Defendant alleged in this Complaint are

alleged to have been committed by agents and/or employees of Defendant acting

within the course and scope of their agency and/or employment, including

members of the WSU Department of Criminal Justice and Criminology,

members of the WSU Police Department, and members of the WSU

administration.

### III.    Jurisdiction and Venue

33.    This Court has original subject matter jurisdiction pursuant to the

Constitution of the State of Washington, Art. IV § 6.

34.    Venue is proper in Skagit County pursuant to RCW 4.92.010(1) as

Plaintiff Stacy Chapin resides in Skagit County, WA.

35.    Venue is also proper in Skagit County pursuant to RCW 4.12.025

as WSU has offices in Skagit County, WA, and transacts business within Skagit

County, WA.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

36.     WSU has sufficient contacts within this judicial district to subject it to the personal jurisdiction of this Court.

37.     All prerequisites to suit under RCW 4.92.090, et seq. have been met.

## IV.     Factual Allegations Common to All Counts

### a.  Stalking is a serious and prevalent risk to college students

38.     Stalking is a serious and prevalent threat facing college-age young adults both on and off campus.

39.     Up to 40% of college students, particularly women, report being stalked since entering college.

40.     The highest rates of stalking are experienced by students 18-24 years of age.

41.     Most stalkers are also students.

42.     Stalkers on college campuses are more likely to be acquaintances of the victim, such as a classmate, friend, or someone else that they recognize.

43.     Those diagnosed with autism spectrum disorders are also more likely to engage in stalking behavior.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 13 of 126

44.    In addition to being a crime, stalking is commonly a violation of university policies and a violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681).

45.    It is critical for universities to promptly identify and appropriately respond to stalking behavior.

46.    As a Title IX violation, mandatory reporters at universities are required to report any instances of stalking to the Title IX office.

47.    Under Washington state law, Title IX and the Clery Act, stalking is defined as engaging in a course of conduct directed at a specific person that would cause a reasonable person to fear for the person's safety or the safety of others, or suffer substantial emotional distress. (WAC 504-26-223; WAC 504-26-227; 34 U.S.C. § 12291 (a)(36)).

48.    A course of conduct is two or more acts.

49.    Common stalking behaviors include unwanted communications, showing up when not invited, following, surveillance and threats.

50.    The most commonly identified stalking tactic is surveillance, which includes watching, following, monitoring, and gathering information about the victim. This can occur both in-person and online.

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 14 of 126

51.    Tactics that include intimidation or menacing behavior are also common with stalking.

52.    Fear is a central element of stalking and victims often might not report that they are being "stalked," but rather, report that the perpetrator will not "leave them alone" or that he is acting "creepy."

53.    Stalkers commonly use coercive control tactics to exert power and control over their victims.

54.    Stalking is often associated with physical and sexual violence, and studies show that stalking increases the risk of homicide by three-fold.

55.    Stalking is a known indicator of an urgent, volatile, and risky situation.

56.    Because stalking involves a pattern of behavior that often includes multiple and varied tactics, it is critical that universities promptly coordinate their response so that complaints about concerning behavior can properly and urgently be identified as stalking.

57.    Stalking behaviors often change and escalate over time, and it is therefore critical that universities document all stalking behavior even if it appears minor.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

58.     Recognizing the extreme danger that stalking can pose to students, many universities have processes designed to ensure a coordinated response for reports of stalking or sexual violence that involves campus police, student affairs, and Title IX coordinators.

59.     WSU, in particular, has implemented policies and procedures designed to prohibit, prevent, and intervene in situations involving discriminatory, harassing, stalking or predatory behavior, and to discipline its employees and students who engage in these behaviors.

60.     WSU also has the ability to exercise sufficient control over its faculty, staff, and employees to manifest a duty to control their behavior.

**b. WSU has policies and procedures to control conduct and prohibit and prevent discrimination, harassment and stalking**

61.     As discussed further below, WSU recruited Kohberger from the East Coast to the WSU Graduate School and hired him to be an employee of the university.

**i. WSU was obligated to control Kohberger under the requirements of its Employment Agreement with him**

62.     WSU gave Kohberger a written offer of employment to serve in the role of a Teaching Assistant, which offer Kohberger signed in agreement.

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **16** of **126**

63.    Under the requirements of the Employment Agreement, WSU was obligated to control Kohberger.

64.    WSU policy provides that a teaching assistantship is an appointment in which a graduate student's *primary duty* is teaching or serving as a teaching assistant.

65.    Kohberger's employment with WSU came with conditions and obligations.

66.    Under WSU policies, one condition of employment was that Kohberger complete a sexual misconduct declaration prior to his hire. He had to declare whether he was the subject of any findings or investigation into sexual misconduct. A failure to provide complete and accurate information in this declaration can result in WSU withdrawing the offer of employment.

67.    Presumably, this sexual misconduct declaration is intended to identify and prevent potential inappropriate interactions with the undergraduate students that Kohberger would be interacting with in his employment with the university.

68.    WSU also has a policy requiring pre-employment background checks.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **17** of **126**

69.     Had WSU performed a comprehensive pre-employment background check on Kohberger, it likely would have revealed significant red flags and the risk of hiring Kohberger and bringing him to the Pullman-Moscow community.

**ii.  WSU was obligated to control Kohberger under the requirements of its Graduate School Policies and Procedures Manual**

70.     WSU was further obligated to control Kohberger under the requirements of its Graduate School Policies and Procedures Manual.

71.     As a teaching assistant and employee of WSU, Kohberger was required to abide by and meet the regulations and policies set forth in the Graduate School Policies and Procedures Manual:



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



All graduate students are required to abide by and meet the regulations and policies set forth in these most current and revised Graduate School Policies and Procedures, which are also available at http://gradschool.wsu.edu/policies-procedures. Any exceptions to this policy must be submitted in writing by the student through their major professor and chair of the major graduate program to the dean of the Graduate School, who may then consider such an exception.

19
20    72.    WSU policies required that Kohberger "be at work each normal

21    workday, including periods when the university classes are not in session."

22    73.    WSU also states that "[a]s key contributors to the WSU

23
24    community, graduate assistants have a responsibility to maintain high standards

25    of professional and ethical conduct."

26

COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **19** of **126**

74.     To that end, WSU policy requires that all graduate teaching assistants complete the Human Resource Services' Discrimination, Sexual Harassment, and Sexual Misconduct Prevention Training. Failure to timely complete this training can result in a loss of employment with WSU.

### iii.  WSU was obligated to control Kohberger under the requirements of its Department of Criminal Justice and Criminology Graduate Handbook

75.     Similarly, the WSU Department of Criminal Justice and Criminology Graduate Handbook, which Kohberger was also required to comply with, highlights the significance of his employment with the State of Washington and the importance of behaving appropriately:

It should be remembered that TA appointments qualify the student to be an employee of both the university and the state. Students are expected to uphold the standards of professional conduct that are implied by this status. In particular, students should be familiar with policies regarding inappropriate workplace conduct, amorous relationships, and respect for undergraduate students. Unsatisfactory performance of TA

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **20** of **126**

responsibilities could result in a discontinuation of funding as determined by the Chair in consultation with relevant faculty.

76.    Moreover, as a teaching assistant employed by WSU, the university had increased supervision and oversight responsibilities with respect to Kohberger's conduct.

77.    WSU policies state that departments and programs working with teaching assistants "should provide adequate supervision and training."

### iv.  WSU was obligated to control Kohberger under its Standards of Conduct for Students

78.    WSU also was obligated to control Kohberger under its Standards of Conduct for Students.

79.    WSU policies state that termination mid-semester can be recommended if a teaching assistant encounters performance difficulties, such as continual deficient performance or misconduct while performing the duties of the assistantship, misconduct while engaging in other educational activities, violation of the University's academic integrity policies, or violation of the University's Standards of Conduct for Students.

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 21 of 126

80.    If a WSU graduate teaching assistant is suspended or expelled as a result of a violation of the Standards of Conduct, their assistantship is terminated *immediately*.

81.    The Standards of Conduct set forth WSU's policies regarding certain conduct by students and employees, like teaching assistants.

82.    WSU expects teaching assistants to comply with the Standards of Conduct both on and off campus and they are subject to the WSU disciplinary process if they violate the Standards of Conduct.

83.    WSU's Center for Community Standards is charged with enforcing the Standards of Conduct.

84.    A WSU representative previously testified (in another lawsuit against WSU involving a student's death off campus) that the Center for Community Standards can respond to reported violations that occur off campus if they create safety concerns or if they impact the reputation of the university negatively.

85.    In fact, most WSU Center for Community Standards investigations concern behavior that occurs at private residences, off campus, or in close proximity to the campus.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **22** of **126**

86.    Under his terms of enrollment at WSU, Kohberger acknowledged the university's authority to take disciplinary action for conduct on or off university property that is detrimental to the university's mission.

87.    In fact, the stated purpose of WSU's disciplinary processes and Standards of Conduct is "to protect the welfare of the community."

88.    Similarly, the basic philosophy behind the WSU Standards of Conduct and disciplinary processes is to guide and correct behaviors, to protect the rights of all students, and to support a safe environment for students, the university, and the community at large. (WAC 504-26-001)

89.    The WSU Standards of Conduct prohibit physical harm or threats of physical harm, harassment, and stalking, among other behaviors.

90.    The WSU Standards of Conduct and Washington law define "threat" to include, but not be limited to, a statement of an intention to inflict pain, injury, damage, or other hostile action to another person. Threat can come in the form of actions or words. (WAC 504-26-204)

91.    The WSU Standards of Conduct and Washington law define "harassment" as conduct by any means that is severe, persistent, or pervasive, and is of such a nature that it would cause a reasonable person in the complainant's position substantial emotional distress and undermine their ability



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

to work, study, or participate in their regular life activities or participate in the activities of the university, and/or actually does cause the complainant substantial emotional distress and undermines the complainant's ability to work, study, or participate in the complainant's regular life activities or participate in the activities of the university. (WAC 504-26-222)

92.    The WSU Standards of Conduct, Washington state law, and federal law define "stalking" as engaging in a course of conduct directed at a specific person that would cause a reasonable person to:

(a) Fear for their safety or the safety of others; or

(b) Suffer substantial emotional distress.

93.    Course of conduct means two or more acts including, but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property. (WAC 504-26-223; 34 U.S.C. 12291 (a)(36))

94.    Sanctions for violations of the WSU Standards of Conduct can include temporary or permanent dismissal from the university, as well as a trespass admonition that would restrict the offender from any or all university premises based on their misconduct. (WAC 504-26-425)



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

### v. WSU was obligated to control Kohberger under its

2

### Executive Policy 15

3

4      95.     WSU also has a policy prohibiting discrimination and harassment

5   called Executive Policy 15 (EP15) that obligated it to control Kohberger and

6   which it recognizes can impact the community:

7



18      96.     EP15 is broader than Title IX and, therefore, conduct that does not

19

20   technically violate Title IX can, however, still violate EP15.

21      97.     EP15 generally applies to all students, faculty, staff and others that

22

23   have an association with WSU.

24      98.     Like Title IX, EP15 prohibits stalking.

25

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 25 of 126

99.   EP15 requires that all WSU employees, including student employees, who have information regarding sexual harassment *must* report that information to WSU's Compliance and Civil Rights (CCR) office. Sexual harassment includes stalking.

100.   EP15 provides a mechanism for reporting and investigating violations, which is primarily handled by the CCR office.

101.   EP15 also provides that violations of the policy subject the offender to discipline.

### vi.  WSU was obligated to control Kohberger under its Executive Policy 42

102.   WSU also was obligated to control Kohberger under its Executive Policy 42.

103.   In the aftermath of mass killings on both K12 and college campuses, including those at Columbine High School in Colorado and Virginia Polytechnic Institute and State University (Virginia Tech), the United States Secret Service developed programs to detect and prevent incidents of mass violence involving principles of Behavioral Threat Assessment and Threat Assessment and Management. These are proactive, evidence-based processes to identify, assess and manage individuals who may pose a risk of violence,



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

focusing on concerning behaviors and communications to prevent harm before it happens.

104.    The U.S. Department of Homeland Security, through its Center for Prevention Programs and Partnerships, emphasizes: "Threat assessment and management teams are effective *proactive* and *protective* measures that are designed to prevent—not predict—potential acts of targeted violence and terrorism." https://www.dhs.gov/sites/default/files/2021-12/Threat%20Assessment%20and%20Management%20Teams_0.pdf (emphasis in original).

105.    Threat Assessment Teams, or TAT's, are now commonplace at colleges and universities throughout the United States and have become a critical part of the standard of care for preventing violence on campuses and in surrounding communities.

106.    In addition to WSU's CCR office and disciplinary processes, WSU also has a Threat Assessment Team (TAT) as set forth in WSU Executive Policy 42 (EP42):

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 27 of 126

1

2

3

4

5

6

7

8

9

10

11

12



**WASHINGTON STATE UNIVERSITY**                                           Quicklink

**Threat Assessment**

⌂ Threat Assessment Team

Reporting

Contact Team

# Threat Assessment Team

## Policy

Washington State University's EP42 Threat Assessment Team identifies, assesses, and addresses threats to the university community and property. They receive and assess reports of threats and other concerning behavior reportedly carried out by students, employees of the university, or by others who may impact the safety of the WSU community.

