# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves, et al., | Case No. 2:26-cv-00301-KKE |
| Plaintiffs, | **PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE** |
| v. | |
| WASHINGTON STATE UNIVERSITY, a public university, | **NOTE ON MOTION CALENDAR: FEBRUARY 27, 2026** |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

## INTRODUCTION

The Plaintiffs are parents of four children who were murdered on November 13, 2022, in Moscow, Idaho. Plaintiffs filed this case in Skagit County Superior Court, and the State[1] removed the case to the Western District of Washington ("Western District"). The State's Motion seeks transfer to the Eastern District of Washington ("Eastern District"), but this Court should deny that Motion for multiple reasons.

---

[1] While the case was brought against Washington State University ("WSU"), the university is an arm of the State, so the State is the "true party in interest." *Garey v. Anderson*, No. 2:22-CV-0069-TOR, 2023 WL 6881056, at *4 (E.D. Wash. Oct. 18, 2023). This brief will refer to the Defendant as "the State," as that status is legally relevant.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **1** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372


PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

The State's Motion ignores key facts and legal principles, and it fails to make the "strong showing" necessary to justify transfer to the Eastern District. One critical principle that the State ignores is sovereign immunity. The Eastern District was not a district where this case "might have been brought" at the time of filing. *See* 28 U.S.C. § 1404(a). The State has not waived its sovereign immunity for state-law claims brought in federal court. So Plaintiffs' claims for negligence, gross negligence, outrage, wrongful death, and survival would have been dead on arrival if filed in the Eastern District, or in any other federal court. They are viable **now** because the State has waived its immunity by removing this action. But the question of whether the Eastern District was an available forum is determined based on the time of filing, and it was not. The Court can, and should, deny the State's motion on that basis alone.

But the State has also failed to make the "strong showing" necessary to overcome the Plaintiffs' choice of forum, based on convenience factors and the "interest of justice." First, contrary to the State's argument, Plaintiffs effectively chose this forum. Plaintiffs could not have filed directly into this District, due to sovereign immunity. But Plaintiffs chose a western Washington forum and, by their choice of claims, Plaintiffs opened the door to removal to this Court. Plaintiffs filed in Skagit County, home of Plaintiff Stacy Chapin, and raised a federal question—their claim under Title IX. Plaintiffs recognized that the State might remove the case, and Plaintiffs embraced the Western District as a potential and appropriate forum. Second, the "convenience factors" considered by courts, and particularly the "interest of justice," counsel strongly against upsetting that choice.

The State seeks to move this case to the Eastern District when (a) Plaintiffs' chose to be in western Washington for important reasons, discussed further below; (b) Plaintiff Chapin and her family live in the Western District, and no Plaintiff lives in the Eastern District; (c) the "true party in interest" on the Defense side, the State, is based in the Western District; (d) both sides have attorneys based in the Western District, and neither side has attorneys based in the Eastern

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **2** of **22**



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

District; (e) the witnesses are scattered—there are important witnesses in the Eastern District, the Western District, Idaho, Pennsylvania, and in several other states—and overall, there are considerably more witnesses are located outside of the Eastern District than within it; (f) statistics show the Western District to be more efficient, based on the time from filing to disposition; (g) the publicity is likely to be far more intense in the Eastern District, as it has been virtually non-stop since the time of the murders; and (h) picking an impartial jury would be far more feasible in the Western District than in the Eastern District, given the substantial amount of information people in the Eastern District have been given about the murders, the Plaintiff families, and about the role of WSU—which is a major employer in that region.

That last point goes to the "interest of justice," which is always a critical consideration in litigation. The Seattle Division has nearly four times the population of the Spokane Division, and the residents of this area are less likely to have heard as much about the murders and, potentially, formed opinions about the parties and issues involved. Therefore—and through no fault of the residents of the Eastern District—the chances of picking an impartial jury are far better in this Court, and the "interest of justice" counsels against transfer.

For these reasons, and those explained below, this Court should deny the State's Motion to Transfer.

**EVIDENCE RELIED UPON**

The Declaration of Thomas B. Vertetis ("Vertetis Decl."), as well as the existing file on record in this matter.

**LEGAL STANDARD**

This Court may transfer venue "to any other district or division where it might have been brought," if transfer would serve "the convenience of the parties" and "the interest of justice." 28 U.S.C. § 1404(a). The moving party has the burden "to show transfer is warranted." *Prisco v. Moss*, No. C24-5236, 2024 WL 3845711, at *10 (W.D. Wash. Aug. 16, 2024)

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **3** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

(Evanson, Dist. J.) (denying transfer where the defendants failed to meet their burden); *see also Sifuentes v. Nautilus, Inc.*, No. C21-5613JLR, 2022 WL 1126742, at *2–3 (W.D. Wash. Mar. 17, 2022). The Ninth Circuit has described the factors that courts "may consider" on the issue of convenience:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

## ARGUMENT

This Court should deny the State's motion because the Eastern District is not a district where this case "might have been brought," 28 U.S.C. § 1404(a), and because the convenience factors and the interest of justice do not support transferring this case to Spokane.

