**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves, et al., <br><br>            Plaintiffs, <br><br> v. <br><br> WASHINGTON STATE UNIVERSITY, a public university, <br><br>            Defendant. | Case No. 2:26-cv-00301-KKE <br><br> **AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER** |

The parties hereby stipulate to the following provisions regarding discovery in this matter:

**I. General Principles**

This Stipulation and Order ("ESI Order") will govern the discovery of Electronically Stored Information ("ESI") and any Hard Copy Documents in this Litigation as a supplement to, and in accordance with, the Federal Rules of Civil Procedure ("Federal Rules"), and any other applicable orders and rules.[1]  Except as specifically set forth herein, this ESI Order does not: (a)

---

[1] "Electronically Stored Information" or "ESI," as used herein, has the same meaning as in Federal Rules of Civil Procedure 26 and 34. "Document(s)" is also defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rules 26 and 34 and shall include both Hard Copy Documents and ESI. "Hard Copy Documents" means any and all Documents that exist in tangible, paper-based form and are not stored, maintained, or reproduced in any electronic, digital, or computer-readable format.

alter or affect the applicability of the Federal Rules; (b) address, limit, or determine the relevance, discoverability, or admissibility as evidence of any Document; or (c) alter or affect the objections to discovery available under the Federal Rules.

If any Producing Party[2] identifies a circumstance where application of this ESI Order is not technologically practicable or possible, the Producing Party will disclose to the Requesting Party the reasons for, and circumstances surrounding, the need to vary from this ESI Order, and the Parties will meet and confer in an effort to reach agreement on an appropriate deviation from this ESI Order. In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

The Parties acknowledge their duty to work together cooperatively throughout the discovery process and permit an appropriate level of transparency. Consistent with their obligations under the Federal Rules and Local Rules, the Parties will endeavor to cooperate in good faith and be reasonably transparent in all aspects of the discovery process, including the identification, preservation, and collection of sources of potentially relevant ESI, the application of search terms or technology-assisted review, the conduct of responsiveness review, and the production of Documents.

## II. Document Identification & Collection

### A. Known Responsive Documents and ESI Must Be Produced

Where a Party or its counsel has actual knowledge of Documents that are responsive to an Requesting Party's discovery requests (commonly referred to as "go gets"), such Documents and ESI shall be produced even if they do not reside within identified custodial files, are not returned

---

[2] "Producing Party" means the Party producing Documents in response to any Request for Production of Documents pursuant to Federal Rule 34 or for any other reason. "Requesting Party" means the Party requesting Documents in any Request for Production of Documents or receiving Documents in response to any Request for Production of Documents, pursuant to Federal Rule 34, or for any other reason.

by negotiated search terms, or are otherwise outside the scope of the ESI Order's collection methodology. A Party may not rely on the limitations of the agreed-upon search process to withhold Documents it knows to be responsive. This obligation is continuous and applies throughout the discovery period, requiring each Party to supplement its productions as additional known responsive Documents come to its attention.

### B. Disclosure of Custodians and ESI Sources

Within 30 days of entry of this Order, each Party shall disclose the following document/data locations and sources that may contain relevant information as framed by the allegations in the Plaintiffs' Complaint and the Parties' opening discovery:

**1. Custodians:** The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title(s), connection to the Parties and the instant litigation, the types of information under the custodian's control, the custodian's available data sources (email, laptop, mobile, cloud, etc.), and the relevant date range(s).

**2. Non-Custodial Data Sources:** A list of non-custodial data sources (*e.g.*, shared drives, servers, databases, etc.), if any, likely to contain discoverable ESI. The disclosure should include the source name and type, associated custodians or business units, a description of the ESI stored there, and the relevant date range(s).

**3. Third-Party Data Sources:** A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, description of the ESI stored there, the relevant date range(s), and the extent to which a Party is (or is not) able to preserve information stored in the third-party data source.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 3

**4. Inaccessible Data.:** A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a Party asserts is not reasonably accessible and the basis for said contention.

