The Honorable Brian A. Tsuchida

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

STEVE GONCALVES, as personal representative of the Estate of Kaylee Jade Goncalves; KAREN LARAMIE, as personal representative of the Estate of Madison May Mogen;
JEFFREY KERNODLE, as personal representative of the Estate of Xana Alexia Kernodle; and STACY CHAPIN, as personal representative of the Estate of Ethan J. Chapin,

Plaintiffs,

v.

WASHINGTON STATE UNIVERSITY,

Defendant.

NO. 2:26-cv-00301

DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOTING DATE: OCTOBER 13, 2026

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Washington State University ("WSU") moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings and dismissal with prejudice of Plaintiffs' Complaint ("Complaint," Dkt. No. 1-2). This case arises from the horrific murders of University of Idaho students Kaylee Goncalves, Madison Mogen, Xana Kernodle, and Ethan Chapin in Moscow, Idaho,



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

in November 2022. Bryan Kohberger killed all four victims.[1] At the time he committed this intentional criminal act, Kohberger was a graduate student and teaching assistant at WSU in Pullman, Washington. The brutality of his crimes is beyond dispute, but Kohberger alone is responsible for this tragedy. As a matter of law, WSU, a Washington State college, does not owe a legal duty to prevent the intentional criminal acts of third parties occurring over state lines and outside of its control. Accordingly, Plaintiffs' complaint should be dismissed with prejudice.

In this lawsuit, Plaintiffs, the personal representatives of the victims' estates, seek to hold WSU liable for failing to prevent Kohberger's intentional premeditated crimes. In essence Plaintiffs allege that WSU knew of concerning behavior by Kohberger while he was a graduate student enrolled in its program and failed to predict and prevent his premeditated off campus criminal conduct. Based on that theory, the Complaint asserts claims against WSU for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 , negligence, gross negligence, outrage, wrongful death, and survival. Each of these claims necessarily fails as a matter of law.

First, Plaintiffs' Title IX claim fails because WSU's conduct did not deprive the decedents, students of the University of Idaho, of access to any educational opportunity or benefit offered by WSU. Second, Plaintiffs' negligence claim under *Restatement (Second) of Torts* § 315(a) fails as a matter of law because Washington law does not impose a legal duty on a university to prevent intention criminal conduct perpetrated by its students where the conduct occurs off campus and outside of the university's control. *Barlow v. State*, 2 Wn.3d 583 (2024). Third, Plaintiffs' negligence claim under *Restatement (Second) of Torts* § 317 also fails because employers do not

---

[1] Kohberger pleaded guilty and was convicted and sentenced for the murders. He has since filed a petition for post-conviction relief seeking to withdraw his guilty plea and challenge his convictions. The instant motion refers to his convictions as they presently stand; however, WSU reserves the right to address any subsequent change in their status.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

owe a legal duty to control their employees to prevent criminal conduct occurring off duty and off campus. *Niece v. Elmview Group Home*, 131 Wn.2d 39, 48 (1997); *Andersen v. Soap Lake School Dist.*, 191 Wn.2d 343, 363 (2018). Fourth, Plaintiffs' negligence claim under *Restatement (Second) of Torts* § 302(b) fails because Plaintiffs' claims are based on alleged nonfeasance that do not give rise to liability. *Robb v. City of Seattle*, 176 Wn.2d 427 (2013). Lastly, Plaintiffs claim the alleged failure to prevent Kohberger's crimes gives rise to the intentional tort of Outrage. As a matter of law, WSU's conduct was neither extreme or outrages, nor conducted intentionally or recklessly to cause emotional distress and for these reasons Plaintiffs' Outrage claim fails as a matter of law. *Reid v. Pierce Cnty*, 136 Wn.2d 195, 202 (1998).

As set forth above, WSU did not owe Plaintiffs a legal duty to prevent Bryan Kohberger's intentional criminal actions. The Complaint's extensive factual allegations cannot supply legal duties or causes of action that governing law does not recognize, and amendment cannot cure those defects. Accordingly, this Court should grant WSU's motion for judgment on the pleadings and dismiss Plaintiffs' claims against WSU with prejudice.

## II. RELEVANT FACTS

Bryan Kohberger enrolled in WSU's Criminal Justice and Criminology Ph.D. program in 2022 and as part of that program, acted as a graduate teaching assistant. Compl. Dkt. 1-2, ¶¶ 2, 450–54. Plaintiffs allege that WSU paid Kohberger a salary, provided health benefits, tuition, an office, and university housing, and subjected him to various employment, academic, housing, and student-conduct requirements. *Id*. ¶¶ 450–59. They characterize the resulting relationship as "unlike WSU's relationship with a typical individual student" and allege that WSU had authority to supervise his



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

work, enforce University policies, discipline or terminate him, and restrict his continued access to University resources. *Id*. ¶¶ 448–65.

Plaintiffs allege that, shortly after Kohberger arrived at WSU, students and employees began raising concerns about his behavior toward women. According to the Complaint, female students and employees reported that Kohberger followed women, stood uncomfortably close to them, blocked exits from offices, and otherwise engaged in behavior that made them feel unsafe. *Id*. ¶¶ 7–12. Plaintiffs allege that concerns about Kohberger were serious enough that security escorts were arranged for some female students and staff to reach their cars after hours. *Id*. ¶ 8. Plaintiffs further allege that faculty members discussed Kohberger's behavior and that WSU's Compliance and Civil Rights office ("CCR") received at least thirteen formal complaints relating to him. *Id*. ¶¶ 12–13. Plaintiffs contend that WSU inadequately investigated or responded to those reports and that the CCR employee responsible for addressing them had neither met nor spoken with Kohberger before the murders. *Id*. ¶ 13.