The EP42 Threat Assessment Team coordinates with university stakeholders to receive and assess information of potential threats using evidence-based behavioral structured professional judgment assessment model. Further, the team recommends university action regarding safety and security matters to the appropriate university decision makers, consistent with carrying out the university's mission and goals.

13        107.   According to WSU's EP42, TAT identifies, assesses, and addresses

14    threats to the university community.

15

16        108.   WSU's TAT's responsibility is to receive and assess reports of

17    threats and other concerning behavior reportedly carried out by students,

18    employees of the university, or by others who may impact the safety of the

19    community.

20

21        109.   The purpose of WSU's TAT is to work with any appropriate

22    university departments, law enforcement, mental health agencies, and other third

23    parties to assess situations and recommend appropriate interventions.

24

25

26

COMPLAINT FOR
DAMAGES



**Wagstaff & Cartmell**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

**PFAU COCHRAN
VERTETIS AMALA**
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

110.    WSU's TAT is designed to work quickly and efficiently with the best information available at the time of the concern.

111.    WSU's TAT has the responsibility and authority to confer on an urgent basis to assess and recommend mitigating strategies for threats of potential violence, or to manage behavioral risks or threats.

112.    Anyone may submit a report of instances of distressing, disruptive, or dangerous behavior to WSU's TAT.

113.    Threat assessment areas of focus include, but are not limited to, behavior that creates reasonable fear of physical harm, intimidation, threats (both direct and indirect), stalking, fixation, and harassment.

114.    WSU's TAT then is responsible to coordinate with relevant stakeholders to receive and assess information about potential or perceived threats, and recommend WSU action regarding safety and security matters.

115.    WSU's TAT is a multi-disciplinary team, co-chaired by the Associate Vice President and Executive Director of Public Safety and the Associate Vice President and Dean of Students, and includes representatives from the WSU human resources services, emergency management, campus safety and security, student affairs, academic affairs, and counseling and psychological services.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4

### vii. WSU was obligated to control Kohberger under its WAVR-21™ threat assessment and intervention protocols

5
6
7

116.  WSU's TAT claims to utilize tools and methods recognized in the field for threat assessment of individual cases and situations.

8
9
10
11
12

117.  These tools assess psychological, behavioral, historical, and situational factors associated with organizational violence, such as preoccupation with violence, threats, irrational thinking, substance abuse, history of violence or criminality, or extreme moods.

13
14
15
16

118.  In particular, WSU's TAT utilizes a structured, evidence-based risk assessment tool called Workplace Assessment of Violence Risk or WAVR-21™.

17
18
19

119.  WSU was obligated to control Kohberger under its WAVR-21™ threat assessment and intervention protocols.

20
21
22
23

120.  WAVR-21™ warns about the conflict-avoidant manager who allows behavioral issues to fester which is particularly prevalent in some institutions of higher learning.

24
25

121.  WAVR-21 emphasizes that one precursor to violence is when the problematic individual has a distorted self-perception of competence and

26

COMPLAINT FOR
DAMAGES





achievement that differs from leadership's view of their performance, leading to tension between the parties. This tension often includes issues with the individual's conduct and increasing disruptiveness. This tension is readily felt by involved supervisors who recognize the need to act but are concerned with the consequences, sensing the individual's volatility. For instance, they may acknowledge the need to remove him from the program, but fear that he will resort to violence if they do. Managers or advisors feel intimidated by the angry, defensive individual and avoid interactions with him, which increases his sense of entitlement and only makes matters worse as time goes on.

122.   WAVR-21™ recommends that when removing such problematic individuals from a program, the organization should offer supportive services and careful messaging to reduce the risk of the individual committing violence.

123.   Mishandling complaints about a problematic individual can also contribute to them committing violence.

124.   WAVR-21™ warns that in a campus setting, problematic individuals are most likely to become violent in the days following a shameful or rejecting event, such as a reprimand, even though they may have fantasized about mass killing for weeks or months.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

125.   WAVR-21™ instructs that in what has become a "see something, say something" world, organizations fundamentally require or should require their members to report all direct and indirect threats observed by them.

126.   WAVR-21™ emphasizes that there is a tendency in academia to not fully vet faculty or graduate level applicants for conduct or criminal history and that has contributed to dire consequences.

127.   According to WAVR-21™, one risk factor for violence is an individual that has a strong desire for intimacy but is unable to obtain it because of his own deficiencies in being able to connect with others.

128.   WAVR-21™ further warns that autism spectrum disorder is a risk factor for young perpetrators of mass murder due to their strong desire for, but inability to establish, intimate or social bonds.

129.   WAVR-21™ warns that an individual who displays anger that causes fear in others is also an indicator of potential violence.

130.   WAVR-21™ warns that a specific indicator of a dangerous level of anger is when the individual engages in physically threatening or intimidating movement or gestures such as standing too close to someone and glaring at them.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 32 of 126

131.    Stalking or menacing behavior is a strong indicator of future violence. WAVR-21™ defines stalking, or obsessional following, as a pattern of unwanted pursuit and harassment of another that threatens their safety—a crime that is illegal throughout most of Western civilization.

132.    According to WAVR-21™, workplace or campus-related stalking behavior typically involves physical following, surveillance, and appearances at the victim's work or home. Stalking is commonly perpetrated by a student, or a subject who is infatuated with someone who wants nothing to do with the perpetrator, and is most commonly perpetrated by young males. Many stalkers have a criminal history, and a history of drug abuse and psychiatric issues. Stalkers also tend to be highly intelligent, contributing to their resourcefulness and manipulativeness in their pursuit activities.

133.    According to WAVR-21™, stalkers' motives generally stem from a need to control or instill fear in the victim as a means to overcome intolerable feelings of inadequacy, or humiliation, to increase feelings of omnipotence, or to retaliate against a perceived injustice. Erotomania—a delusional belief that another person is infatuated with the perpetrator, despite distinct objective evidence to the contrary—is another characteristic of stalkers.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 33 of 126

134.    WAVR-21™ defines stalking as broader than physical violence per se, but notes that stalking is associated with an eventual physical assault one third of the time, usually directed at the object of pursuit. The risk that the stalker kills their victim is many times greater than the risk of an ordinary citizen being intentionally killed by another.

135.    WAVR-21™ warns that a thorough investigation and consistent management and follow-through are essential for dealing with workplace and campus stalkers.

136.    According to WAVR-21™, a particularly ominous sign is when the problematic individual shows a lack of conscience. These individuals are potentially dangerous in work and campus settings because they exercise no brakes on their behaviors. They often come to the attention of threat management teams because of their aggressiveness and bullying. There is often a history of questionable conduct, inconclusive suspicions of wrongdoing, or blatant wrongdoing that has been ignored by management. They also often first come to attention as the subject of non-threat-related misconduct investigations. When that investigation identifies signs of aggressiveness or callousness, then it should lead to an appropriate concern about violence risk. These individuals also may engage in sexual harassment, stalking, and sexual assault or abuse,



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

2

3

behaviors that an organization's threat management team must address on an

urgent basis.

4

5

6

137.   According to WAVR-21$^{TM}$, a critical predictor for violence is when

the perpetrator engages in pre-attack planning and preparation, such as actively

researching a potential target's routines and schedules. A decline in the

7

8

9

perpetrator's academic duties may also correlate with these pre-attack behaviors.

The perpetrator's comments may also indicate that he has been gaining

10

11

information on a target's personal life habits, whereabouts and patterns of travel.

12

13

138.   WAVR-21$^{TM}$ warns that the perpetrator may target victims in an

off-campus setting.

14

15

16

139.   In a WAVR-21$^{TM}$ assessment, one significant red flag is whether

the individual shows a general preoccupation with violent ideas, fantasies, or

17

identification with or fixation on perpetrators of violence or mass murderers.

18

19

20

WAVR-21$^{TM}$ warns that an individual on a pathway to violence may show an

unusual interest in notorious perpetrators.

21

22

23

140.   WAVR-21$^{TM}$ instructs that after an individual is determined to

present a risk of violence, a threat assessment team should determine what steps

24

can be taken to manage the subject's risk for violence.

25

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **35** of **126**

141.   WAVR-21™ describes a wide range of interventions available,

including plans for security, mental health-related interventions, legal actions,

interventions intended to defuse and problem solve with the subject, and

separation of the individual from the organization. Generally recommended

prevention measures include civil protective orders, voluntary or involuntary

hospitalization and treatments, law enforcement interviews or confrontations,

surveillance, arrest and detention, counseling conducted by skilled interveners

intended to defuse anger and humiliation and encourage rational problem

solving, suspensions and leaves of absence, expulsion and termination.

### viii.   WSU was obligated to control Kohberger under the terms of WSU's Family and Graduate Apartment Agreement

142.   As part of his employment as a WSU teaching assistant, WSU also

provided Kohberger with housing, in an apartment complex owned and operated

by WSU.

143.   As an occupant of WSU-owned housing, Kohberger was required

to sign and agree to the terms of a license called the Washington State

University Family and Graduate Apartment Agreement (Apartment Agreement):

COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 36 of 126

1
2
3
4
5

**WSU Family and Graduate
Apartment Agreement
2022-2023**

All occupants of University-owned housing are required to sign licenses called apartment agreements.

6
7
8

144.   WSU was further obligated to control Kohberger under the terms of WSU's Family and Graduate Apartment Agreement.

9
10
11
12

145.   One of the requirements of the Apartment Agreement was that while on the residential premises, Kohberger had to abide by all local, state and federal law and WSU rules and regulations.

13
14
15

146.   One of the amenities that WSU provided to Kohberger as part of the Apartment Agreement was free internet access, both wired and wireless.

16
17

147.   WSU provides internet access through a single network called WSU ResNet, which serves all WSU apartment complexes:

18
19
20
21
22
23
24
25
26

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654



148.   Kohberger had to agree and abide by the Network Service Agreement in order to access WSU'S ResNet internet network.

149.   WSU was further obligated to control Kohberger under the terms of this Network Services Agreement.

150.   WSU ResNet provides users with access to all publicly available resources on the internet. In other words, WSU does not put any technical or physical restrictions on what a user could potentially access or do on the Internet.

151.   WSU acknowledges that "Some of the information available may contain language or images about subjects intended for adult audiences. Some

COMPLAINT FOR
DAMAGES





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

information available over the internet may even be illegal to transmit or possess. Examples of this include but are not limited to: child pornography, illegal export of software, distribution of copyrighted material, distribution of chain or pyramid schemes, phishing, sending of unsolicited bulk email (e.g. Spam) and other fraudulent or questionable activity."

152.    The Apartment Agreement states that "[i]nappropriate use of computers on the WSU-provided network can result in the loss of network privileges."

153.    WSU also retains the right to monitor usage of ResNet.

154.    WSU further retains the right to terminate access to ResNet immediately, and without notice, if the network is abused or used in an inappropriate manner.

155.    WSU requires that users comply with all applicable laws and university policies when connected to ResNet.

156.    It would be a violation of WSU policies, as well as Title IX, to use ResNet to facilitate discrimination, sexual harassment, or stalking.

157.    The Apartment Agreement also prohibited Kohberger from possessing any weapons, including knives, in his apartment:

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 39 of 126

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Weapons of any kind including pistols, rifles, air guns, knives (having a blade longer than 4 inches that are not for culinary purposes or having a "swing" or "switch" blade), slingshots, crossbows or martial arts tools may **<u>not</u>** be stored or used in apartments. (emphasis in original)

158.    WSU explicitly retained the right to have an agent of WSU enter Kohberger's apartment "at any reasonable hour for purpose of inspection" and WSU retained the right to enter the apartment without notice.

159.    Failure to abide by, and adhere to, the rules and regulations in the Apartment Agreement, or failure to abide by other WSU polices and regulations, could result in termination of the Apartment Agreement and removal from the premises.

160.    Similarly, repeatedly disturbing other occupants and/or violating WSU policies could result in a termination of the Apartment Agreement and removal from the premises.

      **c.  When Kohberger arrived at WSU in the fall of 2022, the WSU Police Department was consumed by a university investigation into its own long and sordid history of tolerating and, in fact, fostering serious sexual misconduct in its own ranks**

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **40** of **126**

161.    WSU employs and operates its own police force, which is intended to be a critically important bulwark when it comes to protecting students and the community from sexual harassment, stalking and dangerous predators. However, prior to Kohberger being hired by WSU and arriving in the Pullman-Moscow community, the WSU Police Department had a long, troubling and sordid history of tolerating and, in fact, fostering inappropriate sexual behavior in its own ranks and discouraging complete and accurate reporting of occurrences of such misconduct.

162.    When Kohberger arrived in the Pullman-Moscow community for the 2022 fall semester, WSU was roiling from sexual misconduct allegations and a related investigation that resulted in the resignations of WSU Police Department senior leadership.

163.    The scandal and investigation that consumed the WSU Police Department in the fall of 2022 was not the first such scandal. In 2007, WSU's Police Chief Steve Hansen was demoted from his position after a WSU internal auditor's investigation concluded that Hansen had viewed emails containing inappropriate content on his university computer, forwarded those emails to other WSU police, and invited other members of WSU police to view them:

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654





⏰ April 6, 2007

# Hansen steps down as WSU police chief

👤 By Communications staff, Washington State University

𝕏 ⓕ in ⧨ ✉ 🔗

PULLMAN – Washington State University Police Chief **Steve Hansen** will step down from that position, which he has held since 2000 and become a lieutenant on the force.