**I.      Because the State is entitled to sovereign immunity in federal court, this is not an action that "might have been brought" in the Eastern District.**

The first reason that this Court should deny the State's motion is that the Eastern District was not a forum where this case "might have been brought," due to sovereign immunity. *See* 28 U.S.C. § 1404(a). No federal court was. The State largely ignores this issue, asserting only that "[v]enue is proper in the Eastern District of Washington because the alleged acts in the Complaint occurred in Pullman, Washington, and Moscow, Idaho."[2] (Mot. at 3.) But the question is not whether the action could be transferred **now**. It is whether the action could have originally been brought in the Eastern District. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985). Due to sovereign immunity, Plaintiffs' case could not have been brought in any

---

[2] It is unclear how actions in Idaho would support venue in the Eastern District.

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **4** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

federal court. *See Phillips Petroleum Co. v. Fed. Energy Admin.*, 435 F. Supp. 1234, 1236 (D. Del. 1977) (holding that transfer is appropriate "only if the plaintiff(s) had an 'unqualified right' to bring the action(s) in the transferee forum at the time of the commencement of the action(s)").

The State has waived sovereign immunity for tort claims brought in state court. *Lovely v. Washington*, No. C08-5625 FDB, 2010 WL 55898, at *4 (W.D. Wash. Jan. 4, 2010) (citing RCW § 4.92.010 and RCW § 4.92.090). However, the Eleventh Amendment bars citizens from suing their own state in federal court. *Micomonaco v. State of Washington*, 45 F.3d 316, 319 (9th Cir. 1995); *see also Lovely*, 2010 WL 55898, at *4 ("Although the State of Washington does permit tort actions against it in Washington state courts under the provisions of RCW 4.92.010 and RCW 4.92.090, it has not waived its Eleventh Amendment immunity to suits against it in federal court."). This doctrine applies to cases against WSU, because "WSU is an arm of the State of Washington and … the State is therefore the true party in interest." *Garey v. Anderson*, No. 2:22-CV-0069-TOR, 2023 WL 6881056, at *4 (E.D. Wash. Oct. 18, 2023); *see also Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). However, by removing the case to this Court, the State consented to federal jurisdiction and, thereby, waived sovereign immunity. *Embury v. King,* 361 F.3d 562, 564 (9th Cir. 2004) (holding that "removal is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter ... in a federal forum").

All of Plaintiffs' state-law claims would have been dead on arrival if Plaintiffs had filed in the Eastern District. This includes underlying claims for negligence, gross negligence, and outrage, as well as the wrongful death and survival claims that allow these Plaintiffs to be Plaintiffs. (*See* Complaint at pp. 105, 115-24.) The Ninth Circuit has treated a sovereign immunity issue as one of subject-matter jurisdiction. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1040 (9th Cir. 2003). This District has labeled

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

sovereign immunity as "quasi-jurisdictional." *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168, 1185 n.9 (W.D. Wash. 2014).

In a recent case with many similarities, a party sought to transfer a case with both state and federal claims to another district in the same state, after that case had been removed. That court denied transfer, holding that due to sovereign immunity, the plaintiff's state-law claims could not have been brought in the proposed transferee venue. *See Johnson v. West Virginia University Board of Governors*, No. 2:21-CV-00380, 2022 WL 19039524, at *5 (S.D.W. Va. Feb. 22, 2022). The circumstances here are similar. The *Johnson* court denied transfer where the Eleventh Amendment would have barred the plaintiff's claim against a defendant in the proposed transferee court. The plaintiff filed his case in state court, asserting a state-law claim against the West Virginia University Board of Governors ("WVUBOG") and a mix of federal and state-law claims against other defendants. *Id.* at *5. The defendants removed the case to federal court because, as here, one of the plaintiff's claims arose under a federal statute. *Id.* at *3. The plaintiff then sought to transfer venue from the Southern District of West Virginia to the Northern District of West Virginia. *Id.* at *4.

The defendants—the parties contesting transfer in that case—argued that the action could not have been brought in the Northern District because, as an "arm of the state," the WVUBOG had Eleventh Amendment immunity for the state-law medical malpractice claim. *Id.* at 5. The court agreed and denied the motion to transfer. *Id.* Thus, under *Johnson*, the fact that a plaintiff could not have brought his full case in the proposed transferee venue prohibited transfer to that district. The same logic should apply here. Even if the Plaintiffs could have brought a Title IX claim in the Eastern District, the overwhelming majority of their claims were barred by sovereign immunity. Therefore, it was not a forum where **this** case—with six claims, five of which arose under state law—"might have been brought."