## C. Selection of Custodians and ESI Sources

**1. Initial Proposal.** If any Party contends that a custodial file and/or data source should not be searched for responsive discovery, the Party's Section II(B) disclosure shall identify the custodial file and/or data source it contends should not be subject to discovery and the basis for the Party's contention. If the Party relies on a proportionality argument, the Party shall provide the Opposing Party with all applicable objective data for the contention (i.e. file size, file location, quotes for collection, etc.).

**2. Meet & Confer.** The Parties shall meet and confer within seven (7) days of receipt of the Section II(A) disclosures to attempt to resolve any disagreements about the selection of custodians and/or data sources to be searched for responsive discovery. If the Parties are unable to reach agreement, they may seek relief from the Court.

## D. Collection and Processing of Documents

Each Producing Party shall use methods of collection and processing that preserve the integrity of Document metadata, and of parent-child and family group relationships such as the association between attachments and parent Documents, or between embedded Documents and their parents, or between Documents, including, but not limited to, emails (e.g., Outlook, Gmail) or messaging or communication posts (e.g., Teams, Slack, Google Hangouts, Google Chat) with Document stubs or links to internal or non-public (e.g., Google Workspace, Zendesk) Documents and those stubbed or internal or non-public Documents so linked.

**1. Search Queries and Methodologies.** The Parties shall meet and confer on the application, if any, of search or other filtering technologies, including search terms, file types, date ranges, transparent validation procedures and random sampling, predictive coding, or other appropriate advanced technology, including systems used to track review status related to those advanced technologies. To the extent the Parties cannot reach agreement on the application of, or procedures for, any search or filtering processes, the Parties can raise such issues for resolution by the Court following a meet-and-confer. The Parties recognize that as the Litigation evolves, there may be a need to supplement earlier agreed methods or search terms to enhance or improve the identification of potentially relevant ESI.

    **a. Use of TAR.** A Producing Party shall not use technology-assisted review, machine learning, or any comparable manner of artificial intelligence (collectively "TAR"), commonly known as "predictive coding," to identify or cull Documents to be reviewed or produced, unless mutually agreed by the parties.

    **2. Key Word Search.** If a Producing Party is identifying or culling potentially responsive ESI, which is not already known to be responsive (i.e., Paragraph II(A)), using search terms, the Parties will meet and confer about search terms used on the Producing Party's Documents. The Parties will exchange information to improve the effectiveness of the search terms, such as providing a list of relevant company terminology, and all relevant project and code names, code words, acronyms, abbreviations, and nicknames, if any. Within 30 days of receipt of the Requesting Party's Request for Production and before implementing search terms, the Producing Party will disclose information and meet and confer regarding the search platform to be used, a list of search terms in the exact forms that they will be applied (i.e., as adapted to the operators and syntax of the search platform), significant or common misspellings of the listed

search terms in the collection to be searched, any date filters, or other culling methods, after which the Requesting Party may propose additional terms or culling parameters. If the Parties cannot reach an agreement on search terms within 45 days after issuance of a Request for Production, the parties may seek relief from the Court.

   a. Hard Copy Documents are not required to be searched using an electronic search methodology. *See* Section II(D)(4) below.

   **3. Search Results.** Within 7 days of the Parties' agreement on initial search terms and prior to export and production, the Producing Party shall provide the Requesting Party with unique Hit Reports for each custodial and non-custodial source that was searched. The Hit Reports shall include all of the following information that is obtainable with the Parties' respective document collection software/platforms[3]:

| Field | Description |
| --- | --- |
| **Data Source Identifier** | Name and type of the source (e.g., email mailbox, SharePoint site, file share, Teams channel, network drive) |
| **Custodian Name / Repository Name** | Full name of custodian or designation of non-custodial repository |
| **Date Range of Collection** | Inclusive start and end dates of data collected from the source |
| **Search Term Applied** | Each discrete search term and/or Boolean string applied, listed individually |
| **Raw Hit Count (Pre-Deduplication)** | Total number of documents or items returning at least one hit for each term and string, before deduplication |
| **Family Member Count** | Number of family members (attachments, embedded items, parent documents) pulled in by association with a hit document |