The Complaint also relies extensively on WSU's threat-assessment procedures. WSU maintains a Threat Assessment Team ("TAT") that receives and assesses reports of threatening or concerning behavior and may recommend measures addressing potential violence. *Id*. ¶¶ 106–15. Plaintiffs allege that TAT uses a threat-assessment instrument known as WAVR-21, which considers behavioral and other factors associated with potential violence. *Id.* ¶¶ 115–24. They contend that WSU should have referred information concerning Kohberger to TAT, conducted a comprehensive WAVR-21 assessment, and taken further action in response to the results. *Id.* ¶¶ 304–13. According to Plaintiffs, an appropriate assessment would have led WSU to identify Kohberger as presenting a high risk of violence and to consider interventions such as monitoring,

counseling, discipline, suspension, termination, or referral to law enforcement. *Id*. ¶¶ 304–13, 462–67.

Plaintiffs also emphasize the proximity and interaction between WSU in Pullman, Washington, and the University of Idaho in Moscow, Idaho. They allege that students travel between the two communities, that the universities share certain academic resources and programs, and that students at each institution may take some courses offered by the other. *Id.* ¶¶ 223–30. Plaintiffs characterize the two cities as the "Pullman-Moscow community" and allege that WSU should have acted to protect not only its own students and employees but members of that broader community. *Id*. ¶¶ 1–4, 223–31, 447.

The four decedents, however, were University of Idaho undergraduate students. *Id.* ¶ 322. The Complaint does not allege that any decedent was enrolled at WSU or participated in a WSU educational program or otherwise engaged with the WSU campus or community. Nor does it allege that any decedent so much as knew Kohberger, much less, made a complaint about him to WSU. Instead, Plaintiffs allege that Kohberger separately identified and stalked the decedents before their deaths and that WSU should have recognized from his conduct toward others that he presented a danger extending beyond WSU and its students to non-WSU students living in another state. *Id*. ¶¶ 304–13, 343–44, 429–35.

### A. Kohberger's Criminal Conduct Occurred Off-Campus and Over State Lines

In the early morning hours of November 13, 2022, Plaintiffs allege that Kohberger traveled to a private residence at 1122 King Road in Moscow, Idaho. *Id*. ¶ 316. Plaintiffs allege that Kohberger entered the residence through a sliding glass door and stabbed Kaylee Goncalves, Madison Mogen, Xana Kernodle, and Ethan Chapin to death. *Id*. ¶¶ 317–20. Plaintiffs further allege



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

that later examination of Kohberger's cellphone records showed that he had been in the area of the King Road residence on numerous occasions before the murders. *Id.* ¶¶ 342–44.

The Complaint does not allege that the murders occurred during Kohberger's work as a teaching assistant or while he was performing any WSU-sponsored activity. To the contrary, Plaintiffs expressly predicate part of their negligence theory on WSU's asserted obligation to control Kohberger "while acting outside the scope of his employment so as to prevent him from intentionally harming others[.]" *Id.* ¶ 441. Plaintiffs nevertheless allege that WSU's authority arising from Kohberger's status as a student, teaching assistant, and university-housing resident gave WSU sufficient control over him to impose a duty to protect members of the Pullman-Moscow community from his private conduct. *Id.* ¶¶ 437–69. They further allege that WSU "affirmatively brought Kohberger to the Pullman-Moscow community" by offering him employment that required him to reside in Washington. *Id.* ¶ 451.

Plaintiffs identify numerous actions they contend WSU should have taken before November 13, 2022, including conducting a more extensive background investigation, more aggressively investigating complaints, referring Kohberger to TAT, performing a WAVR-21 assessment, monitoring him, disciplining or terminating him, removing him from University housing, restricting his access to University resources, and warning others of the danger they allege he posed. *Id.* ¶¶ 462–75. They allege that, had WSU taken such actions, Kohberger would have been "neutralized as a threat long before he committed the murders." *Id.* ¶ 476.

Based on these allegations, Plaintiffs assert claims against WSU for violation of Title IX, negligence, gross negligence, and outrage, together with survival and wrongful-death claims arising from each decedent's death. *Id.* ¶¶ 369–517. Plaintiffs' theory is that WSU's allegedly inadequate



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

response to Kohberger before November 13, 2022, allowed him to later commit the murders and that WSU is therefore legally responsible for the resulting harm. *Id*. ¶¶ 466–78.

## III. STANDARD OF REVIEW

Rule 12(c) is "functionally identical" to Rule 12(b)(6), and the same standard applies. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Judgment on the pleadings is proper when, accepting the complaint's factual allegations as true, there is no material factual dispute, and the moving party is entitled to judgment as a matter of law. *Chavez v. U.S.*, 683 F.3d 1102, 1108 (9th Cir. 2012). The question is "whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy." *Id.* In making that determination, the court applies the familiar Rule 12(b)(6) pleading standard: the complaint must contain sufficient factual matter to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although well-pleaded factual allegations are accepted as true, the Court need not accept "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). Dismissal is appropriate where the complaint lacks a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare Sys*., LP, 534 F.3d 1116, 1121–22 (9th Cir. 2008).

## IV. ARGUMENT

### A. Plaintiffs Fail to State a Cognizable Claim Under Title IX Because They Were not WSU Students or Participants in WSU's Educational Program

Title IX prohibits discrimination "on the basis of sex" within an education program or activity receiving federal financial assistance. 20 U.S.C. § 1681(a) ("[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

be subjected to discrimination under any education program or activity receiving Federal financial assistance."). In the student-on-student harassment context, a funding recipient may be liable for its "deliberate indifference to known acts of harassment **in its programs or activities**." *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999) (emphasis added). Here, Plaintiffs have not pleaded a cognizable Title IX claim because the decedents were not participants in or beneficiaries of WSU's educational programs or activities and therefore could not have been deprived of access to educational opportunities or benefits provided by WSU.[2]

Plaintiffs seek to impose liability based on WSU's alleged deliberate indifference before the decedents were murdered. Their claim therefore implicates the pre-assault theory recognized in *Karasek v. Regents of Univ. of California*, 956 F.3d 1093 (9th Cir. 2020). Although *Karasek* recognizes such a theory, it necessarily requires a plaintiff to allege that, as a result of the school's alleged policy of deliberate indifference, the plaintiff suffered harassment "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Id.* at 1112 (quoting *Davis*, 526 U.S. at 650).