The announcement comes at the conclusion of a WSU internal auditor's investigation into a complaint of improper computer use in the police department. According to the auditor's report, Hansen viewed e-mails that were sent to him containing inappropriate material, forwarded such e-mails to Assistant Chief **Scott West** and invited other members of the department to view them.

University policy forbids use of university time and computers for such activity.

"That was a mistake on my part and I want to apologize for the embarrassment it has caused the department and the university. Because of this situation, I accept the administration's decision to demote me to lieutenant," Hansen said.

164.    In 2011, federal education officials fined WSU $82,500 over a separate campus safety incident that occurred in 2007 involving multiple sexual assaults:

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **42** of **126**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19



165.    Federal education officials completed an investigation of WSU's campus safety statistics and determined that WSU had not properly reported two sexual assaults in violation of the Clery Act.

166.    Federal law requires campus notification of potential threats to students and employees.

20
21
22
23
24
25
26

COMPLAINT FOR
DAMAGES



167.    Federal officials charged WSU with failing to properly disclose forcible sex crime statistics and to properly classify offenses in its annual security report.

168.    The charges arose out of two incidents in 2007.

169.    In one incident that occurred in August 2007, WSU police labeled the offense as a "domestic dispute" even though investigators found it included a rape perpetrated by the friend of the victim's husband.

170.    In the second incident, a January 2007 police report of sexual assault was relabeled as "unfounded" by a WSU police records manager without authority to make such changes.

171.    WSU did not dispute the findings of the federal investigation.

172.    In early August 2022, the Police Chief, Assistant Chief, and Captain of the WSU Police Department resigned from their positions to avoid investigation into yet another incident of serious sexual misconduct involving a WSU police officer:

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **44** of **126**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17
18
19
20
21
22

173.    WSU initiated a disciplinary investigation into the WSU Police

Department for failing to advise university leadership of a 2020 departmental

investigation involving a WSU police officer alleged to have engaged in sexual

activities on campus and while on duty.

23
24
25
26



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

174.   Joint disciplinary investigations were initiated by the office of Compliance and Civil Rights (CCR) and the Human Resource Services office (HRS).

175.   The investigation revealed that in December 2020, a WSU police officer notified WSU Police Department command staff that they learned of possible nonconsensual sexual activity between another WSU police officer and a victim on campus.

176.   The allegations of improper sexual activities included that the WSU police officer had sex with the victim in the presidential suite at the Martin Stadium and at the WSU Observatory while he was on duty as a WSU police officer.

177.   The offending officer told departmental staff that he was willing to identify the name of the woman involved, but the WSU police department investigators said that was not necessary and then misleadingly wrote in their internal report that they could not substantiate the allegations without talking to the victim, whose identity they did not have.

178.   Despite being advised of these incidents, the WSU police command staff failed to advise the CCR as required by WSU policies.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **46** of **126**

179.   Instead, the WSU Police Department attempted to keep the incidents internal, and claimed to ultimately be unable to locate any witness willing to file a complaint against the offending officer.

180.   Despite that, the WSU Police Department offender did face internal disciplinary action for misconduct while on duty.

181.   In March 2022, WSU administrators learned about the 2020 incident and the WSU Police Department's investigation that was previously unreported to administration.

182.   Investigations were then initiated by the WSU CCR and HRS and the WSU Police Department command staff were advised that disciplinary proceedings had been initiated against them based on the investigation's findings that they exhibited gross misconduct, incompetence, and neglect of duty in their response to claims of sexual misconduct involving the WSU officer.

183.   All of the WSU Police Department command staff then announced their resignations and retirement before the disciplinary process concluded.

184.   In response to the resignations, WSU President Kirk Schulz stated, "These are positions of great public trust and WSU will not tolerate this kind of behavior nor the negligence of departmental command staff."

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 47 of 126

185.  WSU then hired the retired Chief of Police of the City of Pullman's Police Department to serve as interim Chief of Police of the WSU police department.

186.  The offending WSU officer, however, did not resign, and WSU continued to conduct a formal investigation under Title IX.

187.  WSU's CCR then proceeded to spend months during the 2022 fall semester investigating the allegations of serious sexual misconduct of its WSU police officer.

188.  The offending WSU police officer admitted to having sex while on duty.

189.  The WSU investigation found that the offending officer engaged in predatory grooming behavior while in a supervisory role at the university, made sexually explicit comments to coworkers, subjected coworkers to nonconsensual physical contact, and engaged in sexual activities while on duty and on university property.

190.  WSU records also reveal that the WSU police had a history of sexual misconduct while on duty, directed toward fellow employees, including student interns.

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

191.    The offending WSU police officer had a reputation of engaging in sexual activities around the Pullman campus, including in the Presidential Suite at Martin Stadium and the WSU Observatory.

192.    Fellow WSU police officers also told investigators that they had concerns about the offending officer making comments about student interns such as, "Can you have them do that [a calisthenics movement] again?" and "Got any hot interns this year?"

193.    The offending WSU officer also sent inappropriate pictures to a former employee and used a ringtone on his cellphone associated with a pornography website.

194.    The offending WSU officer also groped a newly hired female employee of the WSU Police Department, who complained to a fellow officer. Despite reporting that incident, it was not documented by WSU or disclosed to CCR.

195.    In early November 2022, the offending WSU police officer resigned from the university:

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 49 of 126

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17



18
19      196.    Ultimately, the investigation determined that the WSU Police

20  Department command fostered an environment that discouraged reporting

21  sexual misconduct.

22
23      197.    These serious sexual misconduct allegations and the ensuing

24  months-long investigation and findings regarding the WSU Police Department

25
26



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

during the 2022 fall semester substantially preoccupied WSU administrators and, in particular, the WSU CCR office.

198.   As discussed in detail below, around this same time period, WSU's CCR office had received numerous formal complaints about Kohberger's discriminatory, harassing, stalking and predatory behavior, but had not acted on those complaints or even met with or spoken to Kohberger about them.

**d. WSU brings Kohberger to the Pullman-Moscow community and quickly learns of his threatening, stalking and predatory behavior**

199.   Born in 1994, Bryan Kohberger grew up in rural eastern Pennsylvania.

200.   In high school, Kohberger was overweight, bullied, and had difficulty developing relationships with female students.

201.   It was later reported that Kohberger has autism spectrum disorder.

202.   Later in school, Kohberger lost significant weight and became more aggressive with classmates.

203.   Over a number of years before he came to the Pullman-Moscow community, Kohberger made numerous public posts on an online forum called the "Visual Snow or Static Forum." People with "visual snow" report seeing



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

small, moving dots across their field of vision. Kohberger posted about his "crazy thoughts," depersonalization, inability to feel emotion, that he was a "blank soul," and his despair.

204.    Kohberger posted online that "As I hug my family, I look into their faces, I see nothing, it is like I am looking at a video game, but less."

205.    Kohberger wrote that he could do "whatever I want with little remorse."

206.    Kohberger also wrote about an array of mental health challenges that he faced, including anxiety, depression, depersonalization, lack of emotion and his "constant thought of suicide."

207.    Kohberger also developed a heroin addiction while in high school, that he funded in part by theft.

208.    Kohberger attended a law enforcement vocational program in high school, but was kicked out of the program his junior year due to a series of complaints from female classmates. According to the administrator of the program, "To be removed from a program, [the conduct] has to be pretty severe." Kohberger was then transferred to an HVAC vocational program because it did not have any female participants.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 52 of 126

209.   Kohberger did not attend the vocational program his senior year, and finished his high school degree online, graduating from Pleasant Valley High School in 2013.

210.   In 2014, Kohberger was arrested in Pennsylvania for theft.

211.   Kohberger went on to attend DeSales University in Pennsylvania, seeking a graduate degree in criminology.

212.   At DeSales, Kohberger demonstrated a particular fascination with serial killers.

213.   Also while at DeSales, Kohberger reportedly made multiple women uncomfortable.

214.   Employees at local businesses in Kohberger's community were so concerned about his behavior that they took extraordinary measures. For example, female staff at a local brewery complained about Kohberger's behavior and even made a note in their electronic ID system that would warn staff about his conduct when his ID was scanned. The female staff noted that Kohberger would make creepy comments and ask probing questions like where they lived and he would get upset if they did not answer.

215.   After obtaining his master's degree from DeSales, Kohberger applied to the Ph.D. program at WSU.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 53 of 126

216.    Kohberger was selected for the Criminal Justice Program by a WSU panel.

217.    WSU also hired Kohberger to be a teaching assistant. As part of this employment, WSU provided him with reduced/free tuition by giving him a nonresident tuition waiver, on-campus office, on-campus housing, health insurance benefits, and paid him a bi-weekly salary.

218.    As a result of WSU accepting and hiring Kohberger, he moved from Pennsylvania to Pullman, Washington in July 2022.

219.    In fact, the terms of WSU's agreements with Kohberger required that he live in Washington in order to receive the benefits that WSU was offering to him.

220.    Kohberger would later tell law enforcement that he did not know much about Washington or Idaho, and that prior to moving to Washington, he had not left the tri-state area much in the Atlantic Northeast. In fact, before WSU hired Kohberger, he had never been to the Pacific Northwest.

221.    On July 9, 2022, shortly after arriving at WSU, Kohberger attended a pool party in nearby Moscow, Idaho.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 54 of 126

222.   Moscow, Idaho is the home of the University of Idaho, and is less than 10 miles from the WSU campus in Pullman, Washington. These two universities are the primary employers in both of their respective counties.



223.   As neighboring small "college towns," there is expected and considerable interaction between the students enrolled at WSU and the students at the University of Idaho. As evidence of that well-recognized fact, the probable cause affidavit that ultimately was used to obtain an arrest warrant for Kohberger, signed under penalty of perjury by Corporal Brett Payne of the Moscow, Idaho Police Department, states: "Both Pullman and Moscow are small college towns and people commonly travel back and forth between them."

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 55 of 126

224. For over 50 years, WSU and the University of Idaho have cooperated on sharing academic resources and have enriched educational opportunities through the sharing of faculty, facilities, and ideas.

225. WSU and the University of Idaho allow students at each school to take courses at the other school.

226. WSU and the University of Idaho have cooperative programs and cross-listed courses.

227. The Presidents and Provosts at University of Idaho and WSU stated that "[f]or years the University of Idaho and Washington State University have been offering courses together to allow a varied and robust educational experience for our students."

228. In fact, the WSU Criminal Justice and Criminology department regularly interacts with professors and students enrolled at the University of Idaho.

229. The WSU Criminal Justice and Criminology program advertises on its main webpage its relationship with the University of Idaho:

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **56** of **126**



230.   The WSU Criminal Justice and Criminology program also offers a study aboard program to University of Idaho students that it also promotes on its website:



231.   Moscow, Idaho and Pullman, Washington are often referred to together as the "Pullman-Moscow" or "Moscow-Pullman" area.

COMPLAINT FOR
DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

232.    The United States Census Bureau has a combined statistical area for the cities of Moscow and Pullman that has the official name "Pullman-Moscow, WA-ID CSA."

233.    The Pullman-Moscow region is also known collectively as the Palouse.

234.    The Pullman-Moscow region shares many common resources and the communities cooperate with each other.

235.    The regional airport serving the cities is the Pullman-Moscow Regional Airport, and the local newspaper is the Moscow-Pullman Daily News.

236.    There is also cooperation in the Pullman-Moscow region on the issue of public safety.

237.    The Pullman Police Department and the Moscow Police Department have formal mutual aid agreements and routinely cooperate on law enforcement matters and emergency dispatch services.

238.    The City of Moscow contracts with WHITCOM in Pullman for all of its dispatching and emergency 911 services.

239.    WHITCOM is an agency that consists of the County of Whitman, City of Pullman, and WSU.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

240.   According to the Moscow Police Department, "[t]he partnership with Whitcom has provided the community of Moscow and the University of Idaho with advanced support in many technical fields."

241.   The July 2022 pool party attended by Kohberger was located near the University of Idaho campus at an off-campus apartment complex called the Grove at Moscow. The Grove apartment complex is a mere one-mile distance from the home of the four students that would later be murdered by Kohberger.

242.   Kohberger had been invited to the Moscow, Idaho pool party by another WSU student and many of the people attending the party were graduate students.

243.   Kohberger made multiple females uncomfortable at the pool party in Moscow, Idaho.

244.   When Kohberger arrived to the pool party he approached a female student from the University of Idaho that was in the property's office and asked how to get to the pool. She was wearing a sundress with a swimsuit underneath. She reported that Kohberger was blatantly staring at her body and acted weird. When she later went to the pool, Kohberger made very direct eye contact with her and then made a beeline towards her. She was uncomfortable and "weirded

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 59 of 126

out" by Kohberger's behavior and his staring. The interaction was concerning enough that another attendee intervened to intercept Kohberger.

245.    Another female attendee told Kohberger that she was married in an attempt to end the conversation, but Kohberger persisted in engaging with her. A male attendee finally had to physically intervene, but Kohberger continued to be fixated on the girls.

246.    Another female attendee also reported that Kohberger behaved oddly at the pool party and gave an "off" vibe that caused her to keep her eye on him.

247.    On August 17, 2022, the WSU graduate program hosted a meet and greet event on the WSU campus. Kohberger attended and fellow graduate students noted that they did not like their interactions with him.