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **6** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Because Plaintiffs could not have brought their claims in the Eastern District, transfer would be improper. *See* 28 U.S.C. § 1404(a).

## II. The convenience factors, the interest of justice, and the public interest factors do not overcome deference given to a plaintiff's choice of forum, and in fact many of these factors support denying the motion to transfer.

A second reason this Court should deny transfer under 28 U.S.C. § 1404(a) is that considerations of convenience and fairness counsel against upsetting the Plaintiffs' choice of forum. As this Court has written, "[u]nder § 1404(a), 'great weight is generally accorded plaintiff's choice of forum.'" *Hutto v. Orion Sys. Integrators LLC*, No. C25-0984-KKE, 2025 WL 2782488, at *4 (W.D. Wash. Sept. 30, 2025) (quoting *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987)). "To upset the plaintiff's choice of forum, a defendant must make a **strong showing** of inconvenience." *Id.* (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)) (cleaned up) (emphasis added).

The State's brief focuses on the factors laid out in *Jones*, and Plaintiffs will explain how those factors, on balance, support denying transfer. *See Jones*, 211 F.3d at 498. These factors are often referred to as the "convenience factors." *See, e.g.*, *Center v. Pompeo*, No. C18-1122JLR, 2018 WL 6523135, at *7 (W.D. Wash. Dec. 12, 2018). The *Jones* factors do not represent the entire analysis. Again, the ultimate inquiry is whether the proposed transfer is "for the convenience of parties and witnesses, **and** in the interest of justice." *Amazon.com v. Cendant Corp.*, 404 F. Supp. 2d 1256, 1259 (W.D. Wash. 2005) (emphasis added). Here, the "interest of justice" strongly supports denying transfer. The murders at issue have brought intense media scrutiny, particularly on the eastern side of this state. Litigating in this Court would give the victims' families some protection from that intense media coverage, and would serve the interest of justice by increasing the likelihood of picking a truly impartial jury.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**A.    Plaintiffs effectively chose this forum, and the convenience factors support maintaining this case in this Court.**

Plaintiffs agree with the State that the first two convenience factors are inapplicable to this case. But the State is incorrect that the third factor, the Plaintiffs' choice of forum, is inapplicable here. Plaintiffs will analyze the remaining factors, beginning with that one.

### 1. *Plaintiffs' choice of forum*

Again, a plaintiff's choice of forum is entitled to substantial deference. *Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003), *vacated on other grounds*, 542 U.S. 952 (2004). That is particularly true where, as here, a Plaintiff lives within the chosen forum. *Hutto*, 2025 WL 2782488, at *4. The State claims that Plaintiffs did not choose this forum because they did not file the case here. (Mot. at 5.) But in the unique circumstances of this case, the State's argument places form over substance.[3]

As explained in Section I, *supra*, the Plaintiffs could not have filed in any federal court, as the State would have been immune from their state-law claims: negligence, gross negligence, outrage, survival, and wrongful death. (Complaint at pp. 105, 115-24.) So, Plaintiffs had to file in state court. Plaintiffs likely had three options: Skagit County, where Plaintiff Stacy Chapin lives and where they actually filed; Thurston County, home of the state capital, where anyone has a statutory right to sue the State under RCW § 4.92.010(5); and Whitman County, home of WSU, where certain acts and omissions took place, and where key decisions were made. Plaintiffs sought to distance themselves from the extremely traumatic events that underlie this

---

[3] There is caselaw suggesting that the choice of forum be afforded "somewhat less weight" in a case of removal. *See Hadnagy v. Moss*, No. 223CV01345CDSBNW, 2023 WL 8622375, at *3 (D. Nev. Dec. 12, 2023) (quoting *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 947 (S.D. Ohio 2002)). But that is a far cry from Plaintiffs' choice of filing location being irrelevant, as the State seems to claim. (Mot. at 5.) And under the circumstances of this case, the Court should give full deference to Plaintiffs' choice.

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **8** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

case, to the extent permitted by law. That goal left two options, both of them in this District. Plaintiffs then chose the home of the Chapin family over the home of the State. (Vertetis Decl. at ¶ 4.)

Plaintiffs also chose to bring a claim for violation of Title IX of the Education Amendments of 1972. (Complaint at p. 93.) Given that Plaintiffs have several other claims based on Washington law, they did not have to bring this Title IX claim. Thus, Plaintiffs' filing indicates a willingness to proceed in this Court. (Vertetis Decl. at ¶ 5.) Plaintiffs could have prevented that possibility by omitting the Title IX claim, but they left that door open for the State. The State then removed the case to this Court. So in a sense, all parties chose this forum. The State could have remained in Skagit County or sought transfer to Thurston or Whitman Counties.