---

[3] WSU has represented that it will be using Microsoft Purview for document collection and extraction.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 6

| Hit Count Including Families (Pre-Deduplication) | Total hit count inclusive of family members, before deduplication |
|---|---|
| Deduplicated Hit Count | Total number of unique, non-duplicative documents or items returning hits for each term and string after application of deduplication methodology |
| Hit Count Including Families (Post-Deduplication) | Total hit count inclusive of family members, after deduplication |
| Cross-Custodian / Cross-Source Duplicate Count | Number of documents identified as duplicates of documents appearing in another custodian's or source's collection |
| Null Result Indicator | Identification of any search term returning zero hits for a given custodian or source |
| Large File Exclusion | Identification of large file types including Power Point Presentations, video files, photographs, audio files, etc. |

a.   Within 7 days after receipt of a Hit Report, the Requesting Party will inform the Producing Party if they want the production run as originally requested or if modifications should be made to the search query prior to production. The parties will meet and confer about the search results. The Producing Party will run additional Hit Reports as requested to collectively inform the parties about how to best modify the criteria to reasonably tailor the search for the collection of relevant information and documents. If the Parties cannot reach an agreement on the search terms to be run for production within 14 days following receipt of the initial Hit Report, they may seek relief from the Court.

**4. Unsearchable Documents.** Documents which are reasonably believed to be responsive, and for which text-based search technologies are fundamentally ineffective, such as images or Hard Copy Documents, audio and video files, among others, must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 7

**5. De-Duplication.** Each Producing Party shall make reasonable efforts to globally de-duplicate exact duplicate Documents within the Producing Party's ESI data set across all custodians at the family level. Documents should be de-duplicated at the family level using MD5 hash values, or SHA-1 hash values, or comparable industry standard hash algorithm disclosed by such Party. "Exact duplicate" shall mean bit-for-bit identity of the Document content with exact hash value matches. Parties shall disclose the methodology, e.g., industry standard program (including any variable parameters) being used to calculate the hash values for individual emails and email families. Any such methodology must ensure that an email that includes content in the "BCC" or other blind copy field shall not be treated as a duplicate of any otherwise identical email that does not include content in the "BCC" or other blind copy field. Emails shall be de-duplicated at the family level and standalone Documents shall not be de-duplicated against attachments. Hard Copy Documents shall not be eliminated as duplicates of ESI.

**6. No Email Threading.** No email may be withheld from production or not logged for privilege because it is included in whole or in part in a more inclusive email; provided, however, that the Parties may use email threading for their own internal review and other internal processes.

### III.  Production Files & Format

#### A.  Standard Document Production

Unless otherwise specified herein or agreed upon by the Parties, Documents (e.g., Word, PDFs, emails) shall be produced in a searchable PDF format (PDF/A or standard PDF), at 300 DPI resolution, with embedded searchable text (extracted text where available, or OCR for scanned Documents). Each Document shall be produced as a single, multipage PDF file. Documents shall

be produced in full color where color is reasonably necessary to understand the Document's content with color fidelity preserved at 300 DPI or higher.

### B. Native Files

**1.** The following Document types shall be produced in Native Format in all instances, regardless of whether a searchable PDF is also produced:

a. Microsoft PowerPoint files (.ppt, .pptx) and any equivalent presentation format;

b. Microsoft Excel files (.xls, .xlsx, .csv) and any equivalent spreadsheet format;

c. All audio files (including but not limited to .mp3, .wav, .m4a, .aac);

d. All video files (including but not limited to .mp4, .mov, .avi, .wmv, .mkv); and

e. Any other file type that cannot be reasonably rendered as a searchable PDF without material loss of content, functionality, or meaning.

**2.** Native files shall be produced with a placeholder PDF slip sheet branded with a unique production Bates number and a notation that the Document is produced in native format (i.e. "File Produced in Native Format."). The confidentiality designation shall be affixed to the corresponding slipsheet. The native file shall be linked in the load file. Native files will be produced in a separate folder on the Production Media.