That requirement follows directly from *Davis*. In defining the limits of a funding recipient's Title IX liability, the Supreme Court explained:

> [Fu]nding recipients are properly held liable in damages only where they are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive **that it can be**

[2] The claim is additionally deficient as to Ethan Chapin, the sole male decedent. Although Title IX protects persons of any sex, Plaintiffs' allegations of Kohberger's sex-based discrimination and harassment concern his conduct toward women. The Complaint does not allege facts showing that Chapin was subjected to discrimination or harassment on the basis of sex.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

> **said to deprive the victims of access to the educational opportunities or benefits provided by the school.**

*Davis*, 526 U.S. at 650 (emphasis added).

The First Circuit applied this same limitation in *Doe v. Brown Univ.*, 896 F.3d 127 (1st Cir. 2018).[3] There, the plaintiff was a Providence College student who alleged that Brown University students sexually assaulted her on Brown's campus. *Id.* at 129. She alleged that Brown's deliberate indifference interfered with her educational opportunities at Providence College to the point that she withdrew. *Id.* at 129–30. Nevertheless, the First Circuit affirmed judgment on the pleadings because she did not allege that she participated, or intended to participate, in Brown's educational programs or activities. *Id.* at 132–33. The court explained that Title IX concerns discriminatory treatment experienced while a person is participating, or at least attempting to participate, in the funding recipient's educational program or activity. *Id.* at 132. It therefore rejected the proposition that interference with the plaintiff's education at Providence College could support a Title IX claim against Brown. *Id.* at 132–33.

While a nonstudent may potentially invoke Title IX if the person actually avails herself of—or intends to avail herself of—the defendant institution's educational programs, services, or resources, according to their own Complaint, the decedents were neither students of WSU, nor did they participate or intend to participate in a WSU educational program or otherwise personally avail themselves of educational opportunities or benefits provided by WSU. Nowhere in their 126-page Complaint, do Plaintiffs identify an educational opportunity, program, service, or benefit provided

---

[3] The Ninth Circuit does not appear to have addressed in a published opinion whether a nonstudent who neither participated nor attempted to participate in the defendant institution's educational programs or activities may maintain a Title IX harassment claim against that institution.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

by WSU to which any decedent was denied access because of Kohberger's conduct. Attendance at the University of Idaho, a university in an entirely different state, does not satisfy this Title IX requirement as a matter of law.

Other cases involving nonstudent plaintiffs reinforce the university specific personal participation requirement for purposes of a Title IX cause of action. In *Doe v. Univ. of Kentucky*, 971 F.3d 553, 558–59 (6th Cir. 2020), a nonstudent could proceed under Title IX where she lived in university housing, paid the university for housing, dining, and student fees, used university resources, and attended a community college with a close academic relationship with the defendant university—thereby personally availing herself of benefits provided by that school. By contrast, *Arocho v. Ohio Univ.*, No. 20-4239, 2022 WL 819734, at *3–5 (6th Cir. Mar. 18, 2022), affirmed dismissal where a nonstudent failed to sufficiently connect the alleged harassment to the defendant university's educational program or activity, even though she had participated in a university-sponsored career event and alleged misconduct by a university employee at university-related locations. In sum, a plaintiff's participation in the funding recipient's program or receipt of its benefits must be actual and personal, not potential or by proxy.[4] *See also Donaghe v. Sherman Heights Elementary*, 24-CV-0359-MMA (DDL), 2024 WL 3883510, at *4–5 (S.D. Cal. Aug. 20, 2024), *appeal dismissed sub nom*. *Donaghe v. Sherman Elementary*, 24-7799, 2026 WL 1134296 (9th Cir. Apr. 27, 2026) (granting Rule 12(b)(6) dismissal with prejudice where nonstudent plaintiffs did not participate or attempt to participate in the defendant school's educational programs

---

[4] This stands in contrast to the Ninth Circuit's recent *en banc* decision in *Brown v. Arizona*, 82 F.4th 863 (9th Cir. 2023). There, the plaintiffs were University of Arizona students, the alleged perpetrators were University of Arizona students, and the plaintiffs alleged that the University's deliberate indifference deprived them of access to its educational opportunities and benefits. *Id.* at 868–70. No such connection is alleged between the decedents and WSU.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

or activities); *E.H. by & through Herrera v. Valley Christian Acad.*, 616 F. Supp. 3d 1040, 1050–53 (C.D. Cal. 2022) (non-students must show they availed themselves of services provided by educational institutions or intended to do so in order to bring a Title IX claim); *Fulbright v. Dayton Sch. Dist. No. 2*, 13-CV-0030-TOR, 2013 WL 1497388, at *6 (E.D. Wash. Apr. 10, 2013) (granting Rule 12(b)(6) dismissal with prejudice of parents' personal Title IX claims because "participants of federally funded programs—and not the participants' parents—have standing to bring claims under Title IX").

Here, Plaintiffs allege only that Kohberger's heinous criminal acts deprived the decedents of educational opportunities at the University of Idaho. Compl. Dkt. 1-2 ¶¶ 429–30. But Title IX does not impose liability on one educational institution for the deprivation of educational opportunities or benefits provided by another. Because University of Idaho programs and benefits do not fall "under" WSU's educational programs or activities, Plaintiffs fail to allege a cognizable Title IX claim. *See Davis*, 526 U.S. at 650–51; *Karasek*, 956 F.3d at 1112.