248.    At the graduate school orientation in August 2022, a fellow WSU graduate student instantly had a bad feeling about Kohberger from the moment that he approached her.

249.    A fellow WSU graduate teaching assistant quickly identified Kohberger as a threat:

"Pretty early on, I started leaving my office door open when he was in his office, especially if there was ever a student in there,

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 60 of 126

because I just wanted to make sure that nothing was inappropriate. Like, I felt way early on that this guy was going to do something inappropriate with a student."

The teaching assistant indicated that she pegged Kohberger as a "stalker or sexual assaulter type."

250.    Most, if not all, of Kohberger's fellow graduate students were also Teaching Assistants or Research Assistants employed by WSU and, as such, were mandatory reporters of any instances of sexual discrimination, sexual harassment, and stalking under WSU policies and Title IX.

251.    Some instances of Kohberger's discriminatory, harassing, and stalking behavior were reported to WSU administrators, but many instances went unreported in violation of WSU policies and Title IX.

252.    Kohberger's supervising instructor at WSU was aware early on that the female graduate students did not like Kohberger because he was so off-putting and that several female graduate students were very uncomfortable because of interactions they had with Kohberger.

253.    Kohberger was known by WSU professors and fellow students to have a particular interest in studying sexually motivated burglars and to be obsessed with serial killers.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 61 of 126

254.   One fellow WSU graduate student reported that based on how Kohberger talks to and treats women, people in the WSU Criminal Justice Program thought that he was a "possible future rapist."

255.   During the second or third week of the semester, a female WSU graduate student hosted the whole graduate cohort at her apartment to watch a ballgame. Kohberger attended the event. Afterward, Kohberger began telling others about prescriptions that she took, leading the graduate student to suspect that he had looked through her medicine cabinet while attending the event at her apartment.

256.   Female graduate students would complain that Kohberger made them uncomfortable, feel unsafe, that he was "creepy" and would try to distance themselves from him, including physically spacing out from Kohberger in classrooms.

257.   There were numerous instances where Kohberger would stare at students weirdly during class, making students uncomfortable. Kohberger's supervising instructor at WSU believed that Kohberger did this in a way to display power or dominance. Kohberger's supervising instructor also was aware of a complaint made by a senior student that Kohberger stared at her a lot in class and that it made her feel uncomfortable.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

258.    Kohberger would engage in similar inappropriate behavior with WSU instructors. The instructor under whom Kohberger served as her undergraduate teaching assistant reported that she would regularly interact with him and that he was frequently in her office. That instructor stated that Kohberger would stand behind her while she was working at her desk and stare over her shoulder at her. This instructor had another WSU professor escort her to her car at the end of the workday because Kohberger's behavior was of such concern. Kohberger's inappropriate behavior with this instructor also was reported to other WSU professors.

259.    Another female WSU staff member described Kohberger as "creepy" and stated that he would simply stand at her desk and stare at her or her co-worker. She also observed Kohberger physically block her co-worker in her desk area. Kohberger would also follow this female staffer and her co-worker to their cars at the end of the day, causing her to arrange for escorts at 5:00 pm after work to safely get to their cars.

260.    There were also numerous instances where Kohberger would block the door and trap female graduate students in their on-campus student offices for long periods of time. In one instance, a WSU professor heard a female graduate student say, "I really need to get out of here" and the professor intervened by

COMPLAINT FOR DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 63 of 126

going to the office to allow the female student to leave. One female graduate student reported that Kohberger would trap her in her office and that he would try to talk to her about the Ted Bundy murders.

261.    Some WSU graduate students would try to keep their on-campus office doors closed in order to keep Kohberger out.

262.    Yet other WSU graduate students would keep their office doors open as a place of refuge for others in the event that Kohberger was present.

263.    Kohberger was perceived by female classmates as dominant and sexist, and was disrespectful to female instructors.

264.    Kohberger's coworkers in the WSU Criminal Justice Program believed that he was an "incel" or involuntary celibate and was sexually frustrated.

265.    By September 2022, Kohberger had developed a reputation at WSU for "being a dick."

266.    Kohberger also developed a reputation at WSU for being very homophobic.

267.    Kohberger would pick fights with other WSU classmates, and his arguments would leave the class upset.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **64** of **126**

268.   Kohberger was described as "very angry, as if he had built up a fury or rage."

269.   Kohberger tended to be aggressive when interacting with female colleagues, and would get agitated, argumentative and confrontational during class instruction, as well as out of the classroom, often prompting other classmates to intervene.

270.   In one instance that occurred during the first few weeks of the semester, a confrontation with Kohberger made a female student so upset that she fled the classroom in tears during the middle of class leaving her possessions behind. Professors in the WSU graduate program were aware of the incident at the time that it occurred. The student later filed a complaint against Kohberger with the WSU CCR office. The student filed this complaint with the goal of creating documentation of the incident should further issues arise with Kohberger. Kohberger was supposedly spoken to about his inappropriate behavior, but nothing further was done about this incident.

271.   Kohberger's female classmates kept a board with a running tally of his behaviors in female instructor-led classes versus male instructor-led classes, as well as documenting his discriminatory comments and behaviors with colleagues, and instances of aggressively staring at students. During one

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 65 of 126

particular class, Kohberger stared at a female student nine times. WSU

professors were aware of this tally board concerning Kohberger's behavior.

272.   In one incident, Kohberger and a female WSU graduate student

were alone in a classroom and Kohberger physically blocked her from leaving

the room.

273.   In another incident, Kohberger asked out a fellow WSU staff

member who rejected his advance, and then he followed her outside to her car.

That WSU staff member told another female WSU graduate student that

Kohberger had been stalking her. This resulted in another report being filed with

WSU's CCR office.

274.   Colleagues in the WSU Criminal Justice Program also were aware

that undergraduate students were uncomfortable around Kohberger.

275.   Kohberger's officemate, a fellow WSU teaching assistant for the

Criminology program, was aware that Kohberger attempted to use his authority

as a TA to inappropriately interact with female students. The officemate thought

that Kohberger wanted a girlfriend and would frequently talk about his desire for

a girlfriend.

276.   A 19-year-old WSU sophomore first met Kohberger when he came

to her student office. Shortly thereafter, Kohberger started coming to her office

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 66 of 126

nearly every day to talk. Kohberger's office was located in a different part of the

building, and he did not have a particular reason to be in the area of the

sophomore's office. The topics of his conversations became more personal

rather than focused on his studies or work as a WSU teaching assistant. The

sophomore would try to focus on her work, but Kohberger would remain in her

office whether or not she interacted with him. She described her interactions

with Kohberger as uncomfortable.

277.   On one occasion, the sophomore returned to her office to find

Kohberger inside. She told him that she was closing the office and he followed

her outside. Kohberger then asked if she wanted to get coffee, but the

sophomore declined and stated that her girlfriend was coming to pick her up.

The sophomore told her bosses at WSU about the incident. In response, they

told her that she should not be alone with Kohberger and suggested that she have

campus security escort her out. Her bosses at WSU also told the sophomore that

she was not the first to report such problems about Kohberger.

278.   Kohberger continued to come to the sophomore's campus office

when she was alone. On another occasion, Kohberger stood directly behind the

sophomore's chair as she was working. He stood directly behind her for a while

and did not move until another WSU advisor came into the room.



279.   The sophomore was told that WSU staff had talked to Kohberger as many as five times about his inappropriate behavior. When she would see Kohberger in the hallway he would physically corner her and attempt to force a conversation even though the sophomore tried not to engage. The sophomore found these experiences to be "scary," especially when she was alone.

280.   The sophomore thought it was strange that Kohberger seemed to know her schedule and would intentionally encounter her. In another incident, the sophomore saw Kohberger walking outside as she was locking up her campus office. Kohberger made eye-contact with the sophomore through the window, as if he was looking for her in anticipation, and then he entered the office building. In order to avoid contact with Kohberger, the panicked sophomore fled into the bathroom to hide. She hid out of instinct, due to how uncomfortable contact with Kohberger had become.

281.   Out of concerns over Kohberger, the sophomore's boss at WSU would occasionally take her home so that she would not have to walk by herself or take public transportation. The sophomore became concerned about how many precautions needed to be taken because of Kohberger's behavior.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

282.   In another incident, the sophomore's neighbor informed her that someone was lurking outside the window of her residence and warned her to lock the door. She later learned that Kohberger lived nearby.

283.   Kohberger's supervising instructor at WSU was aware that the sophomore had made complaints about Kohberger's behavior.

284.   Another female undergraduate student who attended a class where Kohberger was the assigned teaching assistant reported that he always seemed to be staring at her when she would look up. She also noted that Kohberger would intentionally leave the class at the same time as her and follow her to her car. Later, that student learned that Kohberger had photos of her and her female classmates on his cellphone.

285.   A WSU employee, who was assigned to work with Kohberger, began receiving complaints in late August 2022 from students and staff in the Criminal Justice Program about Kohberger's inappropriate behavior. Because of these complaints, the WSU employee spent a lot of time—at least once a week—speaking about Kohberger during different disciplinary meetings. These meetings focused on Kohberger's interactions with fellow graduate students, in and out of the classroom, along with his behavior around some of the criminal justice professors. The various complaints included outspoken discriminatory

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **69** of **126**

comments which were homophobic, ableist, xenophobic, and misogynistic in nature. Other complaints included that Kohberger would stare at people and stand uncomfortably close or lean over women, making them uncomfortable. As a result of the complaints, the WSU employee brought Kohberger to her office to talk about the complaints and attempt to get him to correct his behavior, but Kohberger deflected personal responsibility.

286.    On more than one occasion, WSU employees would stay in a room where Kohberger was engaging with a WSU colleague out of concern that the colleague should not be left alone with Kohberger. In one instance, a WSU employee told the colleague to email her with the subject heading "911" if she needed help.

287.    Another WSU professor was asked by WSU staff to check in on another colleague because Kohberger had been harassing her.

288.    A fellow female WSU graduate student was asked by WSU to start keeping track of Kohberger's behavior toward her. The student had already made an informal report about Kohberger to WSU, but she did not like the way WSU responded because she felt that they would not adequately protect her from retaliation. The student continued to report her experiences with Kohberger

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **70** of **126**

to WSU, including to the program chair and other professors, and reported that Kohberger's actions made her feel unsafe.

289.    Another fellow female WSU graduate student made multiple complaints to WSU about Kohberger's behavior. She was directed to copy her complaints to another WSU department, but she was reluctant to do so because she had bad experiences with that in the past.

290.    As early as mid-September 2022, WSU professors were discussing the "need to do an intervention with Kohberger" because "he's offended several of our female students." When asked "how do you want to handle this," another WSU professor responded, "Let's see when we have more info."

291.    Around September or October 2022, a fellow WSU graduate teaching assistant was asked to monitor Kohberger's behavior because others at WSU wanted to track it. The teaching assistant was instructed to write down anything she saw and notify WSU staff. It was discussed that WSU could not give Kohberger a Ph.D.—and the resulting authority that could give him—out of concern over his inappropriate behavior.

292.    Also around September or October 2022, a female graduate student came to a WSU professor to report that someone had broken into her apartment and stolen intimate items such as perfume and underwear, and that the student

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **71** of **126**

was very scared. That WSU professor also believed that Kohberger was stalking people.

293.    In another incident, Kohberger got into an argument with his WSU mentor and supervising instructor for whom he also served as a teaching assistant. This argument escalated to the point of shouting and the instructor telling Kohberger to leave his office. Kohberger refused to leave the instructor's office, causing the instructor to leave his own office. It was common for Kohberger to prevent his mentor and instructor from leaving his office which the mentor believed was Kohberger "power tripping" to exert control.

294.    Kohberger was also known to make unwanted advances to a female employee of the WSU bookstore. A male bookstore coworker would attempt to intervene to prevent Kohberger from interacting with the female employee. The female employee was unsettled that Kohberger knew her name even though she did not wear a name tag and had not told him her name. It also seemed to the female employee that Kohberger knew what hours she worked and he would make remarks about her schedule. One evening, the female employee was home alone and changing in her bedroom when someone knocked on her window. She called her husband to come home from work. On another occasion, she heard someone on her porch in the evening. Her husband came home again and saw a



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

white car leaving the area. Kohberger drove a white car. Both occurrences were in August or September 2022.

295.   A WSU employee—whose duties include investigating and providing education, mediation and other disciplinary focused responses to complaints or reports made by members of the student body, especially complaints that have a discriminatory nexus—stated that she never interacted with Kohberger but admitted that she had received 13 reports highlighting concerns regarding his behavior.

296.   One fellow female WSU graduate student reported that the way Kohberger spoke to females in the department was unsettling to them and that she had never met anyone that acted in such a condescending manner as Kohberger. She wondered why people in power in the WSU Criminal Justice Department did not address his behavior.

297.   On November 2, 2022, WSU put Kohberger on a brief, vague and non-specific four point "improvement plan" due to his inappropriate behavior, but that plan set no specific goals:

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **73** of **126**

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15
16
17
18
19
20
21
22
23
24
25
26

298.    On Tuesday, November 8, 2022, WSU conducted a remedial

mandatory discrimination and harassment training for all graduate students due

to Kohberger's inappropriate behavior. During Kohberger's attendance at this

training, WSU staff observed him sitting at the back of the room with his hands

behind his head and staring at the ceiling.