Plaintiffs also made an intentional choice to be in **western** Washington. The Chapin family, including Plaintiff Stacy Chapin, lives in Skagit County. (Complaint at ¶ 30.) No Plaintiff lives in the Eastern District. (*See id.* at ¶¶ 27-30.) The Eastern District was home to the man who murdered Plaintiffs' children, at the time of the murders; it is mere miles from the location where those four murders took place; it is a region where the killer's school and employer, WSU, is a major employer and has a massive presence; and it is an area where interest in these murders, and the resulting media scrutiny, has been extremely intense. Thus, while Plaintiffs did not literally file in this Court, they understood that they were on a path to this Court, and they have a strong preference for remaining here.

WSU is an arm of the State, which is also based in the Western District. There is no doubt that jurisdiction and venue are proper here. This Court, therefore, should give "great weight" to Plaintiffs choice of forum, *Hutto*, 2025 WL 2782488, at *4, and should deny transfer.

### 2. The parties' contacts with the forum

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Page **9** of **22**

The fourth convenience factor, the parties' contacts with the forum, also counsels against transfer. Again, Plaintiff Chapin and her family live in the Western District, and no Plaintiff lives in the Eastern District. (Complaint at ¶¶ 27-30.) While WSU is in both the Eastern District and the Western District,[4] the State is "the true party in interest." *Garey*, 2023 WL 6881056, at *4. The State, of course, is based in the capital, Olympia. The State is represented by the Attorney General's office, also based in Olympia. (*See* Mot. at p. 1 (listing address).) The State clearly does not believe it is inconvenient to defend cases in western Washington, as the venue statute permits claims against **any** arm of the State—regardless of where that arm is located—to be filed in Thurston County. *See* RCW § 4.92.010(5).

For the Plaintiffs, another significant convenience factor is avoiding an area where the public scrutiny and media coverage is likely to be intense. It was certainly that way around the time of the murders, and it was again only months ago when killer Bryan Kohberger was sentenced.[5] A trial in eastern Washington would likely bring another crush of attention. Certainly, a trial in Seattle would garner media attention. But these murders have special significance in eastern Washington, where people experienced the anxiety of a serial killer on the loose for weeks until Kohberger was arrested. (*See* Complaint at ¶ 347 (WSU's chancellor and provost noting that the murders had "shaken everyone in the Palouse region").) There is also far more competition for media attention in western Washington, which has substantially more population; massive corporations such as Amazon, Microsoft, and Google; and the state government—not to mention the Super Bowl champion Seahawks. For surviving family members who prefer not to be the center of attention, Seattle is a far more "convenient" forum.

---

[4] WSU operates campuses across the State of Washington. (*See* Complaint at ¶ 31).

[5] Notably, the interest in the case is so significant that various government entities in the area have webpages devoted to providing information about the murders. These include the Idaho State Police, the Latah County (Idaho) Sheriff's Office, and the city of Moscow (Idaho), and the city of Pullman. (Vertetis Decl. at ¶ 6.)

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **10** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

In *Hutto*, this Court rejected transfer even though the corporate defendant was located in New Jersey, and even though many key decisions were made there. *Hutto*, 2025 WL 2782488, at *5. Thus, the fact that WSU's Pullman campus is located in the Eastern District is not dispositive. And here, the convenience argument against transfer is stronger because the "true party in interest," the State, is based in this District. WSU also has two campuses in the Western District and operates extension offices in every county in the State. (Mot. at 6; *see also* WSU Extension, available at: https://extension.wsu.edu/ (last accessed Feb. 19, 2026).) This Court found it significant that the plaintiff had suffered harm in this District, *Hutto*, 2025 WL 2782488, at *5, and that same point applies here. The Chapin family lives in Skagit County and, therefore, suffered the harm of losing a child in this District.

The State argues that certain events took place in the Eastern District. (Mot. at 5-6.) While that is true, none of the attorneys litigating the case, the four Plaintiff families, or the State itself are located in the Eastern District. (*See* Complaint at p. 1 & ¶¶ 27-30; Mot. at p. 1.) The Eastern District, therefore, is not convenient for the parties. There is likely important evidence stored on computers in the Eastern District, specifically at WSU-Pullman. But where evidence is electronically stored, that factor is not significant to the transfer analysis. *Hutto*, 2025 WL 2782488, at *6; *see also Scott v. Carr*, No. C20-236RSM, 2020 WL 3639637, at *5 (W.D. Wash. July 6, 2020).

For these reasons, the fourth convenience factor weights against transfer.

### 3. *Contacts related to the cause of action*

The fifth convenience factor, the contacts related to the cause of action, generally turns on the location of witnesses. *Hutto*, 2025 WL 2782488, at *5. This factor weighs against transfer because there are far more likely witnesses outside the Eastern District than within it.