**3.** To the extent that it is available, the original Document text shall be provided in a Document-level multi-page UTF-8 with BOM text file with a text path provided in the *.dat file; otherwise, the text contained on the slipsheet language shall be provided in the *.txt file with the text path provided in the *.dat file.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 9

**4.** When redaction makes production of native-format files other than spreadsheets or presentations infeasible, the Parties will confer to determine a reasonably usable form for the production.

**5.** Any Party may request the native production of any Document or category of Documents not otherwise required to be produced natively under Section III(B)(1). Upon written request, the Producing Party shall produce the requested Documents in Native Format within three (3) calendar days of receipt of the written request.

**C. Hard Copy Documents.** Documents that exist in hard copy will be scanned to .pdf image format and produced in accordance with the specifications set forth herein. A Producing Party's Hard Copy Documents that are not text-searchable shall be made searchable by OCR prior to production. In scanning Hard Copy Documents, distinct Documents should not be merged into a single record, and single Documents should not be split into multiple records (i.e., paper documents should be logically unitized[4]). In the case of an organized compilation of separate Documents (e.g., a binder containing several separate Documents behind numbered tabs), the Document behind each tab should be scanned separately, but the relationship among the Documents in the compilation should be reflected in the proper coding of the beginning and ending document and attachment fields. The parties will make their best efforts to unitize the Documents correctly.

**D. Databases and Other Data.** Prior to collection, the Parties shall meet and confer regarding the production and format and scope of responsive structured data or aggregated or threaded data source or otherwise maintained by an application (e.g., Microsoft Teams, Slack,

---

[4] Logical unitization is the process of human review of each individual page in an image collection using logical cues to determine pages that belong together as Documents. Such cues can be consecutive page numbering, report titles, similar headers and footers, and other logical indicators.

Microsoft Access, SharePoint, Oracle, Salesforce, ACT!, or any other messaging or proprietary databases or services) in order to ensure that any information produced is reasonably usable by the Requesting Party. The Parties will cooperate in the exchange of sufficient information concerning such databases to facilitate discussions on the production of responsive information, including available data fields/objects and schema. To the extent a Producing Party is constrained from producing responsive ESI because of a third-party license or because software necessary to view the ESI is hardware-dependent, the Parties shall meet and confer to minimize any expense or burden associated with the production of such Documents in an acceptable format, including issues as may arise with respect to obtaining access to any such software and operating manuals. If the Parties cannot reach agreement, the matter will be decided by the Court.

### E. Mobile and Handheld Devices.

1.      WSU is in possession of text messages involving WSU employees, facility, and/or students that are relevant to this litigation ("Previously Preserved Text Messages"). WSU has agreed to produce the Previously Preserved Text Messages to Plaintiffs in their current format, screenshot captures, through the production methodology outlined in this ESI Protocol.

2.      WSU has represented that it is not aware of any relevant WSU employees, facility, or students that had state-issued mobile devices. While there may be WSU employees, facility, or students that have text messages on their personal devices that are relevant to this litigation, WSU has taken the position that these personal mobile devices are not in its possession, custody, or control.  Given that discovery is in the early stages, Plaintiffs reserve all rights as to whether and to what extent WSU has possession, custody or control of any mobile devices.

3.      The Parties have discussed the possibility that mobile devices used by WSU police or security may be within WSU's possession, custody, or control and may have information

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 11

relevant to this litigation. WSU is the process of exploring this possibility and agrees to meet and confer with Plaintiffs about these potential sources of discovery.

4. The Parties agree that to the extent any mobile devices are within WSU's possession, custody, or control the Parties will meet and confer about the methodology for searching and producing that data to preserve the metadata, date/time sequence, and full conversational context of the communications.

**F. Other File Types.** The Parties will meet and confer on the format of the production of other file types not specifically identified in this Stipulation.

**G. Production Formatting**

**1. Parent-Child Relationships.** Parent-child relationships such as the association between an attachment and its parent Document, or between embedded Documents and their parent, or between a Document with Document stubs or links to internal or non-public Documents and those stubbed out Documents or internal or non-public Documents so linked, shall be preserved. Attachments should be consecutively produced with their parent.