In sum, Plaintiffs' pre-assault theory fails because they do not allege that WSU deprived the decedents of access to educational opportunities or benefits WSU provided. Whatever claims Plaintiffs may assert based on WSU's alleged conduct concerning Kohberger, Title IX does not provide a cause of action for the loss of educational opportunities or benefits provided by a different university. No amount of discovery can supply the missing connection between the decedents and WSU's educational programs or benefits. Count One of the Complaint, Plaintiffs' Title IX claim, must therefore be dismissed.[5]

---

[5] Because Plaintiffs fail to plausibly allege that the decedents were deprived of access to an educational opportunity or benefit provided by WSU, the Court need not reach whether the Complaint adequately alleges the remaining elements of a pre-assault Title IX claim.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

### A. Plaintiffs' Common Law Negligence Claim Must be Dismissed Because WSU Owed No Duty to Prevent Kohberger's Intentional Off-Campus Criminal Conduct

To state a negligence claim under Washington law, a plaintiff must establish "(1) the existence of a duty to the plaintiff, (2) a breach of that duty, (3) a resulting injury, and (4) the breach as the proximate cause of the injury." *Mancini v. City of Tacoma*, 196 Wn.2d 864, 879 (2021) (citations omitted). Whether a duty exists is a threshold question of law for the Court. *See Barlow*, 2 Wn.3d at 589. Accordingly, where the pleadings establish that no duty exists, the negligence claim fails as a matter of law and judgment on the pleadings is appropriate. *See id.*; *Johnson*, 534 F.3d at 1121–22. And where, as here, the alleged injury was caused by the intentional criminal acts of a third party, Washington begins with the rule that there is no duty to prevent the harm. *Niece v. Elmview Grp. Home*, 131 Wn.2d 39, 43 (1997); *Restatement (Second) of Torts* § 315.

In support of their claim of negligence, Plaintiffs invoke three provisions of the *Restatement (Second) of Torts* as purported sources of WSU's duty: §§ 315(a), 317, and 302B. Compl. Dkt. 1-2. ¶¶ 437, 441–43. None supplies the duty Plaintiffs allege. Section 315(a) requires a special relationship giving WSU a duty to control Kohberger; § 317 addresses an employer's limited duty to control an employee acting outside the scope of employment; and § 302B requires an affirmative act of malfeasance giving rise to increased risk of danger to the Plaintiffs. Each fails on Plaintiffs' allegations.

#### 1. WSU's relationship with Kohberger as a student did not create a duty to control his off-campus conduct

Under Washington law, a § 315 special relationship giving rise to a legal duty to control another person or protect another from harm arises only from a qualifying special relationship. *Niece*, 131 Wn.2d at 43 (citation omitted). More specifically, there must be either (1) a special relationship between the defendant and the third person imposing a duty to control the third person's



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

conduct, or (2) a special relationship between the defendant and the victim giving the victim a right to protection. *Id.* Here, Plaintiffs allege WSU owed a legal duty to control the conduct of Bryan Kohberger to prevent the murders he committed in Idaho because he was a student of WSU under § 315(a). This claim fails as a matter of law because Washington's Supreme Court has rejected the imposition of a § 315(a) special relationship between a university and its students for criminal conduct occurring off campus and outside of a school sponsored event. *Barlow*, 2 Wn.3d at 593.

*Barlow* forecloses Plaintiffs' negligence claim based on a duty to control Kohberger due to his status as a student of the University. In response to certified questions from the Ninth Circuit Court of Appeals, the *Barlow* court clarified the duty universities owe to their students to prevent injury. *Id.* at 586. There, WSU had received two complaints of sexual misconduct against the student, investigated them, found him responsible for violating student-conduct rules, suspended him, imposed sanctions, and permitted him to transfer between WSU campuses. *Id.* at 587–88. Despite WSU's knowledge of that history and its disciplinary authority over the student, the Washington Supreme Court held that no § 315(a) special relationship existed because WSU lacked the requisite control over his conduct at an off-campus party. *Id.* at 591–95. Instead, the court recognized that a university's duty to prevent injury is limited to people who are on its campus for school purposes or over activities controlled by the university. *Id*. at 590.

*Barlow* controls here. Plaintiffs allege that WSU had authority over Kohberger's actions because of his enrollment as a student and the ability to discipline him for violations of university rules. But *Barlow* establishes that a university's disciplinary authority over an adult student is not the type of custody or control necessary to impose a § 315(a) duty to prevent the student's private, off-campus criminal conduct. Kohberger's murders occurred off campus at a private residence in



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

Moscow, Idaho, and not during any WSU-sponsored or controlled activity. Under *Barlow*, WSU's relationship with Kohberger as a student therefore did not create a duty to control the conduct that caused the four University of Idaho students' deaths.

*Martinez v. Washington State University* does not change that result. In *Martinez,* the court distinguished *Barlow* because the relevant special relationship was not WSU's relationship with an individual student, but its "long-standing" relationship with a recognized fraternity. *Martinez v. Wash. State Univ.*, 593 P.3d 762 (Wash. July 30, 2026). WSU and the fraternity had entered into annual agreements under which WSU provided institutional benefits in exchange for compliance with university requirements, and WSU had authority to control the fraternity through those agreements, including by imposing sanctions and withdrawing university recognition. *Id* at *772-775*. The court therefore held that WSU's relationship with the fraternity satisfied § 315(a), while recognizing that *Barlow* governed the materially different relationship between a university and an individual student. *Id.* at 770. Plaintiffs allege no comparable relationship giving WSU control over Kohberger's private conduct. As *Barlow* holds, WSU's authority to regulate or discipline an adult student does not give it the control necessary to impose a duty to prevent that student's off-campus criminal conduct.

**2. WSU does not owe a duty to control Kohberger under § 317**

Plaintiffs separately allege that WSU owed a duty to prevent Kohberger's out of state murders based on Kohberger's purported status as an employee and teaching assistant. Compl. Dkt. 1-2 ¶¶ 439–43; 449–78. WSU does not concede Plaintiffs' characterization of Kohberger as an employee. But even assuming that characterization for purposes of this motion, Plaintiffs'



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

employment-based theories do not impose a duty on WSU to prevent his private, off-campus criminal conduct.