299.    The graduate students knew that the discrimination and harassment

training was specifically due to Kohberger's behavior.

300.    The November 8, 2022 discrimination and harassment training

embarrassed Kohberger in front of his entire cohort, something that WAVR-

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **74** of **126**

21™ specifically advised against and warned that in a campus setting,

problematic individuals are most likely to become violent in the days following

a shameful or rejecting event, such as a reprimand.

301.    During one faculty meeting, a discussion concerning Kohberger

took up most of the time because he was highly problematic. Concern was

expressed about Kohberger's behavior around women, including that he was

aggressive towards women and made them feel uncomfortable. The WSU

faculty discussed if, or how, they could intervene. One WSU professor warned

her colleagues at that meeting that Kohberger was a predator:

> "He is smart enough that in four years we will have to give him
>
> a Ph.D. Mark my word, I work with predators, if we give him a
>
> Ph.D. that's the guy that in that many years when he is a
>
> professor, we will hear is harassing, stalking, and sexually
>
> abusing … his students at wherever university he ended."

That WSU professor also believed that Kohberger was already stalking people.

302.    Kohbeger's supervising instructor at WSU, however, was

concerned that removing Kohberger from employment with WSU would open

the university up to a civil lawsuit from Kohberger.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **75** of **126**

303.   Despite numerous complaints about Kohberger's behavior from students, faculty and staff, WSU failed to properly and adequately intervene or take steps to mitigate and prevent further threatening, dangerous and predatory behavior by Kohberger.

304.   WSU had actual knowledge of significant problematic and dangerous behavior that should have caused WSU to perform a formal and comprehensive threat assessment on Kohberger. For example, WSU did provide safety escorts to concerned staff and students, evidencing its awareness of the significant danger that Kohberger posed to the Pullman-Moscow community.

305.   There is no indication, however, that WSU used its TAT to conduct a threat assessment of Kohberger or that it employed any of the potential interventions recommended by its WAVR-21™ protocols.

306.   Had WSU's TAT conducted a proper and comprehensive threat assessment, it would have readily identified that Kohberger prominently displayed nearly every red flag that WAVR-21™ warns about.

307.   For instance, a proper threat assessment would have found, among other things, that Kohberger had characteristics associated with a heightened risk for violence including anger problems, lack of empathy, and a strong sense of entitlement.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

308.    A proper threat assessment also would have shown other recognized serious warning signs for violence, including but not limited to: (i) that Kohberger was engaging in stalking and menacing behavior that was escalating and instilling extreme fear in his female victims; (ii) that he was having increasing conflict with professors and colleagues; (iii) that he was having increasing problems with his work performance; (iv) that he was autistic and sexually frustrated; (v) that he was preoccupied with violent homicidal fantasies, sexual burglary and serial killers; (vi) that he was in possession of a Ka-Bar military-style hunting knife; (vii) that he was using WSU's ResNet internet network for improper purposes, such as troubling searches and stalking and planning his attack and murder of decedents; and (viii) that he had photos of WSU and University of Idaho female undergraduate students on his cellphone.

309.    Had WSU performed a proper threat assessment, it would have determined that Kohberger posed an extremely high and imminent risk of violence.

310.    A proper threat assessment would have required that WSU identify likely targets of any possible violence that Kohberger might commit, including by examination of his cell phone, computers, internet search history, and an inspection and search of his university-supplied apartment and office.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 77 of 126

311.   A proper threat assessment also would have required that WSU identify potential triggering events that could cause Kohberger to commit violence.

312.   A proper threat assessment also would have required that WSU identify steps that could be taken to manage and mitigate Kohberger's risk for violence.

313.   There is no indication that WSU's CCR office conducted a proper, comprehensive or timely investigation into the more than a dozen formal complaints made about Kohberger.

314.   There is no indication that WSU did any of these things. Instead, for months it continued in a state of organizational and bureaucratic paralysis while continuing to employ Kohberger as a teaching assistant, continuing to provide Kohberger with housing, health benefits, free tuition, free internet access, continuing to pay Kohberger a salary, and continuing to provide Kohberger with academic studies focused on criminal behavior that fed his preoccupation and obsession with sexual assault and mass murder.

     **e.  Kohberger commits mass murder which was foreseeable to WSU**



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

315.   On the weekend immediately following the November 8, 2022 discrimination and harassment training, Kohberger commits mass murder which was foreseeable to WSU.

316.   In the early morning hours of November 13, 2022, while he was still employed by and enrolled at WSU, Kohberger stared through the back window of a home at 1122 King Road in Moscow, Idaho ("King Road residence"), immediately adjacent to the University of Idaho.



COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **79** of **126**

1

2

3

4

317.    Kohberger, masked and dressed in all black, entered the King Road residence by slipping through a kitchen sliding glass door at the back of the home:



318.    Kaylee Goncalves was heard to frantically yell in fear, "someone's here."

319.    Kohberger was heard to say, "It's ok Kaylee, I'm here for you."

COMPLAINT FOR DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 80 of 126

1
2
3
4

320.   Using a military style Ka-Bar knife, Kohberger then violently stabbed to death four victims that were later identified by police as Kaylee Goncalves, Madison Mogen, Xana Kernodle, and Ethan Chapin.

5
6
7

321.   Below is a photograph of the victims taken only a matter of hours before their murders:

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24

322.   The victims were all undergraduate students at the University of Idaho.

25
26



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

323.    Police found defensive knife wounds on both Xana Kernodle and Madison Mogen's hands.

324.    Kaylee Goncalves was unrecognizable as her facial structure was extremely damaged.

325.    Two other female residents of the King Road residence survived the encounter.

326.    A surviving 19-year-old resident of the King Road residence reported to police that before the murders, Kaylee Goncalves had seen a shadowy figure watching her from the tree line at the back of the residence which freaked her out.

327.    Goncalves had also told her family and roommates about a stalker in Moscow, Idaho that had followed her to her car.

328.    The 19-year-old resident of the King Road residence also reported to police that she and another roommate were often "freaked out" at the home because they felt there was someone watching them from outside the back window.

329.    During the time of the murders, the 19-year-old resident heard Goncalves crying and Kohberger telling Goncalves that he was there for her.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **82** of **126**

330. On November 13, 2022, and in the days following, both WSU and the University of Idaho sent alerts to their students and staff about the murders and potential ongoing risk.

331. After the quadruple murders, but before Kohberger was identified as a suspect, Kohberger's supervising instructor at WSU considered the possibility that Kohberger had committed the murders. Similarly, fellow WSU graduate students also immediately thought Kohberger committed the murders.

332. Kohberger's officemate and fellow Teaching Assistant employed by WSU observed a large scratch on Kohberger's face which looked like scratches from fingernails. Other members of the WSU Criminology program also observed wounds on Kohberger's hands following the murders.

333. None of members of the WSU Criminology program, however, notified law enforcement about Kohberger's behavior or their suspicions about his potential involvement in the murders.

334. Video evidence led the Moscow, Idaho Police Department to believe that a white Hyundai Elantra may have been involved in the murders.

335. On November 25, 2022, the Moscow Police Department asked the Pullman-Moscow area law enforcement agencies to be on the lookout for a white Hyundai Elantra.

COMPLAINT FOR
DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

336.    In response to this request, on November 29, 2022, WSU Police Officer Daniel Tiengo searched a WSU database for white Elantras registered with WSU and identified a 2015 white Elantra with a Pennsylvania license plate registered to Kohberger, residing at 1630 NE Valley Road, Apt. 201, Pullman, Washington. No apparent action was taken by WSU at this time.

337.    1630 NE Valley Road is an apartment complex that houses WSU graduate students and is referred to as Steptoe Village:



338.    WSU owns and operates Steptoe Village and had provided Kohberger with a residence there as part of his employment with the university.

339.    On that same day, November 29, 2022, at approximately 1:00 a.m., WSU Police Officer Curtis Whitman was searching for any white Hyundai

COMPLAINT FOR
DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Elantras and located a 2015 white Elantra in a parking lot at 1630 NE Valley Road. This car had a Washington license plate but it also was registered to Kohberger. No apparent action was taken by WSU at this time.

340.   The 2022 fall term then ended in mid-December and Kohberger promptly returned back to his family home in Pennsylvania.

341.   Only after the murders and after the semester had concluded did WSU make the belated decision to terminate Kohberger's teaching assistantship, cut Kohberger's funding and remove him from the graduate program.

342.   As part of its ongoing investigation into Kohberger, the Moscow Police Department obtained Kohberger's cell phone records in an effort to determine if Kohberger stalked any of the murder victims prior to the killings or conducted surveillance on the King Road residence.

343.   A subsequent examination of Kohberger's cellphone confirmed that he was stalking female students at both WSU and the University of Idaho, with dozens of photos of students, many in bathing suits.

344.   Kohberger's cell phone records also revealed that he had been in the area of the King Road residence on at least 12 occasions prior to November 13, 2022. All but one of these occasions occurred in the middle of the night. On

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 85 of 126

one occasion, Kohberger was in the area of the King Road residence on August 21, 2022 from approximately 10:30 p.m. to 11:30 p.m.

345.    On December 30, 2022, Kohberger was arrested for burglary and four counts of murder at his family's residence in Pennsylvania.

346.    Also on December 30, 2022, WSU issued a press release regarding Kohberger's arrest in connection with the quadruple murders:



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

347.   In the press release, WSU's Chancellor and Provost stated that "[t]his horrific act has shaken everyone in the Palouse region." She further stated that "[w]e also want to extend our deepest sympathies to the families, friends, and [University of Idaho] Vandal colleagues who were impacted by these murders. We will long feel the loss of these young people in the Moscow-Pullman community and hope the announcement today will be a step toward healing." The press release further indicated that Kohberger had completed his first semester as a Ph.D. student in WSU's criminal justice program earlier that month.

348.   On December 31, 2022, WSU served a belated "Trespass Admonition" on Kohberger, signed by WSU Chief of Police Gary Jenkins, which provided:

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

**WASHINGTON STATE**
U N I V E R S I T Y

Office of Public Safety
Gary Jenkins, Chief of Police

**Trespass Admonition**

Date:        December 30, 2022

Addressee:   Bryan Kohberger (DOB: 11-21-1994)

Address:     1630 NE Valley Rd G201
             Pullman, WA 99163

RE:          Trespass Admonition

This admonition is to inform you that you have been trespassed from all areas of Washington State University campuses. This includes all buildings, sidewalks, breezeways, courtyards, access roads, and parking lots and any other Washington State University campus property. This admonition is effective immediately and will continue until pending student conduct charges have been resolved and you have been given permission in writing to return to campus.

Trespassed means that your privilege to be on or in the area(s) listed above has been revoked or denied by Washington State University. If you are found in the area(s) listed above in violation of this admonition, or if at the conclusion of an investigation it is determined you were actually in or on the area(s) listed above in violation of this admonition, you may be subject to arrest and prosecution for Criminal Trespass under RCW 9A.52.070 or 9A.52.080.

If you have a legitimate business need with Washington State University you must be escorted by an official with Washington State University, and arrangements for such escort must be made prior to you entering the area(s) listed above. This means you must make arrangements with WSU Police 509-335-8548 before coming on campus for any reason.

Sincerely,

Gary Jenkins, Chief of Police
Washington State University

23
24
25
26

349.   After being served with the admonition, Kohberger signed an acknowledgment:

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **88** of **126**

I acknowledge that I have read the forgoing trespass admonition/notice.

Bryan C. Kohberger                    12-31-2022            Bryan.
Bryan Kohberger                       Date                  Signature of person served

I have personally served or read (circle one) the forgoing trespass admonition/notice
to the above-named Addressee and have left a copy of the admonition/notice for said
Addressee.

J. GARCIA  151          12/31/2022          Garcia  151
Name of person serving        Date          Signature of person serving

350.    As part of their investigation, law enforcement took into evidence several electronic devices possessed by Kohberger, including a laptop computer, desktop computer, hard drives, and a cell phone.

351.    As set forth above, one of the amenities that WSU provided to Kohberger at his apartment in Steptoe Village was free internet access, both wired and wireless, through WSU's ResNet internet network.

352.    Forensic examination of Kohberger's devices revealed an alarming and menacing history of internet use.

353.    Kohberger had performed many internet searches regarding home invasions, burglary, co-ed killings, and serial killers.

354.    For example, Kohberger had researched a serial killer named Danny Rolling.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 89 of 126

355.   Rolling, known as the Gainesville Ripper, murdered five college students and became the inspiration of the slasher film "Scream."

356.   In the middle of the night, Rolling entered a college apartment through a sliding glass door, masked and dressed in all black, and stabbed his female victims to death using a Ka-Bar knife—chilling facts suggesting that Kohberger murdered his victims in copycat fashion.

357.   Kohberger also performed internet searches about psychopaths and paranoia.

358.   Kohberger searched for porn exclusively involving non-consensual sex acts, using terms such as "aggressive," "forced," "drugged," "sleeping," "passed out," and "voyeurism."

359.   Kohberger's cell phone also contained numerous photos of female students at both WSU and the University of Idaho, including acquaintances of some of the murder victims.