In the "Facts" section of its motion, the State names potential witnesses, asserting that they reside in the Eastern District, based on its own selective reading of Plaintiffs' complaint.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **11** of **22**


Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

All of them are faculty or staff employed by, and under the control of, the State. Notably, the State's Motion entirely ignores the long list of potential fact witnesses that Plaintiffs have **identified by name**.[6] That list includes:

- 4 members of the Chapin family, including one Plaintiff;

- 6 members of the Goncalves family, including one Plaintiff;

- 2 members of the Kernodle family, including one Plaintiff;

- 2 members of the Laramie family, including one Plaintiff;

- 2 coroners;

- 19 members of the WSU faculty or staff;

- 33 of Kohberger's fellow graduate students and or teaching assistants; and

- Kohberger.

Of these 69 witnesses identified on the list Plaintiffs provided to the State in November 2025, 32 reside in the Eastern District and 37 reside outside of the Eastern District, including 14 in the Western District.[7] And, as Plaintiffs' investigation has continued, the number of fact witnesses outside the Eastern District has grown substantially. Plaintiffs expect to depose numerous witnesses in Pennsylvania, which is where Kohberger lived before WSU brought him to the Moscow-Pullman community. (*See* Complaint at ¶¶ 199-218.) Plaintiffs will need these witnesses to show that WSU should never have hired Kohberger, due to prior red flags. These red flags based in Pennsylvania include, but are not limited to, heroin addiction, complaints from female classmates, an arrest for theft, a fascination with serial killers, and local businesses

---

[6] As required by RCW § 4.92.100, Plaintiffs provided the State with tort claim forms prior to filing suit that identified potential fact witnesses along with their addresses. While the State did not reference that submission, all but four of the names listed by the State were also on the Plaintiffs' tort claim notice form.

[7] Plaintiffs identified names and addresses on the claim form. (Vertetis Decl. at ¶ 7.) If requested, Plaintiffs are willing to provide the Court with specific names and addresses of these witnesses for in camera review. But out of respect for the witnesses' privacy did not want to publicly file that information.

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **12** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

taking special measures to alert staff when Kohberger was present. (*See id.* at ¶¶ 199-218, 475(a).)

Based on Plaintiffs' investigation to date, there are at least nine additional witnesses in Pennsylvania, including:

- Kohberger's family (mother, father, and sister);
- A school administrator that removed Kohberger from a trade school program due to complaints from female students;
- Kohberger's criminology professor at DeSales University;
- At least two female employees of a local business that raised concerns about Kohberger's behavior; and
- Two forensic examiners that examined Kohberger's devices after the murders.

(Vertetis Decl. at ¶ 9.) Thus, at least 46 potential fact witnesses reside outside of the Eastern District—and Plaintiffs expect to uncover more as their investigation continues.

Many of the known fact witnesses were graduate students at WSU who reported problematic interactions with Kohberger. Now, more than three years after the murders, most have finished their coursework and moved away from WSU. Seven of these former graduate students now reside in the Western District, while others reside in Arizona, California, Hawaii, Missouri, North Carolina, and Oregon. (Vertetis Decl. at ¶ 8.) Additionally, the four surviving members of the Chapin family reside in the Western District, but no surviving family members reside in the Eastern District. (Complaint at ¶¶ 27-30.) Kohberger is now incarcerated in Idaho.

The State's argument fails to address the location of witnesses and focuses solely on the location of certain events. (Mot. at 6.) But while significant events did occur in Pullman, that is a separate question from which location is convenient for trial. Again, a defendant "must make a **strong showing** of inconvenience" to support transfer from a plaintiff's choice of forum. *Decker Coal Co.*, 805 F.2d at 843 (emphasis added). Here, this factor counsels against transfer,

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **13** of **22**



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

as the State has failed to make that showing. There are key fact witnesses in the Eastern District, in the Western District, and in many other states.

### 4. Cost of litigation

The sixth factor, the costs of litigation, weighs against transfer. The State focuses again on certain witnesses located in the Eastern District, (Mot. at 7), ignoring the information provided by the Plaintiffs and discussed above. There are numerous witnesses in the Western District and elsewhere around the United States. The State also ignores expert witnesses.

Plaintiffs already have retained experts based in Georgia and likely will retain several more experts, many or all of whom likely will reside outside of Washington. All of them will testify live at trial. (Vertetis Decl. at ¶ 11.) The Seattle airport has many more flights than the Spokane airport, and thus would be a more convenient—and likely more cost-effective—option for individuals traveling from out of state. In addition, if any of the Pennsylvania-based fact witnesses come to trial, there are non-stop flights from Philadelphia to Seattle on three airlines, but none from Philadelphia to Spokane. (Vertetis Decl. at ¶ 10.) Presumably, the State will also retain expert witnesses for trial, and the same considerations would apply to any experts from out of state. As for fact witnesses based in Pullman, Plaintiffs will commit to deposing all of them in Pullman. (Vertetis Decl. at ¶ 12.) And of course Plaintiffs have the option of presenting deposition testimony by video, rather than requiring every witness to come to trial.