**2. Family Groups.** A Document and all other Documents in its attachment range, emails with attachments, files with extracted embedded OLE (object linking and embedding) Documents, and email or other Documents together with any Documents referenced by Document stubs, or via links to internal or non-public Document sources within those emails or other Documents, all constitute family groups. If any member of a family group is produced, all members of that group must also be produced or else logged as privileged, and no such member shall be withheld from production as a duplicate.

**3. Bates Numbering.** Bates numbering should be consistent across the production, maintain a constant length across the production, and be numerically sequential within

a given Document. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted with a placeholder. Attachments to Documents will be assigned Bates numbers that directly follow the Bates numbers on the Documents to which they were attached. In addition, wherever possible, each *.pdf image will have its assigned Bates number electronically "burned" onto the image.

**4. Redactions.** Other than as permitted by this ESI Order or the order concerning confidentiality agreed and/or entered in this Litigation, no redactions for relevance may be made within a produced Document or ESI item. Any redactions shall be clearly indicated on the face of the Document, with each redacted portion of the Document stating that it has been redacted and the basis for the redaction, and a metadata field shall indicate that the Document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive Document contains both redacted and non-redacted content, the parties shall produce the remainder of the non-redacted portions of the Document and the text/OCR corresponding to the non-redacted portions.

**5. Metadata To Be Produced.** Each Producing Party shall use methods of collection and processing that preserve the integrity of Document metadata. The metadata fields detailed listed below shall be produced for each Document to the extent that such information is available or, in the case of metadata created during processing such as Bates numbers, created, at the time of collection and processing. The Producing Party shall use best efforts to populate all applicable metadata fields. If a metadata field is unavailable for a given Document, the Producing Party shall, upon request, provide a written explanation of why the metadata is unavailable. If a field contains privileged information, that privileged information may be redacted and noted in a corresponding privilege log. The metadata for text messages, collaboration system messages (e.g.,

Chatter) and social media messages may need to be supplemented based upon the nature of the platforms containing responsive discovery. The Parties shall supplement and/or modify the required metadata fields as needed to ensure relevant metadata is available to the Requesting Party.

| Field | Description |
|---|---|
| Beg Bates | Beginning Bates Number of Document. |
| End Bates | Ending Bates Number of Document. |
| Beg Attach | Beginning Bates number of the first Document in attachment range in a document family range. |
| End Attach | Ending Bates number of the last Document in attachment range in a document family range. |
| Beg Family | Beginning Bates number of the first Document in a family group, including the parent Document and all associated attachments. |
| End Family | Ending Bates number of the last Document in a family group, including the parent Document and all associated attachments. |
| Custodian | Name of the Custodian of the Document produced. If the Document was collected from a centralized source, the Custodian field shall reference that centralized source. |
| All Custodians | All custodians from whom the document was collected. |
| Source | Data source (e.g. email server, shared drive, laptop, etc.). |
| Filename | Filename of the original source. |
| File Path | Original file path or location. |
| File Extension | File extension of Document (.msg, .doc, .xis, etc.). |
| File Size | File size in bytes. |
| Document Type | Type of Document (e.g. email, attachment, spreadsheet, etc.). |
| E-mail Outlook Type | Type of Outlook item, e.g., e-mail, calendar item, contact, note, task. |
| Native Path | Relative path and filename to the produced Native Format file. |
| Text Path | Relative path to extracted text file. |
| Subject | Subject line extracted from an Email message or calendar entry. |
| Title | Title field extracted from the Metadata of a non-Email document. |
| Author | Author field extracted from the Metadata of a non-Email Document. |
| From | From field extracted from an Email message. |
| To | To or Recipient field extracted from an Email message. |
| Cc | CC or Carbon Copy field extracted from an Email message. |
| BCC | BCC or Blind Carbon Copy field extracted from an Email message. |
| Chat Contributors | All participants in a text or instant message chain or group. |
| Sender Identifier | Name, phone number, or user ID of participants in a text or instant message group. |
| Recipient Identifier(s) | Name, phone number, or user ID of participants in a text or instant message group. |