Negligent hiring, retention, and supervision are not vicarious liability claims. Instead, an employer may be directly liable for his own negligence in hiring, retaining, or supervising an employee. *Niece*, 131 Wn.2d at 48–51; *Anderson v. Soap Lake Sch. Dist.*, 191 Wn.2d 343, 356–61 (2018). An employer's limited legal duty giving rise to these causes of action is to reasonably entrust its tasks, premises, and instrumentalities to an employee to prevent harm to foreseeable victims. *Niece,* 131 Wn.2d at 48. This duty does not extend to preventing criminal conduct committed off campus, off duty, and without use of the employer's instrumentalities; said another way, the employment relationship does not create a legal duty to prevent criminal conduct occurring outside of the employer's control.

**3. Negligent supervision**

Plaintiffs allege WSU negligently supervised Kohberger as an "employee" and that it owed Plaintiffs a legal duty to control Kohberger's conduct based on *Restatement (Second)* § 317. Under Washington law a claim for negligent supervision arises from § 317. A claim of negligent supervision arises when:

> A master is under a duty to exercise reasonable care so [as] to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them,
>
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

*Niece*, 131 Wn.2d at 48-49, *quoting Restatement (Second) of Torts* § 317. These requirements reflect the limited nature of the employer's duty: employment does not itself make an employer responsible for everything an employee does in his private life.

Plaintiffs' negligent supervision claim fails as a matter of law because when Kohberger murdered the decedents, he was not on WSU's campus and was not using any chattel of WSU to commit his crimes. Accordingly, section (a) of the *Restatement* elements cannot be met and for that reason alone Plaintiffs' negligent supervision claim must be dismissed. Additionally, Plaintiffs' negligent supervision claim also fails as a matter of law because WSU did not have the legal ability to exercise control over Kohberger while he was operating in another state. Here, Washington law does not impose a duty on employers to prevent all future criminal conduct committed by its employees. Because Kohberger's out of state murders occurred off campus and without WSU chattels, Plaintiffs' negligent supervision claim must be dismissed.

**4. Negligent hiring and retention**

Similarly, Plaintiffs' claims of negligent hiring and retention fail because Kohberger's performance as a teaching assistant did not cause the murders. . The claims of negligent hiring and retention also arise from an employer's limited duty to foreseeable victims, to prevent tasks, premises, or instrumentalities entrusted to an employee from endangering others." *Niece*, 131 Wn.2d at 48. This duty does not arise from a special relationship under *Restatement (Second) of Torts* § 315, and it is not a duty to protect victims from harm. *Evans v. Tacoma Sch. Dist.*, 195 Wn. App. 25, 49(2016). Nor is the duty to reasonably retain an employee a duty to supervise or control an employee's conduct. *Compare Anderson,* 191 Wn.2d at 358 (discussing negligent retention), *with id.* at 363 (discussing negligent supervision). Negligent hiring and retention are based on the theory that the employer independently wronged the injured party by hiring or retaining an employee who was unfit for the position. *Anderson,* 191 Wn.2d at 357. The only



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

difference between negligent hiring and retention is timing. *Peck v. Siu*, 65 Wn. App. 285, 288 (1992). Negligent hiring occurs at the time of hiring, while negligent retention occurs during the course of employment. *Id.*

To succeed on a claim of negligent hiring, plaintiff must show that the employer knew or should have known the employee in question was unfit to hold his position, the employee's unfitness was a proximate cause of the harm, and the harm was foreseeable. *Brown v. Labor Ready Nw.*, 113 Wn. App. 643, 655-56 (2002). To establish proximate cause, plaintiff must show that the poor performance the employer was aware of was the same poor performance that proximately caused the injury. *Id. citing Smith v. Sacred Heart Med. Ctr*., 144 Wn. App. 537, 544 (2008); *See also Anderson*, 191 Wn.2d at 360-61.

Here, as a matter of law, WSU did not owe Plaintiffs a legal duty to prevent Kohberger's out of state murders because the murders did not arise from his performance as a teaching assistant for WSU. Nor did Kohberger's poor performance as a teaching assistant cause Plaintiffs' injuries. As alleged, Kohberger's murders were conducted off campus, off duty, and outside of WSU's control. Because the murders did not result from the entrustment of tasks, premises or instrumentalities to Kohberger by WSU, WSU did not owe Plaintiffs a legal duty to control his private conduct.

Plaintiffs cannot transform allegations that WSU should have hired, retained, disciplined, or supervised Kohberger differently into a general duty to protect members of the public from his private criminal conduct. Even assuming Plaintiffs' allegation that Kohberger was a WSU employee, neither § 317 nor Washington's negligent hiring, retention doctrines imposed such a duty.

/ / /

/ / /



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

**5. WSU did not affirmatively create or increase the risk of harm to Plaintiffs giving rise to a duty under § 302B**

Plaintiffs alternatively rely on *Restatement* § 302B to provide a legal duty of care, but that provision does not supply a duty under the circumstances present in this case. Section 302B may impose a duty to protect against a third party's criminal conduct where the defendant's "own affirmative act" creates or exposes another to a recognizable high degree of risk of harm. *Robb v. City of Seattle*, 176 Wn.2d 427, 433–41 (2013). Under § 302B, an affirmative act is required, mere nonfeasance is insufficient. *Id.* at 439–41. The distinction is whether the defendant created a new risk of harm through affirmative conduct or merely failed to eliminate a risk created by someone else. *Id.*

Plaintiffs allege the latter. As set forth in the complaint, Plaintiffs allege that WSU failed to recognize the danger Kohberger posed, failed to adequately investigate or respond to warning signs, failed to discipline or terminate him, failed to monitor his internet activity, and otherwise failed to intervene before the murders. Compl. Dkt. 1-2 ¶¶ 443–47. However, those allegations describe failures to act rather than affirmative conduct by WSU that created or increased that risk. *Robb* rejected the same attempt to convert a failure to eliminate an existing danger into affirmative conduct under § 302B. 176 Wn.2d at 439–41. There, officers encountered shotgun shells that were later used in a murder but failed to remove them. *Id.* at 430–32. Because the officers did not create the danger or make it worse, their failure to eliminate it was nonfeasance and supplied no duty. *Id.* at 440–41.