360.   Apparently in preparation for the murders, Kohberger turned off his Wi-Fi and cleared his search history. Forensic examiners believe this was an attempt to conceal his location and the potential evidence that would show he was not at his WSU Steptoe Village apartment at the time of the murders.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 90 of 126

361.   On his school computer, forensic examiners found that Kohberger had made extensive attempts to delete his internet usage for the period of the month before the murders. There was evidence that Kohberger had been using his computer during that time period, but he made attempts to delete the specific details of his use. Forensic examiners believe that he was manually cleaning up his tracks in the lead up to the murders to conceal the plotting, planning and selecting of victims that he had performed on this computer online in the preceding months.

362.   WSU would have possessed details regarding Kohberger's use of the WSU ResNet internet network in the form of logs and other user data on its own servers that would have been unaffected by Kohberger's attempts to conceal and delete his browser history. There is no indication, however, that forensic examiners were given access to WSU's data which, upon information and belief, likely still exists unless WSU has deleted it.

363.   It is reported that Kohberger had followed some of the murder victims on their Instagram accounts and had repeatedly messaged one of the female victims, who rejected his advances.

364.   On May 22, 2023, the Latah County District Judge entered a plea of not guilty for all charges filed against Kohberger.

COMPLAINT FOR DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **91** of **126**

365.   On July 2, 2025, weeks before his trial was scheduled to begin, Kohberger pled guilty to four counts of first-degree murder and burglary in the November 2022 murders of Kaylee Goncalves, Madison Mogen, Xana Kernodle and Ethan Chapin.

366.   On July 23, 2025, Kohberger was sentenced to four consecutive life terms without the possibility of parole.

367.   Following Kohberger's sentencing, the Moscow Police Department and the Idaho State Police began releasing portions of their investigative files. The investigative files contain numerous interviews with WSU employees, faculty, staff, and students that had interactions with Kohberger during the 2022 fall semester, as described in the foregoing paragraphs.

368.   These police interviews, along with other evidence, demonstrate that WSU had extensive knowledge of Kohberger's discriminatory, harassing, and stalking behavior—beginning as early as the first week of the 2022 fall semester—but repeatedly failed to take proper, necessary, and decisive action to address Kohberger's behavior and eliminate the imminent and serious threat that he posed to the Pullman-Moscow community and to the four young victims.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 92 of 126

1

## V.    **Legal Counts**

2

### a.    **Count I – Violation of Title IX of the Education Amendments of**

3

### **1972 (20 U.S.C. § 1681)**

4

5    369.    Plaintiffs incorporate by reference each and every allegation stated

6

above as if stated herein in full.

7

8    370.    Plaintiffs seek to hold WSU liable for its own decisions and actions

9

to remain idle in the face of known extreme and repeated instances of

10

discrimination, sexual harassment, and stalking by Kohberger occurring in its

11

12    educational program throughout the entirety of the 2022 fall semester, that

13    ultimately culminated in Kohberger stalking and murdering the decedents.

14

15    371.    WSU operates an educational program that receives federal

16    financial assistance and therefore is subject to the requirements of 20 U.S.C. §

17    1681, known as Title IX.

18

19    372.    Title IX prohibits sex-based discrimination, including sexual

20    harassment and stalking, in federally funded education programs.

21    373.    Title IX liability arises where the university had substantial control

22

23    over both the harasser and the context in which the harassment occurred, and

24    that the university acted with deliberate indifference to known acts of

25    discrimination.

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

374. The U.S. Supreme Court has recognized that these conditions of control are satisfied most easily and most obviously when the offender is an employee of the university.

375. Similarly, Title IX liability arises where the offender is under the university's disciplinary authority in the setting in which the harassment takes place.

376. The U.S. Supreme Court has recognized a private right of action under Title IX, allowing individuals to seek monetary damages for intentional violations of the statute, including deliberate indifference to sexual harassment and stalking.

377. Liability arises when the university has actual knowledge of the discrimination and acts with deliberate indifference to it.

378. Liability also extends to third-party misconduct when the university's deliberate indifference effectively subjects individuals to discrimination or harassment, including stalking, even if that harassment takes place off the physical property of the institution.

379. The evidence demonstrates that one or more responsible WSU officials exercised sufficient control over the context in which Kohberger

COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

 PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **94** of **126**

1   stalked, planned and ultimately attacked the decedents to support liability under

2   Title IX.

3       380.    The evidence further demonstrates that WSU had actual knowledge

4   of facts that required an appropriate, comprehensive and urgent response, and

5   that WSU officials' failure to escalate and/or properly, decisively and urgently

6   act upon reports of Kohberger's actions was a clearly unreasonable response that

7   demonstrated WSU's deliberate indifference.

8       381.    As explained further above, WSU had substantial control over

9   Kohberger as an employee of the university.

10      382.    WSU had the ability to perform pre-employment vetting, including

11  performing a comprehensive background check and requiring a sexual

12  misconduct declaration.

13      383.    After WSU hired Kohberger, WSU also had control over his

14  training, including mandatory Human Resource Services' Discrimination,

15  Sexual Harassment, and Sexual Misconduct Prevention Training.

16      384.    After WSU hired Kohberger, WSU also had control over his

17  supervision and specifically assigned WSU faculty to serve in that capacity.

18      385.    Kohberger was subject to numerous WSU policies and procedures

19  that set forth the obligations he was expected to perform, as well as the

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **95** of **126**

behaviors that he was prohibited from engaging in—both on and off campus and including periods when the university classes were not in session.

386.    Through its unique employment and financial relationship with Kohberger, WSU exerted substantial control over his conduct by providing him with a salary, housing, medical benefits, tuition, and free internet access—all of which WSU conditioned on Kohberger's good behavior and which WSU could revoke.

387.    WSU also had substantial control over the context in which Kohberger was repeatedly and continually behaving in a discriminatory, harassing, and stalking manner.

388.    Kohberger's offending behavior occurred in WSU classrooms, during instruction and in the presence of faculty, as early as the first week of the semester.

389.    Kohberger's offending behavior also occurred outside of the classroom, but in the halls and offices of the WSU Criminology Department.

390.    Kohberger's offending behavior also occurred in the course and scope of his employment with WSU, including but not limited to preying on undergraduate students and fellow WSU graduate students and employees.

COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

 PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **96** of **126**

391.    Kohberger's offending behavior occurred throughout the WSU campus as he harassed female employees in the campus bookstore and followed female students and employees to their cars, inciting fear for their safety and necessitating escorts by faculty and police for security.

392.    WSU faculty, staff, and students were also aware that Kohberger was engaging in harassing, stalking, and predatory behavior off of the WSU campus, but in the Pullman-Moscow community.

393.    Kohberger's offending behavior also occurred in a context that should have triggered urgent action by WSU's Threat Assessment Team, and WSU had the ability to take such urgent action to mitigate the imminent threat that Kohberger posed.

394.    Kohberger also was under WSU's disciplinary authority in the setting in which the harassment took place, and WSU had the authority to take remedial action.

395.    WSU's policies and procedures—including those that required Kohberger to act with the highest degree of professional conduct and not to discriminate, harass, and stalk—allowed WSU to take remedial action if Kohberger engaged in violative behavior that occurred either on or off campus.

396.    WSU had the ability to punish Kohberger for his behavior.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

397.    WSU only took sporadic, minor and ineffective action to address Kohberger's inappropriate behavior, including informal discussions with faculty, putting him on a brief, vague and non-specific four point personal "improvement plan" and mandating that all graduate students participate in remedial discrimination and harassment training—training which Kohberger was observed to conspicuously ignore.

398.    WSU had the ability to take action against Kohberger through its Compliance and Civil Rights/Title IX office. But despite receiving 13 formal complaints, WSU's CCR apparently took no meaningful action and the individual responsible for acting on such complaints admitted never having met or even spoken with Kohberger.

399.    WSU had the ability to take action against Kohberger through its Threat Assessment Team, but there is no indication that any such action was taken by WSU.

400.    WSU had the ability to terminate Kohberger's employment, eliminate his funding, remove him from campus housing, and eliminate access to the WSU ResNet internet network.

401.    WSU ultimately did terminate Kohberger's employment and eliminated his funding, but not until after he had murdered four young students.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 98 of 126

402.   Only after Kohberger's arrest for the murders did WSU finally serve Kohberger with a Trespass Admonition, prohibiting his presence at WSU.

403.   Before the murders, WSU had substantial actual knowledge and notice of Kohberger's extensive and repeated instances of discriminatory, harassing, and stalking behavior.

404.   There were numerous discussions among WSU graduate students, teaching assistants, faculty, and staff about Kohberger's discriminatory, harassing, and stalking behavior.

405.   The members of the WSU Criminology Department—most, if not all, of whom were mandatory reporters—were tracking Kohberger's inappropriate behavior, but failed to properly inform and alert WSU administrators.

406.   Ultimately, however, WSU received at least 13 formal complaints of discriminatory, harassing, or stalking-type behavior by Kohberger that were presented to a WSU administrator whose duties are to address such complaints. But there is no indication that WSU acted on those formal complaints, or that it acted in an urgent and decisive manner commensurate with the imminent and serious threat that Kohberger posed.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

407.   WSU faculty recognized the need to stage an "intervention" on Kohberger very early on, and months before the murders, but failed to ever do so.

408.   Kohberger's supervisor at WSU even advocated that disciplinary action *not* be taken against Kohberger out of fear that he would sue WSU—thereby putting the financial interest of the university above the safety of the Pullman-Moscow community.

409.   WSU also exercised significant control over Kohberger and the environment in which the harassment occurred by implementing an official policy that tolerated sexual misconduct, harassment and stalking and discouraged complete and accurate reporting of occurrences of misconduct.

410.   This official policy that tolerated sexual misconduct, harassment and stalking is evidenced, in part, by the fact that during the 2022 fall semester, WSU's own investigation determined that the WSU Police Department—a department responsible to prevent and intervene in instances of such misconduct—had itself engaged in numerous incidents of sexual misconduct and fostered an environment that discouraged reporting of sexual misconduct.

411.   Despite being aware of specific reports of inappropriate and alarming behavior, WSU allowed Kohberger's discriminatory, harassing and



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

stalking behavior to continue unchecked, and provided him with a target-rich

environment where that behavior was tolerated and allowed to escalate,

including but not limited to continued interaction with female undergraduate

students in a supervisory capacity as a WSU Teaching Assistant, a salary, on-

campus housing with free Internet, medical benefits, and free tuition.

412.    Recognizing the potential and serious danger that Kohberger posed,

WSU police provided safety escorts to female students and employees, but did

not intervene directly with Kohberger, or perform any proper threat assessment,

which served to further embolden Kohberger.

413.    Evidence also indicates that Kohberger engaged in stalking

behavior and preparatory acts as it relates to the decedents both on WSU

property and using WSU resources.

414.    WSU provided on-campus housing to Kohberger at the Steptoe

Village apartments.

415.    WSU also provided Kohberger with free internet access through

WSU's controlled network called WSU ResNet, on which WSU retained the

right to monitor usage and take remedial action if used for inappropriate

purposes.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

416.   The numerous red flags in Kohberger's behavior should have led WSU to monitor his online behavior and had WSU done so it would more likely than not have discovered that he was using the WSU ResNet internet network for inappropriate purposes.

417.   Evidence indicates the Kohberger had engaged in stalking behavior of one or more of the decedents for months before he committed the murders.

418.   After the murders, a forensic examination of one of Kohberger's computers revealed that during his time at WSU, he had performed many deeply troubling internet searches about serial killers, home invasions, co-ed killings, and pornography depicting non-consensual sex.

419.   Kohberger, however, made significant efforts to delete his computer activity in the month before the murders, which forensic examiners believe was a deliberate attempt to conceal his plotting, planning and stalking of the decedents.

420.   Had WSU been monitoring Kohberger's use of the ResNet internet network it would have been aware of these efforts to plot, plan and stalk the decedents.

421.   Additionally, WSU possessed information about Kohberger's use of ResNet in the form of server logs and other user data that would have

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **102** of **126**

1   remained in WSU's possession despite any efforts by Kohberger to delete and

2   conceal his internet usage.

3

4       422.   Reports indicate that Kohberger had been stalking one of the

5   decedents on social media, and to the extent that occurred through the WSU

6   ResNet network, it is violative conduct that occurred on the WSU campus.

7

8       423.   Kohberger also possessed the murder weapon for months before the

9   murder.

10

11      424.   It was a violation of WSU policies and the Apartment Agreement

12  for Kohberger to possess the murder weapon in his on-campus apartment, and

13  WSU had the ability and right to inspect his apartment and remove Kohberger

14  for such a violation.

15

16      425.   Kohberger's repeated, alarming and menacing behavior should

17  have caused WSU to inspect his apartment as it had the right to do under the

18  Apartment Agreement and had it done so WSU likely would have discovered

19  the Ka-Bar knife in violation of the Apartment Agreement and WSU policies.

20

21      426.   WSU's response to Kohberger's behavior and the numerous

22  complaints raised by WSU students, faculty, and staff, was clearly unreasonable.

23

24

25

26



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

427. Title IX liability also arises when discrimination and harassment is so severe, pervasive, and objectively offensive that it deprives victims of access to educational opportunities or benefits.

428. Kohberger's discriminatory and harassing behavior was so extreme, pervasive and objectively offensive that female classmates would flee the classroom in the middle of instruction, leaving their possessions behind. Female students, staff and faculty felt threatened and scared by his aggressive staring, looming behind them and uncomfortably close, physically blocking their exit, and following them to their vehicles necessitating routine security escorts.