Further, the costs of litigating in the Eastern District would increase for all parties due to the locations of their attorneys. *See JM Vidal, Inc. v. Texdis USA, Inc.*, No. C08-485RSM, 2008 WL 11508395, at *4 (W.D. Wash. June 24, 2008) ("One way of evaluating the cost of litigation is to compare the travel time for the attorneys."). The Attorney General's Office in Olympia represents the State. Plaintiffs are represented locally by Pfau Cochran Vertetis Amala, a firm based in Tacoma. So, hearings in Seattle would be far more convenient than hearings in Spokane for attorneys on both sides. That also applies to Plaintiffs' Kansas City-based counsel,

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

as both Delta Airlines and Alaska Airlines have non-stop flights from Kansas City to Seattle. (Vertetis Decl. at ¶ 13.)

Caselaw indicates that "courts avoid transferring venue when such action would merely shift rather than eliminate costs and inconvenience." *Scott*, 2020 WL 3639637, at *4. In this case, transfer would be a cost shift for witnesses and a cost **increase** for attorneys. This factor, therefore, weighs against transfer.

### 5. *Ease of access to sources of proof*

Plaintiffs do not contest the State's assertion that service of process issues are neutral, but they do contest the State's position on the eighth and final *Jones* factor, ease of access to evidence. This factor is neutral because the documentary evidence will almost surely be produced electronically.

As this Court has held, "[w]here the evidence is in electronic form, this factor is neutral or carries only minimal weight." *Hutto*, 2025 WL 2782488, at *6; *see also Scott*, 2020 WL 3639637, at *5 (stating that "the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence"). WSU has given no indication that the evidence in its files could not be transferred electronically. Plus, as all of the attorneys litigating the case are in the Western District (or Kansas City), it is difficult to understand how moving the case to Spokane would ease anyone's access to evidence. If an attorney needs to go to WSU to gather evidence, that will be a journey regardless of the situs of the court. But if the parties need to litigate a discovery dispute in court, that will be much easier to do if the Court is in Seattle.

The State relies on an inapposite case, *Cruz v. Ferry County*, No. C20-729 MJP, 2020 WL 3872170, at *1 (W.D. Wash. July 9, 2020) (noting that seven defendants lived in the Eastern District). In this case, the sole Defendant is an arm of the State, which is based in the Western District. Critically, the *Cruz* plaintiff suffered harm in the Eastern District. *Id.* at *2. None of

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **15** of 22

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

the Plaintiffs here have suffered harm in the Eastern District. The Chapins have suffered the harm of losing a family member in the Western District, while the remaining Plaintiffs, and the underlying victims, suffered harm in other states. The *Cruz* case says little about access to evidence—the factor for which it is cited. (Mot. at 8.) But it refers to "physical evidence," suggesting that certain evidence was not able to be transmitted electronically. *Cruz*, 2020 WL 3872170, at *2. There was no argument that the Eastern District was an improper venue. *See id.* And, there is no indication that *Cruz* had anything close to the notoriety of this case. Similarly, none of those factors are present in a second case cited by the State, *Faire v. Okanogan County*, No. C20-946 TSZ, 2020 WL 5257882, at *1 (W.D. Wash. Sept. 3, 2020). And again, there is no indication as to whether the evidence at issue was physical or electronic. *Id.*

For all of these reasons, the State has not made the "strong showing of inconvenience" needed to overcome the Plaintiffs' choice of forum.

**B.      This Court should deny transfer in the interest of justice, as it would be difficult to seat an impartial jury in the Eastern District.**

In addition to considering convenience, this Court should also consider "the interest of justice" in determining the transfer motion. *Amazon.com*, 404 F. Supp. 2d at 1259. "The interest of justice factor is the most important [consideration] of all." *Id.* at 1261.

In this case, the interest of justice strongly supports keeping the case in this Court. The challenge of picking a truly impartial jury in the Eastern District would be immense. The Eastern District court would be drawing from a much smaller jury pool than this one, and Eastern District jurors likely would enter the courtroom with a lot of information about the murders, the victims' families, and WSU's alleged role, which naturally would impact the way that they receive the facts presented at trial. This case has generated intense publicity, locally and nationally, over a period of years—beginning with the murders, continuing through

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **16** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

Kohberger's arrest and court proceedings, and ramping up again this past summer with his sentencing.[8] But for residents of the Eastern District, the case took on special importance for nearly seven weeks, as there was a murderer on the loose in the area, and no one knew who or where that person was.[9] The anxiety associated with weeks of a serial killer at large surely provided eastern Washington residents with lasting impressions about the events of this case. Plaintiffs have no idea which side those impressions would benefit, and the answer may vary by juror. But because of those circumstances—not through any fault of Eastern District residents—it would likely be far easier to pick an impartial jury in this Court.