| Contact Name | Name of participant in text or instant message as saved on device. |
|---|---|
| Phone Number(s) or Account Identifier(s) | Telephone numbers, Apple ID, email or other identifier for text or instant message contributors. |
| Delivery Status | Whether a message was sent, delivered, or failed to send. |
| Deletion Indicators | Whether a message was deleted, and when. |
| Edit History | Timestamps and prior versions. |
| Date Sent | Sent date of an Email message (mm/dd/yyyy format). |
| Time Sent | Time of an Email message (hh:mm:ss format). |
| Start Date | First date of a text or instant message (mm/dd/yyyy format). |
| End Date | Last date of a text or instant message (mm/dd/yyyy format). |
| Date Received | Received date of an Email message (mm/dd/yyyy format). |
| Time Received | Received time of an Email message (hh:mm:ss format). |
| Date Created | Creation date of a file (mm/dd/yyyy format). |
| Time Created | Creation time of a file (hh:mm:ss format). |
| Date Last Modified | Last modification date (mm/dd/yyyy format). |
| Time Last Modified | Last modification time (hh:mm:ss format). |
| Last Modified By | Last person to modify document. |
| Date Accessed | Date file was last accessed (mm/dd/yyyy format). |
| Time Zone | Time zone used for date/time fields. |
| Full Text | Relative file path to the full text/OCR file. |
| Message-ID | The Message ID assigned by the mail server, if applicable. |
| Conversation ID | Thread or conversation identifier. |
| Hash Value | MD5 hash value. |
| Page Count | Number of pages in the document. |
| Production Volume | Specific volume of a Party's Production (e.g. Production #2). |
| Redacted | Flag indicating redaction (Yes/No). |
| Confidentiality | Confidentiality designation if applicable; otherwise blank. |

**6. Custodian Information.** All productions shall identify the custodian(s) from whom each Document was collected. Specifically:

a. The CUSTODIAN field shall identify the primary custodian of the Document.

b. The ALL_CUSTODIANS field shall identify every custodian from whose collection the Document was obtained, including instances of de-duplication across custodians. Where a Document is a deduplicated copy,

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 15

all custodians whose collections contained that Document shall be listed in ALL_CUSTODIANS, separated by a semicolon.

    c. The SOURCE field shall identify the data source from which the Document was collected (e.g., "Microsoft Exchange Email Server," "OneDrive - John Smith," "Laptop - Jane Doe").

**7. Dates.** All provided metadata pertaining to dates and times will be standardized to Pacific Standard Time (PST). When a metadata field includes a date and/or time, it shall be provided in the following format: mm/dd/yyyy hh:mm:ss.

**8. Extracted Text and OCR.** Each Document, whether produced as a native file or in PDF format, and whether originally existing in electronic or in hard copy, shall be produced with extracted text or OCR, as described herein. The extracted full text and/or OCR text for all deliverables should be in separate Document-level, UTF-8 with BOM encoded TXT files provided in a separate folder.

**9. Password Protection.** In the event any Document is password protected, the Producing Party shall make all reasonable efforts to provide the password needed to access the Document.

**10. Load Files.** ESI will be produced with a standard Concordance (*.dat) load file format and an image load file that is in .OPT format. The Concordance (*.dat) load file shall be provided with UTF-8 encoding.

    a. **Video and Audio Load Files.** The Parties anticipate that a significant volume of video and audio files will be produced in this Litigation. To facilitate efficient Document management and to avoid unnecessary hosting costs that may result from commingling large-format media files with standard Document productions, the production of native audio and

video files exceeding 100 MB in size shall be segregated from other Document-based productions. A separate load file containing video and audio files shall be provided while maintaining the integrity of familial relationships and grouping where applicable.