Plaintiffs cannot avoid that rule by characterizing WSU's decision to admit Kohberger, permit him to serve as a teaching assistant, provide university housing or internet access, or otherwise allow him to participate in university life as affirmative conduct. Those acts did not

create or increase any danger to Plaintiffs. The decedents were University of Idaho students whose only alleged connection to WSU was their presence in the Pullman-Moscow community generally. Allowing an individual to exist in the community is not actionable in tort. At most, Plaintiffs allege that WSU had opportunities to recognize and respond to a danger that Kohberger himself allegedly posed. Under Washington law as set forth in *Robb*, failing to eliminate an existing danger is nonfeasance, not the affirmative creation of risk required by § 302B. *Id.* at 439–41.

Plaintiffs also rely on WSU's adoption of the WAVR-21 protocol and TAT procedures, alleging that those measures heighten WSU's duties because they provide mechanisms for identifying, assessing, and responding to potentially dangerous behavior. Compl. Dkt. 1-2 ¶¶ 446, 462–67. In Washington state, an employer's internal policies do not give rise to a legal duty of care to act. *Joyce v. Dep't of Corrs.*, 155 Wn.2d 306, 323 (2005). Nor does adopting procedures intended to identify and respond to potential threats generally, create or increase the danger allegedly posed by an individual. Again, failure to follow internal policies is nonfeasance. Nonfeasance does not give rise to an actionable duty under § 302B.

Plaintiffs therefore allege no affirmative act by WSU that created or increased the risk that resulted in the four University of Idaho students' deaths. Because their § 302B theory rests on alleged failures to recognize and eliminate a danger created by Kohberger, it is a theory of nonfeasance and supplies no duty under Washington law. *Restatement (Second) of Torts* §§ 302B, 314 & cmt. c (1965); *Robb*, 176 Wn.2d at 435–41.

**6. Foreseeability does not independently create a legal duty**

Plaintiffs' allegations that WSU knew or should have known Kohberger posed a danger do not cure the absence of a legal duty. Foreseeability may define the scope of an existing duty, but it



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

does not itself create one. *Barlow*, 2 Wn.3d at 594; *Niece*, 131 Wn.2d at 43–47. As *Barlow* explained, "[e]ven if a party knows that a person may commit a crime against another, that party has no duty to act unless a special relationship exists with the victim or the perpetrator." *Barlow*, 2 Wn.3d at 594.

Here, Plaintiffs identify numerous circumstances they contend should have alerted WSU that Kohberger posed a danger. But allegations that WSU knew or should have known of a risk cannot supply the legal relationship that Washington law requires. As explained above, WSU's relationship with Kohberger as an adult student did not give it the requisite control over his private conduct and his purported employment does not impose a general duty to control his private life. Foreseeability cannot fill those gaps. Holding otherwise would substantially expand Washington law and effectively eliminate the limitation expressed in *Barlow*. A university's ordinary authority to admit, employ, discipline, or provide housing to an adult, combined with information suggesting that adult might pose a danger, would become a basis for liability for that person's subsequent private criminal acts against members of the public. Neither *Barlow*, *Niece*, nor *Martinez* recognizes such a duty. To the contrary, Washington courts have cautioned against expanding duty principles in a manner that would produce an "unpredictable and unprecedented expansion of tort liability." *Robb*, 176 Wn.2d at 440–41. The Court should decline Plaintiffs' invitation to do so here.

The horrific nature of the murders does not alter that duty analysis. Plaintiffs seek to hold WSU liable for failing to prevent an adult student's intentional criminal attack against four students of another university, committed in the middle of the night at a private residence in another state. Washington law does not impose such a duty. Plaintiffs thus fail to plead a cognizable legal duty



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

running from WSU to the decedents. Accordingly, Count Two fails as a matter of law and must be dismissed.

**7. Negligence claim fails because of proximate cause**

Plaintiffs' negligence claims should be dismissed because they cannot show proximate cause as a matter of law. Proximate cause has two elements: cause in fact and legal causation. *Hartley v. State*, 103 Wn.2d 768, 777 (1985). Cause in fact can be decided as matter of law, "if the facts, and inference from them, are plain and not subject to reasonable doubt or a difference of opinion." Estate of Brown by and through *Brown v. King Cnty.*, 36 Wn. App.2d 577, 594 (2026) (*quoting Little v. Countrywood Homes, Inc.*, 132 Wn. App. 777, 780 (2006)). A claim for liability cannot rest on a speculative theory or on conclusory statements. *Id.* Cause in fact requires the plaintiff to "establish that the harm suffered would not have occurred but for" the conduct of the defendant. *Id.* at 593-94 (quoting *Joyce* 155 Wn.2d at 322.Legal causation permits a court for sound policy reason to limit liability where duty and foreseeability indicate that liability can arise. *Schooley v. Pinch's deli Market, Inc.,* 134 Wn.2d 468, 479 (1998). The key inquiry is "whether as a matter of policy the connection between the ultimate result and the act or omission of the defendant is too remote or insubstantial to impose liability." *Meyer v. Ferndale Sch. Dist.*, 197 Wn.2d 281, 293 (2021).