429. The decedents (Goncalves, Mogen, Kernodle, and Chapin), all students at a federally funded university in the same community, were also deprived of and permanently denied access to educational opportunities and benefits when Kohberger stalked them, planned his attack, violently assaulted them and ultimately took their lives.

430. WSU's acts and omissions alleged herein with respect to the discriminatory, harassing and stalking behavior of Kohberger against multiple female students deprived students of the full benefits of their educational program, on the basis of sex, in violation of Title IX.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

431.   WSU failed to exercise its supervisory power and disciplinary authority over Kohberger, despite having repeated notice of the high risk of serious misconduct.

432.   The likelihood of Kohberger engaging in future and escalating misconduct was so obvious that WSU's failure to act was the result of deliberate indifference.

433.   WSU had the ability, but failed to take timely, appropriate and decisive action that would likely have prevented the harassment, stalking and murder of the decedents.

434.   WSU's acts and omissions alleged herein caused in fact and substantially contributed to the stalking, assault and murder of decedents.

435.   WSU acted with deliberate indifference to known acts of harassment and stalking against female students in connection with its programs or activities that it was in a position to address appropriately, and therefore may be held liable for damages under Title IX.

**b.  Count II - Negligence**

436.   Plaintiffs incorporate by reference each and every allegation stated above as if stated herein in full.



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

437.    WSU had a duty to exercise ordinary care and refrain from negligent acts and omissions, duties that arose out of a special relationship between Kohberger and WSU under Restatement (Second) of Torts § 315(a).

438.    WSU failed to exercise ordinary care in its special relationship with Kohberger and was negligent.

439.    As Kohberger's employer, WSU also had a duty to exercise reasonable care in hiring, supervising, and retaining Kohberger as an employee.

440.    WSU was negligent in hiring, supervising, and retaining Kohberger as an employee.

441.    WSU also had a duty to exercise reasonable care so as to control Kohberger while acting outside the scope of his employment so as to prevent him from intentionally harming others under Restatement (Second) of Torts § 317.

442.    WSU was negligent when it failed to control Kohberger so as to prevent him from intentionally harming others.

443.    WSU also owed a duty of care under Restatement (Second) of Torts § 302B where its own affirmative acts create or expose someone to a recognizable high degree of risk of harm through such misconduct, which a reasonable person would take into account.

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **106** of **126**

444.   An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal.

445.   WSU was negligent by its own affirmative acts that created and exposed the decedents to the recognizable degree of risk of harm posed by Kohberger.

446.   WSU's adoption of WAVR-21™ and TAT protocols heightens these duties, as these frameworks mandate proactive assessment and intervention for behaviors like threats or stalking, which align with known red flags in violence prevention, and caution against certain responses that can heighten the risk of violence.

447.   WSU had a duty to use reasonable care to control Kohberger and protect members of the Pullman-Moscow community, including decedents, from foreseeable harm and the imminent danger that Kohberger posed.

448.   As described in detail above, there was a definite, established, and continuing relationship between WSU and Kohberger.

449.   The relationship between WSU and Kohberger was unlike WSU's relationship with a typical individual student.

COMPLAINT FOR DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

 PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **107** of **126**

450.    WSU offered Kohberger employment as a Teaching Assistant for a definite period of time—the 2022 fall semester and 2023 spring semester—with defined and established expectations of performance and behavior pursuant to a written employment agreement.

451.    WSU affirmatively brought Kohberger to the Pullman-Moscow community from the East Coast, and its offer of employment included a requirement that he reside in Washington.

452.    As a result of this agreement, WSU expected to receive teaching assistant services that benefited WSU undergraduate students and faculty.

453.    For instance, WSU policy provided that Kohberger's *primary duty* was teaching or serving as a teaching assistant and he was required to "be at work each normal workday, including periods when the university classes are not in session."

454.    In return for his teaching assistant services provided to WSU, Kohberger received a salary, health benefits, an on-campus office, housing and tuition.

455.    Efforts that Kohberger engaged in to identify the decedents, stalk and plan his attack that occurred in his on-campus office or on-campus housing,

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **108** of **126**

1    or using WSU's ResNet internet network, are activities occurring on WSU

2    premises.

3
4        456.   As part of their relationship, WSU required Kohberger to follow the

5    Graduate School Policies and Procedures Manual, the WSU Department of

6    Criminal Justice and Criminology Graduate Handbook, the Apartment

7
8    Agreement, the Network Service Agreement, and the WSU Standards of

9    Conduct, all of which applied to both on and off campus conduct.

10       457.   WSU required that Kohberger "maintain high standards of

11   professional and ethical conduct" and to show "respect for undergraduate

12

13   students."

14
15       458.   WSU agreed to "provide adequate supervision and training," and

16   specifically assigned WSU faculty to serve in that capacity with Kohberger.

17       459.   Kohberger engaged with his WSU supervisors on a nearly daily

18
     basis.
19

20       460.   WSU had the ability to control Kohberger and, in fact, did exercise

21   control over Kohberger.

22
23       461.   WSU also knew of the necessity and opportunity to exercise control

24   over Kohberger.

25

26

COMPLAINT FOR
DAMAGES

 Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

 PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **109** of **126**

462.    WSU had the ability to use its multi-disciplinary TAT to conduct a threat assessment using its WAVR-21™ protocol to identify Kohberger's propensity to commit violence and to implement measures to mitigate that risk, but failed to do so.

463.    WSU had the ability to use its Center for Community Standards to investigate and enforce the numerous Standards of Conduct that Kohberger repeatedly violated, but failed to do so.

464.    WSU had the ability to discipline Kohberger or terminate his employment and defund him at any time if he engaged in misconduct, had deficient job performance, or violated university policies, but failed to do so until after the murders.

465.    WSU was the entity solely responsible for ensuring that Kohberger complied with the terms of the various WSU agreements, policies and procedures that Kohberger was bound to abide by.

466.    Interventions like monitoring or removal likely would have prevented the murders by breaking Kohberger's access and momentum.

467.    Had WSU followed its policies and procedures—including but not limited to escalating complaints to a full WAVR-21™ assessment and TAT review—it likely would have prevented escalation by triggering interventions

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 110 of 126

including counseling, mental health referral, suspension, expulsion or law enforcement referral, thereby averting the mass murder by removing Kohberger from his position and the Pullman-Moscow community long before he committed the murders.

468.   Indeed, after the murders, WSU exercised the ultimate control over Kohberger and terminated his employment, defunded him, and served him with a trespass admonition prohibiting his presence at WSU.

469.   WSU knew or should have known that Kohberger habitually engaged in misconduct in a manner dangerous to others.

470.   WSU affirmatively mismanaged the numerous complaints that it received about Kohberger's inappropriate behavior, including but not limited to attempts to contain these complaints within the Criminal Justice and Criminology Program, avoiding escalating complaints to proper authorities, engaging in ineffective and informal discussions with Kohberger, and affirmatively keeping him employed at WSU.

471.   Through its close relationship with Kohberger, WSU had substantial insight into his dangerous propensities and was aware of the identities of various victims—primarily young female students.

COMPLAINT FOR DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **111** of **126**

472.   As undergraduate students living in the Pullman-Moscow community, decedents were foreseeable targets and victims of Kohberger.

473.   It was reasonably foreseeable to WSU that Kohberger would engage in future and escalating misconduct and dangerous and predatory behavior, including violence, if action was not taken to mitigate that imminent threat.

474.   Had WSU's TAT conducted a proper WAVR-21™ assessment and followed the recommendations and warnings of that threat assessment and intervention protocols, it would have known that Kohberger was a ticking time bomb ready to explode and should not have embarrassed him in front of his entire cohort when it mandated remedial sexual harassment and discrimination training for all students but solely because of Kohberger's behavior.

475.   WSU was aware of Kohberger's repeated instances of inappropriate, predatory and menacing behavior occurring within days of him first appearing on the WSU campus and WSU breached its duty of care and was negligent in one or more of the following respects:

     a.  Hiring Kohberger and bringing him to the Pullman-Moscow community without conducting an adequate background check and other pre-employment vetting;



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

  b. Failing to adequately train and supervise Kohberger;

  c. Failing to follow WSU policies and procedures;

  d. Failing to timely report Kohberger's inappropriate and menacing behavior to WSU's Threat Assessment Team, and failing to perform an adequate threat assessment of Kohberger and failing to implement necessary, proper and urgent measures to mitigate the imminent threat posed by Kohberger;

  e. Failing to report Kohberger's inappropriate and predatory behavior to appropriate WSU administrators and law enforcement;

  f. Permitting the Criminal Justice and Criminology Department to address Kohberger's behavior through informal piecemeal, indecisive and wholly inadequate faculty discussions and ad hoc responses, instead of urgently involving appropriate WSU administrators and law enforcement;

  g. Failing to timely report Kohberger's inappropriate and menacing behavior to WSU's Center for Community Standards, and failing to promptly and thoroughly investigate such reports and take urgent action against Kohberger;



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

h. Failing to timely report Kohberger's inappropriate and menacing behavior to WSU's Compliance and Civil Rights/Title IX office, and failing to promptly and thoroughly investigate such reports and take urgent action against Kohberger;

i. Failing to monitor Kohberger's inappropriate use of WSU ResNet internet network and take appropriate and urgent remedial action;

j. Failing to enforce WSU policies and the Rental Agreement, by failing to inspect Kohberger's residence following reports of his harassing, stalking and menacing behavior, and failing to enforce the Rental Agreement's prohibition of weapons on campus property and in on-campus housing, including the Ka-Bar knife that Kohberger used to assault and murder the decedents;

k. Mismanaging the numerous complaints and reports of Kohberger's inappropriate behavior;

l. Failing to intervene in Kohberger's discriminatory, harassing and stalking behavior;

m. Failing to discipline Kohberger;



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

    n. Retaining Kohberger as an employee of WSU following numerous reports of his dangerous and alarming behaviors beginning with the earliest days of his employment;

    o. Failing to terminate Kohberger from employment with WSU, and failing to defund and remove him from campus;

    p. Failing to warn the Pullman-Moscow community of the danger and threat posed by Kohberger;

    q. Placing the financial condition and reputation of WSU above the safety and security of the Pullman-Moscow community in general and the decedents in particular; and

    r. In other respects that may be revealed during discovery.

476. If WSU had exercised reasonable care, Kohberger would have been neutralized as a threat long before he committed the murders.

477. WSU's negligence caused in fact and substantially contributed to the assault and murder of decedents.

478. As a result of WSU's negligence, Plaintiffs were damaged.

**c. Count III – Gross Negligence**

479. Plaintiffs incorporate by reference each and every allegation stated above as if stated herein in full.

COMPLAINT FOR
DAMAGES





480.   WSU had a duty to exercise slight care, which is care substantially less than ordinary care, and to refrain from grossly negligent acts and omissions.

481.   WSU's multiple failures and breaches of its duties owed, as described above, proximately caused the assault and murder of decedents and resultant damages for which WSU is liable.

**d. Count IV – Outrage**

482.   Plaintiffs incorporate by reference each and every allegation stated above as if stated herein in full.

483.   WSU's acts and omission described herein constituted extreme and outrageous conduct that went beyond all possible bounds of decency and can only be regarded as atrocious and utterly intolerable in a civilized community.

484.   WSU acted either intentionally or with reckless disregard for the near certainty that emotional distress of some female students would result from WSU's acts and omissions with regard to Kohberger.

485.   WSU did in fact cause severe emotional distress to Plaintiffs' decedents and their families.

//

//

//

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

### e. Survival Claim (Kaylee Goncalves)



486.   The wrongful acts and neglect of WSU as alleged above caused or contributed to the injuries inflicted on Kaylee Goncalves.

487.   Prior to her death, Kaylee Goncalves experienced extreme pain and suffering, anxiety, emotional distress and humiliation as Kohberger repeatedly and violently stabbed her to death.

488.   At the time of her death, Kaylee Goncalves had no surviving spouse, domestic partner, or living child or stepchild. Kaylee Goncalves does have surviving parents and siblings.

489.   Steve Goncalves, as personal representative of the Estate of Kaylee Jade Goncalves, asserts a survival claim under RCW 4.20.046 and RCW 4.20.060 for the pain and suffering, anxiety, emotional distress and humiliation sustained as a result of Kaylee's injuries.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 117 of 126

490.   Plaintiff Goncalves seeks damages in such amounts as determined by a trier of fact to be just under all the circumstances of the case.

**f.  Wrongful Death Claim (Kaylee Goncalves)**

491.   The wrongful acts and neglect of WSU as alleged above caused or contributed to the death of Kaylee Goncalves.

492.   Steve Goncalves, as personal representative of the Estate of Kaylee Jade Goncalves, asserts a claim for wrongful death under RCW 4.20.010 for the economic and noneconomic damages sustained by the beneficiaries as a result of Kaylee's death, including but not limited to the loss of the decedent's love, guidance, companionship and society, services, care and attention, protection and advice.

493.   Plaintiff Goncalves seeks damages in such amounts as determined by a trier of fact to be just under all the circumstances of the case.

//

//

//

//

//

//

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **118** of **126**

1

**g.  Survival Claim (Madison Mogen)**



494.   The wrongful acts and neglect of WSU as alleged above caused or contributed to the injuries inflicted on Madison Mogen.