This analysis usually arises in a criminal case, when the defendant seeks to transfer out of a district where publicity is significant. Courts recognize that intense publicity in a district where a notorious crime occurred can make finding an impartial jury difficult. *See Ainsworth v. Calderon*, 138 F.3d 787, 795–96 (9th Cir. 1998), *opinion amended on denial of reh'g*, 152 F.3d 1223 (9th Cir. 1998) ("**Prejudice is presumed** when the record demonstrates that the community where the trial was held was saturated with prejudicial and inflammatory media

---

[8] There are endless articles about the murders, and even some articles about the publicity generated by the murders. One example is: Kathleen Hale, *Idaho Murders: As a Small Town Grapples With Sinister Rumors, Media's True-Crime Obsession Grows*, Vanity Fair, March 8, 2023, available at: https://www.vanityfair.com/news/2023/03/idaho-murders-medias-true-crime-obsession-grows?srsltid=AfmBOopAX5iOcD-NTpfRVxcpGpcGBe9Hf7-JQt-9ATRGzTR1LclUeRoH  (last accessed Feb. 19, 2026). The paper of record in Spokane, The Spokesman Review, has a website dedicated to its coverage of the murders. There are dozens of articles, over a period of nearly three years, archived at: The Spokesman Review: UI Killings, available at: https://www.spokesman.com/sections/ui-killings/ (last accessed Feb. 19, 2026). The paper also covered the filing of this lawsuit (the article is not on the archived page). *See* The Spokesman-Review, *Idaho murder victims' families sue university Kohberger attended for damages*, Jan. 8, 2026, available at: https://www.spokesman.com/stories/2026/jan/08/idaho-murder-victims-families-sue-university-kohbe/ (last accessed Feb. 19, 2026).

[9] The murders took place on November 13, 2022. Bryan Kohberger was arrested on December 30, 2022, which is 47 days later. (Complaint at ¶¶ 4, 345.) Kohberger had not previously been identified publicly as a suspect.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **17** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

publicity about the crime." (emphasis added)). In fact, "a trial judge must grant a motion for change of venue if prejudicial pretrial publicity makes it impossible to seat an impartial jury." *Gallego v. McDaniel*, 124 F.3d 1065, 1070 (9th Cir. 1997). The posture is different here, but the concern is the same. There was a saturation of publicity in the Eastern District about these murders. That publicity raises questions about whether jurors would have preconceived notions about the families and the role of WSU in these crimes. And here, the Court does not need to move the case to avoid that problem. It simply needs to deny the transfer motion.

Another reason that it will be easier to seat an impartial jury in this Court is simple math. The Seattle Division of the Western District has 3,692,942 residents, based on a 2025 estimate. The Spokane Division of the Eastern District has 1,018,433 residents, or 27.6% of the population of the Seattle Division.[10] As the Ninth Circuit recognized, in adjudicating an appeal from Arizona, "it would be far simpler to find impartial veniremen in a city the size of Phoenix than in Prescott." *United States v. McDonald*, 576 F.2d 1350, 1354 n.6 (9th Cir. 1978). Spokane is larger than Prescott, but the same concept applies. By drawing from nearly four times the jury pool, in an area farther removed from a notorious quadruple murder, this Court provides a venue far more likely to produce an impartial jury.

The other factor in this equation is that WSU has a massive presence in the Eastern District, which includes Pullman, the site of its main campus. In Whitman County, which includes Pullman, WSU employs 30% of the workforce. (*Whitman County Profile*, March 2022, at p. 1, Exhibit A to Vertetis Decl.) WSU also has a substantial medical campus in Spokane, the city where the State seeks to send this case. (*See WSU Spokane: Home of WSU Health*

---

[10] World Population Review: Washington, Population by County, https://worldpopulationreview.com/states/washington#population-by-county (last accessed Feb. 12, 2026). Tabulating the data requires cross-referencing with maps of the Western District and Eastern District, including the Seattle and Spokane Divisions. The maps are found at: https://www.wawd.uscourts.gov/about (last accessed Feb. 12, 2026), and https://www.waed.uscourts.gov/juryinfo (last accessed Feb. 12, 2026).

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

*Sciences*, available at: https://spokane.wsu.edu/ (last accessed Feb. 13, 2026).) Spokane is a major alumni base for WSU.[11] Given how influential WSU is in the eastern part of the state, and given that a WSU employee/graduate student committed the murders at issue, it is possible that residents of eastern Washington have discussed and formed opinions about WSU's role in the killings. This is yet another reason that this Court provides a better venue to serve the interests of justice.

An impartial jury is critical to the administration of justice. *See Gallego*, 124 F.2d at 1070. The clearest path to an impartial jury for this case is by keeping it in this Court.

**C.      The "public interest factors" do not support transfer.**

The State also briefly argues certain "public interest factors," but none of them support transfer in this case. And, an additional factor identified by this Court supports **denying** transfer. On balance, then, these factors offer no help to the State's motion.