**11. Embedded Links.** No Party is required to automatically collect and produce Documents accessible only via embedded links (including hyperlinks, URLs, or cloud-storage references) contained within produced Documents. However, any Party may request production of content accessible via an embedded link identified in a produced Document. Upon receipt of such a request, the Producing Party must use all reasonable efforts to access, collect, and produce the content associated with the identified embedded link within seven (7) days of the request. If the embedded link content is unavailable, no longer accessible, or subject to a claim of privilege or other protection, the Producing Party shall provide written notice seven (7) days of the request identifying the specific reason for non-production. Any content produced in response to an embedded link request shall be produced in the same format as other ESI under this ESI Order.

**12. Production Media and Access Controls**. Documents shall be produced through secure electronic transmission ("Production Media"). The Producing Party shall accompany all Production Media with a transmittal cover letter with information sufficient to identify all accompanying media, together with a production log, in Excel spreadsheet format, updated with each production, identifying: (a) the date of production; (b) the production volume; (c) the Bates ranges for the Documents encompassed within the production; (d) general description of subject matter of the production (i.e., regulatory Documents, custodial Documents of Jane Doe, etc.); and (e) whether the production constitutes the completion of the Producing Party's production with respect to a specific custodian, department, division, committee, or team. All production volumes shall remain available for download for at least thirty (30) calendar days. A

Producing Party shall, within a reasonable time, accommodate requests from another Party or Parties that Documents be reposted or made available for a longer time period.

## IV.   Claims of Privilege

### A.  General Obligation

When a Party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the Party shall comply with Federal Rule of Civil Procedure 26(b)(5)(A) by providing a privilege log that contains sufficient information for the opposing Party to evaluate the applicability of each claimed privilege or protection.

### B.  Partially Privileged Documents

Consistent with the Federal Rules of Civil Procedure, where a claim of privilege is made with respect to part of a Document, the Producing Party shall produce all non-privileged content and redact only the specific privileged material. No Party may withhold an entire Document, email, or email family solely on the ground that a portion of that Document, email, or attachment is privileged.[5] Email attachments shall be evaluated independently for privilege. All redactions on claims of privilege shall be clearly marked (e.g., "[REDACTED – ATTORNEY-CLIENT PRIVILEGE]" or "[REDACTED – WORK PRODUCT]") to identify the specific privilege or protection asserted. Reactions must be included on the Party's Privilege Log.

### C.  Timing of Privilege Log

---

[5] E.g. Where an email thread contains multiple communications, and privilege attaches to only one or more discrete messages within the thread, the Producing Party shall produce all non-privileged messages and redact only the specific privileged message(s). The Producing Party shall not withhold the entire thread based on a privilege claim applicable to fewer than all messages in the thread.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 18

The Producing Party shall serve its Privilege Log concurrently with each production of documents, or within ten (10) days after the production, unless the parties agree to a different schedule or the Court orders otherwise.

**D.  Format of the Privilege Log**

The Privilege Log shall be provided in a searchable, sortable electronic format (e.g., spreadsheet or excel file). Where a Party uses document review software to code privilege designations, the log should be generated from that coding to ensure consistency and completeness.  Any supplemental privilege log entries shall be incorporated directly into the original privilege log document, rather than produced as a separate standalone log, so as to maintain a single, unified privilege log for each Party.

**E.  Privilege Log Fields**

Each entry on the Privilege Log shall contain, at a minimum, the following information:

| Field | Description |
|---|---|
| Bates Range / Document ID | The Bates number(s) or unique document identifier(s) assigned to the withheld or redacted Document. |
| Date | The date of the Document withheld. For ESI, the sent date, creation date, or last-modified date, as applicable. |
| Author / Sender | The name and title or role of the author or sender of the Document. |
| Recipient(s) / Addressee(s) | The names and titles or roles of all recipients, including those on To, CC and BCC lines for email communications. |
| Custodian(s) | The custodian(s) of the file(s). |
| Document Type / Format | A description of the type of Document (e.g., email, memorandum, spreadsheet, instant message, attachment). |
| File Name or Extension | The file name or extension of the withheld or redacted ESI. |
| Email Subject Line | For email communications, the subject line of the email as it appears in the header. Where the subject line itself contains privileged information, the Producing Party shall so state on the log and provide a general, non-privileged description of the subject matter sufficient to permit evaluation of the privilege claim. |
| Subject Matter | A general description of the subject matter of the Document, stated with sufficient specificity to permit an assessment of the privilege claim, without disclosing the privileged content. |
| Privilege Asserted | The specific privilege or protection claimed (e.g., attorney-client privilege, work-product doctrine, joint-defense privilege). |
| Basis for Privilege | A brief statement of the factual basis supporting the privilege claim, including the identity of the attorney and client involved, and the nature of the legal advice sought or provided. |
| Withheld / Redacted | An indication of whether the Document has been withheld in full or produced with redactions. |
| Production Volume | An indication of which production volume the withheld Document is associated with or otherwise connected to. |