Here, it is purely speculative that any actions taken differently by WSU would have prevented Bryan Kohberger, from traveling over state lines to commit the horrific murders of four University of Idaho students. Additionally, as a matter of public policy, the connection between allowing an adult student to enroll in a university and engage in studies is simply too attenuated from the private and unconscionable decision to covertly travel across state lines and



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

take the lives of four individuals in the dead of night. Because proximate cause is speculative and attenuated, this court should dismiss Plaintiffs' negligence claims as a matter of law.

**B. Count Three Must Be Dismissed Because Plaintiffs Cannot State a Gross-Negligence Claim Absent a Duty**

Count Three fails for the same threshold reason as Count Two: WSU owed no duty to protect Plaintiffs' decedents from Kohberger's off-campus criminal conduct. Gross negligence is not an independent cause of action. Rather, it concerns the degree of care exercised in performing an existing duty. *See Nist v. Tudor*, 67 Wn.2d 322, 331 (1965) (gross negligence is "substantially and appreciably greater negligence than ordinary negligence").

Plaintiffs allege that WSU had a duty to exercise slight care and that its alleged failures constituted gross negligence. Compl. Dkt. 1-2 ¶¶ 480–81. But characterizing WSU's alleged conduct as grossly negligent cannot supply the predicate duty their negligence claim lacks. For the reasons explained above, Washington law imposed no duty on WSU to control Kohberger's private, off-campus conduct or to protect Plaintiffs' decedents from it. Without a duty, there can be no breach—ordinary or gross. Count Three therefore fails as a matter of law and must be dismissed.

**C. Count Four Must Be Dismissed Because Plaintiffs Do Not Plausibly Allege Extreme and Outrageous Conduct by WSU**

To state a claim for outrage, Plaintiffs must allege "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 149 Wn.2d 192, 195 (2003). The first element imposes a high standard. The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and must be regarded as "atrocious, and utterly intolerable in a civilized community." *Id.* at 196 (citation omitted). Mere negligence, bad



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

judgment, or even conduct that warrants condemnation is insufficient. *See Dicomes v. State*, 113 Wn.2d 612, 630 (1989).

Whether alleged conduct is sufficiently extreme to support an outrage claim presents a threshold question for the Court. *Reid v. Pierce Cnty.*, 136 Wn.2d 195, 202 (1998). Although the question may ultimately be one for a jury where reasonable minds could differ, the Court must first determine whether the alleged conduct may reasonably be regarded as sufficiently extreme and outrageous to permit recovery. *Id.*; *Dicomes*, 113 Wn.2d at 630.

Plaintiffs' allegations do not meet the test. Count Four merely incorporates the preceding allegations and asserts, in conclusory terms, that WSU's "acts and omissions" were extreme and outrageous. Compl. Dkt. 1-2 ¶¶ 482–85. The underlying allegations concern WSU's response to Kohberger: Plaintiffs contend that University officials failed to adequately investigate reports about his behavior, assess the danger he allegedly posed, discipline or terminate him sooner, restrict his access to University resources, or otherwise intervene. How ever those institutional decisions are characterized, they are not conduct by WSU that goes "beyond all possible bounds of decency" or is "utterly intolerable in a civilized community." *Kloepfel*, 149 Wn.2d at 196. Additionally, the decedents' family members were not present at the time of any alleged conduct by WSU therefore they cannot independently maintain a tort of outrage action. *Reid.*, 136 Wn.2d 195 at 202 .

The distinction between Kohberger's conduct and WSU's alleged conduct is critical. The murders were unquestionably atrocious. But WSU did not commit them. Plaintiffs cannot transform Kohberger's horrific criminal acts into extreme and outrageous conduct by WSU merely by alleging that different institutional decisions might have prevented those acts. Even accepting Plaintiffs' factual allegations as true, what they attribute to WSU is a series of allegedly inadequate responses,



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

failures to act, and errors in judgment concerning an adult student employee. Those allegations may be Plaintiffs' basis for asserting negligence, but they do not plausibly allege the kind of affirmative, extreme misconduct necessary to state the separate and exceptionally demanding tort of outrage.

Count Four therefore fails at the threshold. Because the conduct alleged against WSU cannot reasonably be regarded as extreme and outrageous under Washington law, Plaintiffs fail to state a claim for outrage. Accordingly, Count Four must be dismissed.

### D. Counts Five Through Twelve Must Be Dismissed Because the Survival and Wrongful-Death Claims Depend on a Viable Underlying Tort by WSU

Plaintiffs' remaining claims do not provide an independent basis for liability. Washington's survival statutes preserve claims that the decedents could have maintained had they survived, while the wrongful-death statute permits recovery for a death caused by the "wrongful act, neglect, or default of another." RCW 4.20.010, .046, .060. Each therefore requires a viable underlying tort by WSU. Plaintiffs' own allegations make that dependency clear. Each survival and wrongful-death claim alleges that the "wrongful acts and neglect of WSU as alleged above" caused or contributed to the decedent's injuries or death. Compl. Dkt. 1-2 ¶¶ 486, 491, 494, 502, 507, 510, 515. The claims thus add no new theory of liability; they seek additional remedies based on the same alleged conduct.

As explained above, however, Plaintiffs have not alleged an actionable tort by WSU. The horrific murders committed by Kohberger do not themselves supply the missing actionable conduct by WSU. Because Plaintiffs have not pleaded a viable underlying tort by WSU, their derivative survival and wrongful-death claims necessarily fail. Counts Five through Twelve must therefore be dismissed.



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

**E. Amendment Would Be Futile, and Dismissal Should Be With Prejudice**

Dismissal should be with prejudice because the defects in Plaintiffs' claims cannot be cured by amendment. Although leave to amend ordinarily should be granted freely, it is unnecessary where "the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*).