495.   Prior to her death, Madison Mogen experienced extreme pain and suffering, anxiety, emotional distress and humiliation as Kohberger repeatedly and violently stabbed her to death.

496.   At the time of her death, Madison Mogen had no surviving spouse, domestic partner, or living child or stepchild. Madison Mogen does have surviving parents.

497.   Karen Laramie, as personal representative of the Estate of Madison May Mogen, asserts a survival claim under RCW 4.20.046 and RCW 4.20.060

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **119** of **126**

1   for the pain and suffering, anxiety, emotional distress and humiliation sustained

2   as a result of Madison's injuries.

3

4   498.   Plaintiff Laramie seeks damages in such amounts as determined by

5   a trier of fact to be just under all the circumstances of the case.

6   **h. Wrongful Death Claim (Madison Mogen)**

7

8   499.   The wrongful acts and neglect of WSU as alleged above caused or

9   contributed to the death of Madison Mogen.

10

11  500.   Karen Laramie, as personal representative of the Estate of Madison

12  May Mogen, asserts a claim for wrongful death under RCW 4.20.010 for the

13  economic and noneconomic damages sustained by the beneficiaries as a result of

14  Madison's death, including but not limited to the loss of the decedent's love,

15  guidance, companionship and society, services, care and attention, protection

16  and advice.

17

18  501.   Plaintiff Laramie seeks damages in such amounts as determined by

19  a trier of fact to be just under all the circumstances of the case.

20

21  //

22  //

23  //

24  //

25

26

COMPLAINT FOR
DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1

### i. Survival Claim (Xana Kernodle)



502.    The wrongful acts and neglect of WSU as alleged above caused or contributed to the injuries inflicted on Xana Kernodle.

503.    Prior to her death, Xana Kernodle experienced extreme pain and suffering, anxiety, emotional distress and humiliation as Kohberger repeatedly and violently stabbed her to death.

504.    At the time of her death, Xana Kernodle had no surviving spouse, domestic partner, or living child or stepchild. Xana Kernodle does have surviving parents and siblings.

505.    Jeffrey Kernodle, as personal representative of the Estate of Xana Alexia Kernodle, asserts a survival claim under RCW 4.20.046 and RCW 4.20.060 for the pain and suffering, anxiety, emotional distress and humiliation sustained as a result of Xana's injuries.

COMPLAINT FOR
DAMAGES


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page 121 of 126

1

2       506.   Plaintiff Kernodle seeks damages in such amounts as determined by

3   a trier of fact to be just under all the circumstances of the case.

4       **j.  Wrongful Death Claim (Xana Kernodle)**

5       507.   The wrongful acts and neglect of WSU as alleged above caused or

6   contributed to the death of Xana Kernodle.

7

8       508.   Jeffrey Kernodle, as personal representative of the Estate of Xana

9   Alexia Kernodle, asserts a claim for wrongful death under RCW 4.20.010 for

10  the economic and noneconomic damages sustained by the beneficiaries as a

11
    result of Xana's death, including but not limited to the loss of the decedent's
12
    love, guidance, companionship and society, services, care and attention,
13
    protection and advice.
14

15      509.   Plaintiff Kernodle seeks damages in such amounts as determined by

16  a trier of fact to be just under all the circumstances of the case.

17

18      //

19      //

20      //

21      //

22      //

23      //

24

25

26

COMPLAINT FOR
DAMAGES

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **122** of **126**

1

### k.    Survival Claim (Ethan Chapin)



510.   The wrongful acts and neglect of WSU as alleged above caused or contributed to the injuries inflicted on Ethan Chapin.

511.   Prior to his death, Ethan Chapin experienced extreme pain and suffering, anxiety, emotional distress and humiliation as Kohberger repeatedly and violently stabbed him to death.

512.   At the time of his death, Ethan Chapin had no surviving spouse, domestic partner, or living child or stepchild. Ethan Chapin does have surviving parents and siblings.

513.   Stacy Chapin, as personal representative of the Estate of Ethan J. Chapin, asserts a survival claim under RCW 4.20.046 and RCW 4.20.060 for the



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1  pain and suffering, anxiety, emotional distress and humiliation sustained as a

2  result of Ethan's injuries.

3

4  514.  Plaintiff Chapin seeks damages in such amounts as determined by a

5  trier of fact to be just under all the circumstances of the case.

6     **l.  Wrongful Death Claim (Ethan Chapin)**

7

8  515.  The wrongful acts and neglect of WSU as alleged above caused or

9  contributed to the death of Ethan Chapin.

10

11  516.  Stacy Chapin, as personal representative of the Estate of Ethan J.

12  Chapin, asserts a claim for wrongful death under RCW 4.20.010 for the

13  economic and noneconomic damages sustained by the beneficiaries as a result of

14  Ethan's death, including but not limited to the loss of the decedent's love,

15  guidance, companionship and society, services, care and attention, protection

16  and advice.

17

18  517.  Plaintiff Chapin seeks damages in such amounts as determined by a

19  trier of fact to be just under all the circumstances of the case.

20

21  **VI.  Reservation of Rights**

22

23  518.  Plaintiff reserves the right to assert additional claims as may be

24  appropriate following further investigation and discovery.

25

26

COMPLAINT FOR
DAMAGES



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## VII. Prayer for Relief

Plaintiffs pray for judgement against Defendant WSU, as follows:

a. For all special and general damages established at trial;

b. For compensatory damages in an amount to be proved at trial;

c. For Plaintiffs' reasonable attorneys' fees pursuant to Title IX and any other applicable law;

d. For punitive damages as allowed by law;

e. For pre-judgment interest as allowed by law;

f. For post-judgment interest as allowed by law;

g. For an award to Plaintiffs of the costs of this action; and

h. For such other legal or equitable relief as the Court deems just and proper.

## VIII. Demand for Jury Trial

Plaintiffs hereby demand a trial by jury on all matters so triable.

//

//

//

//

//





1    SIGNED this 7th day of January, 2026.

2                                    Respectfully submitted,

3

4                                    WAGSTAFF & CARTMELL LLP

5                                    By: /s/ *Jonathan P. Kieffer*
6                                    Jonathan P. Kieffer (*Pro Hac Vice* Pending)
                                     Jack T. Hyde (*Pro Hac Vice* Pending)
7                                    Lindsey N. Scarcello (*Pro Hac Vice* Pending)

8

9                                    PFAU COCHRAN VERTETIS AMALA PLLC

10
                                     By: /s/ *Thomas B. Vertetis*
11                                   Thomas B. Vertetis, WSBA No. 29805
                                     Christopher E. Love, WSBA No. 42832
12                                   William T. McClure, WSBA No. 54622

13

14                                   **ATTORNEYS FOR PLAINTIFFS**

15

16

17

18

19

20

21

22

23

24

25

26





# Attachment D

E-FILED
Skagit County Clerk
Skagit County, WA
1/7/2026

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR SKAGIT COUNTY**

STEVE GONCALVES, as personal
representative of the Estate of Kaylee Jade
Goncalves, KAREN LARAMIE, as personal
representative of the Estate of Madison May
Mogen, JEFFREY KERNODLE, as personal
representative of the Estate of Xana Alexia
Kernodle, STACY CHAPIN, as personal
representative of the Estate of Ethan J.
Chapin,

          Plaintiffs,

v.

WASHINGTON STATE UNIVERSITY, a
public university,

          Defendant.

Case No. 26-2-00034-29

**JURY DEMAND**

    Comes now Plaintiffs, by and through the undersigned, pursuant to statute and court

rule, hereby demand a jury trial in the above-captioned matter and herewith tenders into the

registry of the court $250.00, the jury fee required by law.

JURY DEMAND
1 of 2



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

1     SIGNED this 7th day of January, 2026.

2                                   Respectfully submitted,

3                                   WAGSTAFF & CARTMELL LLP

4                                   By: /s/ *Jonathan P. Kieffer*
5                                   Jonathan P. Kieffer (*Pro Hac Vice* Pending)
                                    Jack T. Hyde (*Pro Hac Vice* Pending)
6                                   Lindsey N. Scarcello (*Pro Hac Vice* Pending)

7

8                                   PFAU COCHRAN VERTETIS AMALA PLLC

9                                   By: /s/ *Thomas B. Vertetis*
                                    Thomas B. Vertetis, WSBA No. 29805
10                                  Christopher E. Love, WSBA No. 42832

11                                  **ATTORNEYS FOR PLAINTIFFS**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JURY DEMAND
2 of 2





4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

# Attachment E

1
2
3
4
5
6
7

**STATE OF WASHINGTON**
**SKAGIT COUNTY SUPERIOR COURT**

8   STEVE GONCALVES, as personal representative        NO. 26-2-00034-29
    of the Estate of Kaylee Jade Goncalves,
9   KAREN LARAMIE, as personal represnetiatve of       NOTICE OF APPEARANCE
    the Estate of Madison May Mogen,
10  JEFFREY KERNODLE, as personal                      **(Clerk's Action Requested)**
    representative of the Estate of Xana Alexia
11  Kernodle, and STACY CHAPIN, as personal
    representative of the Estate of Ethan J. Chapin,
12

13                                   Plaintiffs,

14  v.

15  WASHINGTON STATE UNIVERSITY, a public
    university,
16

17                                   Defendant.

18  TO:        CLERK OF THE COURT;

19  AND:       PFAU COCHRAN VERTETIS AMALA PLLC:
               THOMAS B. VERTETIS, CHRISTOPHER E. LOVE, and WILLIAM T. McCLURE,
20             Plaintiffs' Attorneys

21  AND TO:    WAGSTAFF & CARTMELL LLP:
               JONATHAN P. KIEFFER, JACK T. HYDE, and LINDSEY N. SCARCELLO,
22             Plaintiffs' Attorneys.

23          YOU AND EACH OF YOU will please take notice that , by and through their attorneys,

24  NICHOLAS    W.    BROWN,    Attorney    General,    and    JORDYN    JONES    AND

25  CONNOR CALLAHAN Assistant Attorneys General, without waiving objections as to improper

26

NOTICE OF APPEARANCE                         1              ATTORNEY GENERAL OF WASHINGTON
                                                                        Torts Division
                                                                 7141 Cleanwater Drive SW
                                                                      PO Box 40126
                                                                 Olympia, WA 98504-0126
                                                                      360-586-6300

1   service, jurisdiction or venue, hereby enter their appearance in the above-entitled action and

2   requests that notice of any and all further proceedings in said action be served upon the undersigned

3   attorney at the address stated below.

4   **TRANSMISSION BY FAX OR BY ELECTRONIC MAIL DOES NOT**

5   **CONSTITUTE SERVICE, UNLESS AGREED IN WRITING OR UNLESS OTHERWISE**

6   **REQUIRED BY COURT RULE.**

7   DATED this 27th day of January, 2026.

8

9   NICHOLAS W. BROWN
    Attorney General

10

11  *s/ Jordyn Jones*
    JORDYN JONES, WSBA No. 52648
    CONNOR CALLAHAN, WSBA No. 54099

12  Assistant Attorneys General
    P.O. Box 40126

13  Olympia, WA 98504-0126
    360-586-6300

14  Jordyn.Jones@atg.wa.gov
    Connor.Callahan@atg.wa.gov

15  *Counsel for Defendant WSU*

16

17

18

19

20

21

22

23

24

25

26

NOTICE OF APPEARANCE                     2                     ATTORNEY GENERAL OF WASHINGTON
                                                               Torts Division
                                                               7141 Cleanwater Drive SW
                                                               PO Box 40126
                                                               Olympia, WA 98504-0126
                                                               360-586-6300

1

**PROOF OF SERVICE**

2

I certify that I electronically filed with the Court through Skagit County eSubmission

3

system and served on all parties or their counsel of record a copy of this document on the date

4

below addressed as follows:

5

*Attorneys for Plaintiff*

6
Jonathan P. Kieffer, (pro hac vice)          ☒  U.S.  Mail  Postage  Prepaid  via
Jack T. Hyde, (pro hac vice)                 Consolidated Mail Service

7
Lindsey N. Scarcello (pro hac vice)
WAGSTAFF & CARTMELL, LLP                      ☐ E-Service Agreement:

8
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

9
jpkieffer@wcllp.com

10
jhyde@wcllp.com
lscarcello@wcllp.com

11

12
Thomas B. Vertetis, WSBA #29805              ☒  U.S.  Mail  Postage  Prepaid  via
Christopher E. Love, WSBA #42832             Consolidated Mail Service

13
William T. McClure, WSBA #54622
PFAU COCHRAN VERTETIS                         ☐ E-Service Agreement:

14
AMALA, PLLC
909 A Street, Suite 700

15
Tacoma, WA 98402
tom@pcvalaw.com

16
chris@pcvalaw.com
wmcclure@pcvalaw.com

17

18
I certify under penalty of perjury under the laws of the state of Washington that the

19
foregoing is true and correct.

DATED this 27th day of January, 2026, at Olympia, Washington.

20

21
*s/Jordyn Jones*
JORDYN JONES, WSBA No. 52648

22

23

24

25

26

NOTICE OF APPEARANCE                          3                          ATTORNEY GENERAL OF WASHINGTON
                                                                         Torts Division
                                                                         7141 Cleanwater Drive SW
                                                                         PO Box 40126
                                                                         Olympia, WA 98504-0126
                                                                         360-586-6300