*1.   Administrative difficulties*

The State simply repeats its arguments about certain events taking place in Pullman, and certain witnesses being located there. (Mot. at 9.) These issues are addressed above. The State offers no argument as to why it would be difficult for this Court to administer the case.

*2.   Jury duty*

The State claims that subjecting jurors in the Western District to jury duty is "unnecessary." (*Id.*) But as explained above, it is absolutely necessary to ensure an impartial jury. Further, the suggestion that the people of western Washington have no interest in a case

---

[11] WSU does not appear to publicize statistics on where WSU alumni live, but it is generally known that WSU has a far greater presence than the University of Washington in the eastern part of the state, while the reverse is true west of the Cascades. UW's published statistics bear this out, as 58% of UW alums live in the Puget Sound area, with only 3% living in Eastern Washington. *Univ. of Washington: Alumni demographics*, available at: https://www.washington.edu/trademarks/licensees/alumni-demographics/ (last accessed Feb. 12, 2026.)

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

involving a major public university, with two campuses in the District, bringing a mass murderer into the state, defies credulity. As residents and taxpayers, everyone in Washington has an interest in the State's activities and its employees (such as Kohberger), but this case goes far beyond that basic interest. It seems unlikely that any jurors seated in this Court would find the case to be irrelevant.

### 3. *Local interest in having controversies decided at home*

This factor is strongest when pitting one state against another. For instance, in *Hutto* this Court noted that "Washington has an interest in the enforcement of its laws protecting Washington workers." *Hutto*, 2025 WL 2782488, at *6. Here, the entire state has an interest in protecting citizens from a major state university bringing a dangerous individual into the state. This interest is not unique to the Eastern District, so this factor is neutral.

### 4. *Average time to disposition*

A final public interest feature, noted by this Court in *Hutto*, is court congestion. This Court found the issue difficult to determine because "neither party presents statistics on the median time from filing to disposition in this District or the District of New Jersey." *Id.* Plaintiffs have done that research, using Westlaw Litigation Analytics, and the results are:

- In the Western District, the median "time to outcome" for torts and negligence cases is 174 days.
- In the Eastern District, the median "time to outcome" for torts and negligence cases is 244 days.

(Vertetis Decl. at ¶ 14.) Therefore, the statistics suggest that this District is more efficient in adjudicating this type of case.

For these reasons, the "public interest factors" do not support the State's motion.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE STATE'S MOTION TO TRANSFER VENUE

Page **20** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

**CONCLUSION**

For all of the foregoing reasons, this Court should deny the State's Motion to Transfer Venue. The Eastern District was not an available forum at the time of filing; the convenience factors do not support transfer; the interest of justice cuts strongly against transfer; and the public interest factors also do not support transfer. On balance, there is nothing to overcome the "significant deference" given to the Plaintiffs' choice of forum.

SIGNED this 20th day of February, 2026.

*I certify that this memorandum contains 6,138 words, in compliance with the Local Civil Rules.*

PFAU COCHRAN VERTETIS AMALA PLLC

By: _/s/ Thomas B. Vertetis_
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832

WAGSTAFF & CARTMELL LLP

By: _/s/ Jonathan P. Kieffer_
Jonathan P. Kieffer (*Pro Hac Vice*)
Jack T. Hyde (*Pro Hac Vice*)
Lindsey N. Scarcello (*Pro Hac Vice*)

**ATTORNEYS FOR PLAINTIFFS**

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE

Page **21** of **22**

Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372

PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654

## <u>CERTIFICATE OF SERVICE</u>

I, **Katie Hedger**, hereby declare under penalty of perjury under the laws of the State of Washington that I am employed at Pfau Cochran Vertetis Amala PLLC and that on today's date, I served the foregoing via **ECF** by directing delivery to the following individuals:

Jordyn Jones
Connor Callahan
Attorney General of Washington
Torts Division
7141 Cleanwater Dr. SW
PO Box 40126
Olympia, WA 98504
*Attorneys for Washington State University*

Jonathan P. Kieffer
Jack T. Hyde
Lindsey N. Sarcello
WAGSTAFF & CARTMELL, LLP
4740 Grand Ave Ste. 300
Kansas City, MO 64112
*Attorneys for Plaintiffs*

DATED this 20th day of February, 2026.ss

/s/ Katie Hedger
Katie Hedger
Legal Assistant

PLAINTIFFS'
RESPONSE IN
OPPOSITION TO THE
STATE'S MOTION TO
TRANSFER VENUE



Wagstaff & Cartmell
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
(816) 701-1100 | Fax: (816) 531-2372



PFAU COCHRAN
VERTETIS AMALA
ATTORNEYS AT LAW
909 A Street, Suite 700
Tacoma, WA 98402
(253) 777-0799 | Fax: (253) 627-0654