**F.  Inadvertent Production and Clawback**

This Protocol is intended to supplement, and not limit, the protections of Federal Rule of Evidence 502(b) and any order entered pursuant to Federal Rule of Evidence 502(d).

**V.    Miscellaneous**

**A. Preservation.** Each Party shall preserve all Documents and ESI reasonably anticipated to be relevant to this action, including Documents and ESI in the custody or control of

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 20

third parties acting on the Party's behalf. Preservation obligations extend to ESI in all locations, including, without limitation: email systems, file servers, shared drives, cloud storage, mobile devices, laptops, desktops, backup systems, and collaboration platforms (e.g., Microsoft Teams, Slack, Google Workspace). Preservation shall include all associated metadata. No Party may alter, delete, overwrite, or otherwise destroy potentially relevant ESI without prior written consent of all Parties or court order.

  **B.  Confidentiality Order.** All Documents produced by the Parties will be subject to the terms of any Protective Order entered in this Litigation.

  **C.  Reservation of Rights.** Nothing in this ESI Order may be construed or interpreted to waive any objections to the production, discoverability, admissibility, or confidentiality of Documents, or to constitute an independent motion for an appropriate protective order pursuant to the Federal Rules. The Parties retain the right, upon reviewing any productions made by another Party in this Litigation or conducting other investigation and discovery, to request that Documents from additional non-custodial data sources or custodians be produced. The Parties will meet and confer regarding such requests prior to any search or production related thereto. Nothing in this Order shall be deemed to be a waiver of any Party's right to reasonably seek agreement from the other Parties, or a Court ruling, to modify proposed or previously agreed to search terms, techniques, or tools (including any proposed as supplements).

  **D.  Modification.** This ESI Order may be modified by a Stipulated Order of the Parties or by the Court for good cause shown.

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE      PAGE - 21

SIGNED this 26th day of May, 2026.

Respectfully submitted,

WAGSTAFF & CARTMELL LLP

By: /s/ *Jonathan P. Kieffer*
Jonathan P. Kieffer (*Pro Hac Vice*)
Jack T. Hyde (*Pro Hac Vice*)
Lindsey N. Scarcello (*Pro Hac Vice*)

PFAU COCHRAN VERTETIS AMALA PLLC
Thomas B. Vertetis, WSBA No. 29805
Christopher E. Love, WSBA No. 42832
**ATTORNEYS FOR PLAINTIFFS**

NICHOLAS W. BROWN
Attorney General

By:  /s/ *Jordyn Jones*
Jordyn Jones, WSBA No. 52648
Connor Callahan, WSBA No. 54099
Hannah Justice, WSBA No. 50571
Assistant Attorneys General
**ATTORNEYS FOR DEFENDANT WSU**

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 22

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves, et al., | Case No. 2:26-cv-00301-KKE |
| Plaintiffs, | **[PROPOSED] ORDER ON AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION** |
| v. | |
| WASHINGTON STATE UNIVERSITY, a public university, | |
| Defendant. | |

Based on the foregoing, IT IS SO ORDERED.

DATED:_____

_____
THE HONORABLE KYMBERLY K. EVANSON
UNITED STATES DISTRICT JUDGE

AGREEMENT REGARDING
DISCOVERY OF ESI
AND [PROPOSED] ORDER
Case No. 2:26-cv-00301-KKE                    PAGE - 23