That is the case here. The Complaint spans 126 pages and alleges in extensive detail what Plaintiffs contend WSU knew about Kohberger, the complaints WSU received concerning his conduct, the authority WSU possessed over him as a graduate student and employee, and the actions WSU allegedly could and should have taken before the November 13, 2022, murders. The problem is not a lack of factual detail. Even accepting the Complaint's 518 paragraphs of allegations as true, they do not establish the legal requirements for the claims Plaintiffs assert.

Additional allegations cannot change the fundamental circumstances underlying those claims. The four decedents were University of Idaho students; Kohberger's murders occurred at a private residence in Idaho, outside the scope of his WSU employment; and WSU did not have the custodial or controlling relationship over Kohberger necessary to impose a duty to prevent his private criminal conduct. Nor can additional allegations transform WSU's alleged failures to investigate, assess, discipline, terminate, or warn into extreme and outrageous conduct by WSU. And because Plaintiffs' survival and wrongful-death claims depend upon an underlying tort by WSU, amendment cannot independently preserve those claims.

The same is true of Title IX. Plaintiffs' lengthy allegations do not establish the elements necessary to impose institutional liability under Title IX. Adding further detail to the same theory would not cure that legal deficiency.

Plaintiffs therefore do not face pleading deficiencies that could be remedied by supplying additional facts. Their claims fail because the law does not impose liability on WSU under the circumstances they allege. Amendment would be futile, and the Court should dismiss the Complaint with prejudice. *See Lopez*, 203 F.3d at 1130.

### F. The Court Should Exercise Supplemental Jurisdiction Over Plaintiffs' State-Law Claims

The Court has supplemental jurisdiction over Plaintiffs' state-law claims because they arise from the same alleged conduct underlying Plaintiffs' Title IX claim and form part of the same case or controversy. 28 U.S.C. § 1367(a). Although a district court may decline supplemental jurisdiction if it dismisses all claims over which it has original jurisdiction, it is not required to do so. 28 U.S.C. § 1367(c)(3). The Supreme Court's decision in *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), does not alter that rule. There, the plaintiff voluntarily amended her complaint to eliminate the federal claims that supported removal, which deprived the court of supplemental jurisdiction over the remaining state-law claims. *Id*. at 28–35. Here, by contrast, WSU asks the Court to dismiss Plaintiffs' federal claim on the merits. In that circumstance, the Court retains discretion to exercise supplemental jurisdiction over the remaining state-law claims. *Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1096 (9th Cir. 2025). In exercising that discretion, district courts consider the values of economy, convenience, fairness, and comity. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (*en banc*).

Those considerations favor resolving the state-law claims here. The claims present no novel or unsettled questions of Washington law requiring resolution by a state court. Nor do considerations of comity counsel otherwise. WSU, a Washington public institution represented by



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

the Washington Attorney General, affirmatively asks this Court to adjudicate these claims under Washington law. And doing so would require no resolution of novel or unsettled questions of Washington law, much less any expansion of it. Washington appellate courts have already established the governing standards for each claim, including when a university owes a duty to control an adult student, when a defendant's conduct may create a duty to protect against third-party harm, and what conduct can support a claim for outrage. *See*, *e.g.*, *Martinez*, 2026 WL 2196394; *Barlow*, 2 Wn.3d 583; *Robb*, 176 Wn.2d 427; *Niece*, 131 Wn.2d 39; *Kloepfel*, 149 Wn.2d 192. Plaintiffs' claims require application of those established rules to the allegations in the Complaint, not an expansion of Washington law.

Judicial economy, convenience, and fairness likewise favor resolving the claims together. All of Plaintiffs' claims can be resolved at the pleading stage, and the state-law claims turn principally on threshold legal questions that require no discovery. Remanding those claims for another court to address the same Complaint under the same settled Washington law would serve neither economy nor efficiency. The Court should therefore exercise supplemental jurisdiction and resolve Plaintiffs' state-law claims on the merits.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



ATTORNEY GENERAL OF WASHINGTON
Torts Division
7141 Cleanwater Drive SW
PO Box 40126
Olympia, WA 98504-0126
360-586-6300

## V. CONCLUSION

For these reasons, WSU respectfully requests that the Court grant its Motion for Judgment on the Pleadings and dismiss Plaintiffs' claims with prejudice. Plaintiffs' allegations, accepted as true where properly pleaded, do not state a viable claim against WSU under Title IX or Washington law. Because the defects are legal and cannot be cured by amendment, dismissal with prejudice is warranted.

DATED this 15th day of September, 2026.

*I certify that this memorandum 8,279 words, in compliance with the Local Civil Rules*

NICHOLAS W. BROWN
Attorney General

*s/ Jordyn Jones*
JORDYN JONES, WSBA No. 52648
CONNOR CALLAHAN, WSBA No. 54099
HANNAH JUSTICE, WSBA No. 50571
Assistant Attorneys General
P.O. Box 40126
Olympia, WA 98504-0126
360-586-6300
Jordyn.Jones@atg.wa.gov
Connor.Callahan@atg.wa.gov
Hannah.Justice@atg.wa.gov

*Counsel for Defendant WSU*

## PROOF OF SERVICE

I declare that on this 15th day of September 2026, I caused a copy of this document to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

***Attorneys for Plaintiff***

Jonathan P. Kieffer, (pro hac vice)
Jack T. Hyde, (pro hac vice)
Lindsey N. Scarcello (pro hac vice)
WAGSTAFF & CARTMELL, LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
jpkieffer@wcllp.com
jhyde@wcllp.com
lscarcello@wcllp.com

Thomas B. Vertetis, WSBA #29805
Christopher E. Love, WSBA #42832
William T. McClure, WSBA #54622
PFAU COCHRAN VERTETIS AMALA, PLLC
909 A Street, Suite 700
Tacoma, WA 98402
tom@pcvalaw.com
chris@pcvalaw.com
wmcclure@pcvalaw.com

I certify under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED this 15th day of September, 2026, at Olympia, Washington.

*s/ Jordyn Jones*
JORDYN JONES, WSBA No. 52648